**JENNER & BLOCK LLP**
Brandon D. Fox (SBN 290409)
BFox@jenner.com
Rachael A. Goldman (SBN 335138)
RGoldman@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA 90071-2246
Telephone: +1 213 239 5100
Facsimile: +1 213 239 5199

Kate T. Spelman (SBN 269109)
KSpelman@jenner.com
2029 Century Park East, Suite 1450
Los Angeles, CA 90067-2901
Telephone: +1 213 239 6900
Facsimile: +1 213-239 5199

Attorneys for Defendants
Fox Corporation and Fox News Network, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SONNI ECHEVERRIA-CORZAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FOX CORPORATION and FOX NEWS NETWORK, LLC,<br><br>Defendants. | Case No. 25-cv-04253-AMO<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT, OR, IN THE ALTERNATIVE, TO STAY; MEMORANDUM OF POINTS & AUTHORITIES**<br><br>Judge: Honorable Araceli Martínez-Olguín<br><br>Hearing Date: August 28, 2025<br>Time: 2:00 P.M.<br>Courtroom: 10 |

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on August 28, 2025, at 2:00 P.M., or as soon thereafter as the Court is available, Defendants Fox Corporation and Fox News Network, LLC (collectively, "Fox"), will appear before the Honorable Araceli Martínez-Olguín in Courtroom 10, located at 450 Golden Gate Avenue, San Francisco, California, and will present this Motion to: (a) dismiss Plaintiff's First Amended Class Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim under Section 638.51 of the California Invasion of Privacy Act, Cal. Penal Code §§ 630 *et seq*. ("CIPA"), and (b) in the alternative, stay the case pending final legislative action with respect to California Senate Bill 690, which would exempt from CIPA's purview the use of website software for the purpose that is the subject of Plaintiff's complaint.

Fox's Motion is based upon this Notice; the accompanying Memorandum of Points and Authorities; the pleadings, files, and records in this action; and such additional evidence and arguments as may be presented at the hearing on this Motion.

Dated: June 10, 2025 JENNER & BLOCK LLP

By: */s/ Brandon D. Fox*
Brandon D. Fox
Kate T. Spelman
Rachael A. Goldman

Attorneys for Defendants
Fox Corporation and Fox News Network, LLC

## TABLE OF CONTENTS


I. INTRODUCTION ........................................................................................................1

II. FACTUAL BACKGROUND ........................................................................................2

III. THIS COURT SHOULD DISMISS PLAINTIFF'S AMENDED COMPLAINT WITH PREJUDICE. ........................................................................................................3

- A. The CCPA Regulates Use of the Tools and Precludes Plaintiff's Misapplication of the Earlier-Enacted CIPA Provision. ........................................................................4
- B. Even Ignoring the CCPA, Section 638.51 Does Not Apply Because Plaintiff Fails to Plausibly Allege that Fox Used a "Pen Register" Under the Statute. ..............................6
  - 1. Section 638 Applies Only to Telephones and Does Not Restrict the Tools Fox Allegedly Uses. ........................................................................................6
  - 2. The Legislative History of Section 638.51 Confirms That It Only Applies to Telephones. ........................................................................................9
  - 3. The Information Fox Allegedly Captures is Not the Type of Data that is Regulated by Section 638.51's Prohibition on Unauthorized "Pen Registers." ..........12
- C. Section 638.51 Does Not Apply to the Voluntary Disclosure of IP Addresses. ................13

IV. ALTERNATIVELY, THIS COURT SHOULD STAY THIS CASE PENDING CONCLUSIVE LEGISLATIVE ACTION ON S.B. 690. ......................................................15

V. CONCLUSION ........................................................................................................16

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ACA Int'l v. FCC*,
885 F.3d. 687 (D.C. Cir. 2018) ........................................ 15

*In re Application for Pen Register and Trap/Trace Device with Cell Site Location Authority*,
396 F. Supp. 2d 747 (S.D. Tex. 2005) ........................................ 12

*In re Application of U.S. for an Order Authorizing Use of a Pen Register & Trap On (XXX) Internet Serv. Acct./User Name (xxxxxxxx@xxx.com)*,
396 F. Supp. 2d 45 (D. Mass. 2005) ........................................ 8, 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................ 3

*Barragan v. Superior Court*,
148 Cal. App. 4th 1478 (2007) ........................................ 8

*Berkeley Ctr. for Indep. Living v. Coyle*,
42 Cal. App. 4th 874 (1996) ........................................ 5, 9

*Capitol Recs. Inc. v. Thomas-Rasset*,
No. 06-1497, 2009 WL 1664468 (D. Minn. June 11, 2009) ........................................ 14

*CMAX, Inc. v. Hall*,
300 F.2d 265 (9th Cir. 1962) ........................................ 15

*Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*,
555 U.S. 271 (2009) ........................................ 13

*Dyna-Med, Inc. v. Fair Emp. & Hous. Comm'n*,
43 Cal. 3d 1379 (1987) ........................................ 9

*In re Innovatio IP Ventures, LLC Patent Litig.*,
886 F. Supp. 2d 888 (N.D. Ill. 2012) ........................................ 14, 15

*Jose Licea v. Hickory Farms LLC*,
Case No. 23STCV26148 (Cal. Super. Ct. Mar. 13, 2024) ........................................ 14

*Kwan v. SanMedica Int'l*,
854 F.3d 1088 (9th Cir. 2017) ........................................ 3

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) ........................................ 15

*Lopez v. Sony Elecs., Inc.*,
5 Cal. 5th 627 (2018) ....................5

*Luckey v. U.S. Dep't of the Navy*,
No. 18-CV-06071, 2019 WL 4059855 (N.D. Cal. Aug. 28, 2019) ....................15

*Marielita Palacios v. Fandom, Inc.*,
Case No. 24STCV11264 (Cal. Super. Ct. Sept. 24, 2024) ....................13

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021)....................3

*Mejia v. Reed*,
31 Cal. 4th 657 (2003) ....................5

*Mollaei v. Otonomo Inc.*,
No. 23-16079, 2025 WL 1163727 (9th Cir. Apr. 22, 2025)....................9, 10

*Mt. Hawley Ins. Co. v. Lopez*,
215 Cal. App. 4th 1385 (2013) ....................9

*Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*,
414 U.S. 453 (1974)....................10

*Pavek v. Simon*,
No. 19-CV-3000, 2020 WL 4013982 (D. Minn. July 16, 2020) ....................16

*People v. Avery*,
27 Cal. 4th 49 (2002) ....................6

*People v. Larkin*,
194 Cal. App. 3d 650 (1987) ....................12

*Sanchez v. Cars.com Inc.*,
No. 24STCV13201 (Cal. Super. Ct. Jan. 27, 2025)....................8

*Stinnie v. Holcomb*,
396 F. Supp. 3d 653 (W.D. Va. 2019) ....................15

*United States v. Carneiro*,
861 F.2d 1171 (9th Cir. 1988) ....................7

*Vita v. New England Baptist Hosp.*,
243 N.E.3d 1185 (Mass. 2024)....................6

*Zadrozny v. Bank of N.Y. Mellon*,
720 F.3d 1163 (9th Cir. 2013) ....................16

**Statutes**

18 U.S.C. § 3123(b) ....................8, 10

Cal Civ. Code § 1798.120(a)(1) .......... 4

Cal. Civ. Code § 1798.140 .......... 4

Cal. Civ. Code § 1859 .......... 5

Cal. Code Regs., title 11, Div. 6, Chapter 1 § 7012(c)(1) .......... 4

Cal. Penal Code § 637.7 .......... 9

Cal. Penal Code § 638 .......... 9

Cal. Penal Code § 638.50 .......... 1, 5

Cal. Penal Code § 638.51 .......... *passim*

Cal. Penal Code § 638.52 .......... *passim*

California Consumer Privacy Act, Cal. Civ. Code §§ 1798.100 *et seq*. .......... 1

California Invasion of Privacy Act, Cal. Penal Code §§ 630 *et seq*. .......... *passim*

Pen Register Act, 18 U.S.C. § 3121 *et seq*. .......... *passim*

**Other Authorities**

2025 Legislative Deadlines, California State Assembly, https://www.assembly.ca.gov/schedules-publications/legislative-deadlines#month9 (revised Oct. 16, 2024) .......... 16

California Assembly Bill AB 929 .......... 7, 10

California Bill Analysis, AB 929 Assem. (Apr. 21, 2015) .......... 10

*California Consumer Privacy Act (CCPA)*, State of California Department of Justice, Office of the Attorney General (2025), https://oag.ca.gov/privacy/ccpa#sectionc (updated Mar. 13, 2024) .......... 5

California Senate Bill 690 .......... *passim*

SB 690, Crimes: Invasion of Privacy, 2025-2026 Reg. Sess. (Cal. 2025), https://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=202520260SB690 (last visited June 10, 2025) .......... 16

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiff Sonni Echeverria-Corzan ("Plaintiff") characterizes Fox Corporation and Fox News Network, LLC's (collectively, "Fox") data collection and advertising tools ("Tools") on www.foxnews.com (the "Website") as a violation of the prohibition against installing "pen register[s]" without a court order under Section 638.51 of the California Invasion of Privacy Act, Cal. Penal Code §§ 630 *et seq*. ("CIPA"). According to Plaintiff, the commonly used Tools constitute unlawful pen registers because they collect certain non-sensitive information from Website visitors, such as "internet protocol ('IP') addresses" and "[d]evice [m]etadata," and they "set a cookie that includes a unique user identifier" which allegedly allows Fox and third parties to "identify and de-anonymize users, hyper-target advertisements to users, and to enrich themselves." First Amended Class Action Complaint ("Am. Compl.") ¶¶ 3–4. Plaintiff's flimsy legal basis is a general, criminal statute California enacted more than half a century ago to regulate telephone data. Plaintiff ignores a precise statutory framework that California enacted to regulate the online data collection at issue here. Plaintiff's claim fails as a matter of law for several reasons.

*First*, Plaintiff's misapplication of Section 638.51 conflicts with California's comprehensive privacy framework governing the collection and use of personal information on the internet—the California Consumer Privacy Act, as amended and expanded by the California Privacy Rights Act (together, the "CCPA"), Cal. Civ. Code §§ 1798.100 *et seq*. The CCPA, which California originally enacted in 2018 with the digital age in mind, expressly permits websites' collection of visitors' personal information, subject to appropriate disclosures and opt-out rights.[1] The CCPA therefore forecloses Plaintiff's contorted application of CIPA to Fox's permissible use of advertising technology.

*Second*, even ignoring that the CCPA (and not CIPA) governs, the Tools are not "pen registers" as defined in CIPA. Under CIPA, a pen register is a device that is physically attached to a telephone and that records telephone numbers associated with outgoing calls. *See* Cal. Penal

[1] Plaintiff does not allege that Fox has failed to comply with any applicable CCPA requirement.

Code §§ 638.50(b), 638.52(d)(1)–(3). Plaintiff alleges nothing about telephones, telephone numbers, or outgoing calls. Instead, Plaintiff claims that Fox's Tools allegedly record IP addresses and "[d]evice [m]etadata" via software embedded in its website.

Plaintiff's allegations fail even if the Court were to determine that a website constitutes a "telephone" under Section 638.51. It is axiomatic that there are two parties to every communication: an originator and a recipient. Section 638.50 defines a "[p]en register" as a device that captures information about the *recipient* of a communication (i.e., the telephone number the originator is calling). *See id*. § 638.50(b). Yet Plaintiff alleges that the Tools captured information about the *originator* of Website visitors' communications (i.e., the originator's IP addresses and "[d]evice [m]etadata"). Similarly, pen registers capture only "dialing, routing, addressing, or signaling information," but "[d]evice [m]etadata" is none of these things.

Plaintiff's theory that the Tools constitute pen registers therefore runs counter to CIPA's plain language and legislative history. And California's legislature is poised to remove any possible doubt. In response to the avalanche of these nonsensical CIPA claims flooding California courts, the state Senate recently passed California Senate Bill 690 ("S.B. 690"), to explicitly state that the alleged conduct at issue here is exempt from CIPA's purview. This bill is currently awaiting consideration by the Assembly.

*Third*, even assuming CIPA has *any* application to the current facts, it cannot apply to the voluntary disclosure of IP addresses, which are required to connect to any website. Multiple courts, including those addressing the application of Section 638.51, have thus found that public policy and common sense militate against criminalizing the collection and sharing of information that is necessarily transmitted to website operators.

Because Plaintiff's claim fails as a matter of law, Fox respectfully requests that the Court grant its motion to dismiss without leave to amend. Alternatively, Fox requests that the Court stay the case pending final legislative action on S.B. 690.

## II. FACTUAL BACKGROUND

Fox owns and operates the Website, which features "news and political commentary." Am. Compl. ¶ 1. Plaintiff alleges that, when users visit the Website, Fox causes at least three Tools

operated by third parties—ADNXS, Pubmatic, and OpenX—"to be installed on the Website visitors' internet browsers." *Id.* ¶ 2. Plaintiff contends that the Tools (1) collect visitors' IP addresses and "[d]evice [m]etadata," "such as device type[] and browser type," and (2) "set a cookie that includes a unique user identifier, which [they] collect on subsequent visits and which is used by [the third party Tool operators] to identify and de-anonymize the user." *Id.* ¶ 3. According to Plaintiff, third parties use the Tools to create "comprehensive user profiles" for Website visitors to "conduct targeted advertising and boost [Fox's] revenue, all through their surreptitious collection of Plaintiff's and Class Members' personal information." *Id.* ¶¶ 122, 159.

The Amended Complaint does not and cannot allege that the Tools collected specifically identifying information such as Plaintiff's name, phone number, email address, or any sensitive personal data. Thus, Plaintiff's allegations suggest, at most, that Fox allowed the Tools to obtain the information reflected in Plaintiff's IP address and "[d]evice [m]etadata," as well as information about which Fox webpages she visited.

Based on these allegations, Plaintiff asserts a single cause of action against Fox for allegedly installing a pen register without first obtaining a court order in violation of California's Trap and Trace Law, Cal. Penal Code § 638.51. Am. Compl. ¶¶ 5–6, 8, 201–12.

## III. THIS COURT SHOULD DISMISS PLAINTIFF'S AMENDED COMPLAINT WITH PREJUDICE.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice[,]" as any such conclusions "must be supported by factual allegations." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1133 (E.D. Cal. 2021) (quoting *Iqbal*, 556 U.S. at 678–79) (emphasis added). "[U]nwarranted inferences" are also "insufficient to avoid dismissal." *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017) (internal quotation marks and citation omitted). Rather, the plaintiff must "allege more by way of factual content to 'nudg[e]' h[er]

claim" of unlawful action "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 683 (quoting *Twombly*, 550 U.S. at 570).

The CCPA precludes Plaintiff's contorted application of Section 638.51, thus dooming her claim. And even disregarding the CCPA, Plaintiff fails to plausibly allege that Fox used a "pen register" under Section 638.51 because the plain language of the statute and its legislative history confirm that it does not apply to the conduct at issue here. Finally, CIPA does not apply to the voluntary disclosure of IP addresses, as public policy disfavors the criminalization of collecting and sharing information that users necessarily transmit when accessing websites.

### A. The CCPA Regulates Use of the Tools and Precludes Plaintiff's Misapplication of the Earlier-Enacted CIPA Provision.

The CCPA was enacted by the California legislature years after CIPA Section 638.51 and provides consumers with significant control over their personal data on the Internet. The CCPA, which was the first comprehensive consumer privacy law passed in the United States, directly addresses how businesses can collect and use personal information obtained online; what disclosures are required to collect, use, or retain such information; and how such disclosures must be made. Relevant here, Section 7012(c) of the CCPA and its regulations specifically authorize website operators to collect personal information, which the CCPA defines to include "[i]nternet or other electronic network activity information . . . and information regarding a consumer's interaction with an internet website application," by "post[ing] a conspicuous link to the notice on the introductory page of the business's website and on all webpages where personal information is collected." Cal. Code Regs., title 11, Div. 6, Ch. 1 § 7012(c)(1); *see also* Civ. Code § 1798.140. The CCPA expressly regulates the use of "unique personal identifier[s]" as a form of personal information, which include website "*cookies, beacons, pixel tags, mobile ad identifiers, or similar technology*"—the exact software at issue here. Cal. Civ. Code § 1798.140(aj) (emphasis added); *see, e.g.*, Am. Compl. ¶¶ 2, 59–120. And critically, the CCPA establishes an opt-out scheme whereby "[a] consumer shall have the right, at any time, to direct a business that sells or shares personal information about the consumer to third parties not to sell or share the consumer's personal information." Cal Civ. Code § 1798.120(a)(1). In other words, California law expressly

permits website operators like Fox to collect and share personal information from website visitors subject to an individual's various enumerated rights, including, as relevant here, the right to opt out of such practices.[2]

Nevertheless, even if Plaintiff were correct that CIPA has general application—an erroneous argument Fox addresses in the next section—the Court would still be required to apply the CCPA to Fox's alleged conduct because it is "well established" that "later [statutory] enactments supersede earlier ones, and more specific provisions take precedence over more general ones." *Lopez v. Sony Elecs., Inc.*, 5 Cal. 5th 627, 634 (2018) (citations omitted); *see also* Cal. Civ. Code § 1859. Therefore, the Court cannot disregard the precise statutory framework in the CCPA—which California enacted in 2018 to address online data collection—in favor of CIPA, a 58-year-old criminal statute that California enacted to prevent "eavesdropping upon private communications," Cal. Penal Code § 630, and amended in 2015 to address pen registers, Cal. Penal Code § 638.50 *et seq*. Unlike the CCPA, CIPA does not discuss the conduct that is the basis of Plaintiff's lawsuit—a ***website's*** alleged collection of non-sensitive visitor data. Moreover, Plaintiff's theory seeks to impose liability on website operators for sharing user data absent express consent, which is fundamentally incompatible with the CCPA's controlling opt-out approach that permits such sharing absent express declination.

The CCPA—not CIPA—clearly governs, yet Plaintiff does not allege that Fox is out of compliance with any applicable CCPA requirement. Instead, Plaintiff deliberately sidesteps the CCPA and seeks to transform Fox's alleged use of the Tools, which the CCPA explicitly authorizes, into a violation of a decades-old criminal statute. This cannot be. Even if CIPA once had some broader application, which it did not, California's enactment of the CCPA made any use of CIPA to regulate a website collection of non-sensitive visitor data obsolete. *See Berkeley Ctr. for Indep. Living v. Coyle*, 42 Cal. App. 4th 874, 878 (1996) ("Statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent

---

[2] *California Consumer Privacy Act (CCPA)*, State of California Department of Justice, Office of the Attorney General (2025), https://oag.ca.gov/privacy/ccpa#sectionc (updated Mar. 13, 2024).

possible."); *see also Mejia v. Reed*, 31 Cal. 4th 657, 663 (2003) ("[W]ell-established rules of statutory construction" require that "every statute should be construed with reference to the whole system of law of which it is a part, so that all may be harmonized and have effect," and separate sections "must be read together and so construed as to give effect, when possible, to all the provisions thereof." (citations omitted)).

Because the CCPA governs (and expressly permits) the specific online data collection Plaintiff alleges here, Section 638.51 has no application.

**B. Even Ignoring the CCPA, Section 638.51 Does Not Apply Because Plaintiff Fails to Plausibly Allege that Fox Used a "Pen Register" Under the Statute.**

Both CIPA's statutory framework and its legislative history confirm that Section 638.51 does not apply to tools that collect user data from website visitors.[3] Public policy considerations also militate against such a broad interpretation of the term "pen register" given the stifling impact such interpretation could have on online commerce: Plaintiff effectively asks the Court not only to expose companies like Fox to civil liability, but to criminalize commonplace practices, effectively rendering every website operator vulnerable to criminal prosecution.

**1. Section 638 Applies Only to Telephones and Does Not Restrict the Tools Fox Allegedly Uses.**

Section 638.51's plain language shows that it applies to telephone communications, not any of the website data Plaintiff alleges the Tools collect. Section 638.51 prohibits the installation or use of "a pen register or a trap and trace device without first obtaining a court order." Cal. Penal

---

[3] Applying this principle in an analogous case, the Massachusetts Supreme Court recently held that its state's comparable "wiretapping" law simply does not apply to website analytics tools. *See Vita v. New England Baptist Hosp.*, 243 N.E.3d 1185, 1198–99 (Mass. 2024) (holding that such laws covered only person-to-person communications, not interactions with websites). In so holding, the Court examined the rule of lenity, which requires a court to interpret an ambiguous or unclear criminal statute in a way that is most favorable to the defendant. *Id*. at 1188–89. Because CIPA is a criminal statute, to the extent that any section of CIPA is ambiguous or the Court cannot ascertain legislative intent (such as with respect to whether Section 638.51 applies to website technology), the Court should construe any doubt in favor of Fox. *See People v. Avery*, 27 Cal. 4th 49, 58 (2002) ("ambiguous penal statutes are construed in favor of defendants . . . [if] two reasonable interpretations of the same provision stand in relative equipoise" (citation omitted)).

Code § 638.51(a). Under CIPA, a "[p]en register" is "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." *Id*. § 638.50(b). "Wire communication[s]" and "electronic communication[s]" are limited to transfers of "the human voice" or other forms of "intelligence," *id*. § 629.51, and—consistent with this definition—pen registers and trap and trace devices are tools used to capture data related to telephone calls through which such intelligence may be transmitted. *See* California Bill Analysis, AB 929 Assem. (Apr. 21, 2015). Specifically, a pen register records outgoing phone numbers (*i.e.*, the numbers dialed from a particular phone), while a trap and trace device records incoming phone numbers (*i.e.*, the numbers dialing a particular phone). *See United States v. Carneiro*, 861 F.2d 1171, 1173 n.2 (9th Cir. 1988); *see also* California Bill Analysis, AB 929 Assem. (Apr. 21, 2015) (pen registers and trap and trace devices "generally track incoming and outgoing telephone calls").

The plain text shows that the statute applies only to telephones. *First*, Section 638.52, which dictates the process for obtaining a court "order" to install a "pen register," reflects that the "pen register" must be capable of attachment to a telephone line. Specifically, Section 638.52 requires that an order "authorizing or approving the installation and use of a pen register or a trap and trace device" shall specify, among other things, the person who is connected to "***the telephone line*** to which the pen register or trap and trace device is to be ***attached***" and the "number and, if known, physical location of ***the telephone line*** to which the pen register or trap and trace device is to be ***attached*** and, in the case of a trap and trace device, the geographic limits of the trap and trace order." Cal. Penal Code § 638.52(a), (d) (emphasis added). Section 638.52 also prohibits law enforcement from using a pen register or a trap and trace device to obtain "the physical location of the subscriber, ***except . . .[as] may be determined from the telephone number***." Cal. Penal Code § 638.52(c) (emphasis added). This language leaves no doubt that pen registers are limited to tools that can be "attached" to a "telephone line" and can disclose information determined from a "telephone number"—which the Tools simply cannot, and Plaintiff cannot allege otherwise.

Indeed, Plaintiff's proposed interpretation of Section 638.51 as applicable to the Tools would bar law enforcement from ever utilizing software to track website interactions because they would be unable to obtain an order specifying the "telephone line" to which the software would attach. *See* Cal. Penal Code § 638.52(d)(1), (3). This reading would transform a statute designed to *permit* law enforcement to install court-sanctioned pen registers under certain conditions into a *complete prohibition* on the use of investigative techniques involving internet tracking under any condition. Such a restrictive interpretation of the law contradicts legislative intent and produces the type of "absurd consequences" courts are directed to avoid. *See Barragan v. Superior Court*, 148 Cal. App. 4th 1478, 1484, 1484 n.3 (2007) ("Courts do not interpret statutes in a manner that results in absurd consequences that could not have been intended by the Legislature.").

The Central District of California addressed a similar issue in *Application of U.S. of America for an Order Authorizing Use of a Cellular Telephone Digital Analyzer*, 885 F. Supp. 197 (C.D. Cal. 1995). There, the court found that a device called a "digital analyzer," which allegedly intercepted a cellular telephone's "non-communicative signals," was neither a "pen register" nor a "trap and trace device" under an earlier version of the federal Pen Register Act, 18 U.S.C. § 3121 *et seq*.—CIPA's federal counterpart—because it did not require attachment to a telephone line. *Id*. at 199–200. The Court determined that "related sections of the statutes governing trap and trace devices . . . include[d] only devices that are attached to a telephone line," and thus the digital analyzer, which could not attach to a telephone line, was not a trap and trace device. *Id*. at 200. ("Specifically, 18 U.S.C. § 3123(b) requires that an order for use of both pen registers and trap and trace devices include 'the number and, if known, physical location *of the telephone line to which the pen register or trap and trace device is to be attached*. . . .'").

Here, too, the "construction of" "related sections" of CIPA (specifically, Cal. Penal Code § 638.52) shows that the statute applies only to physical devices capable of recording telephone numbers, not software capable of obtaining website user data. *App. of U.S.A. for an Order Authorizing Use of a Cellular Telephone Digital Analyzer*, 885 F. Supp. 197 at 200. The narrow word choice in Section 638.52, enacted in tandem with Section 638.51, limits "the proscription against pen registers and trap and trace devices to prohibit only devices that are 'attached' to a

telephone line"—a deliberate choice that "cannot be assumed to be inadvertent." *Id.*; *see also* Minute Order, *Sanchez v. Cars.com Inc.*, No. 24STCV13201 (Cal. Super. Ct. Jan. 27, 2025) (Section 638.51's "legislative history" confirms that it applies "only to telephone-tracking technology, not IP address-collecting software" used to improve website "functionality" and "marketing" "effectiveness").[4] Consequently, Plaintiff's interpretation of Section 638.51 to encompass Fox's alleged use of the Tools is nonsensical "in the context of the comprehensive statutory scheme of which it is a part." *See Berkeley Ctr. for Indep. Living*, 42 Cal. App. 4th at 878; *Mt. Hawley Ins. Co. v. Lopez*, 215 Cal. App. 4th 1385, 1414 (2013) ("Statutory language is not considered in isolation. Rather, we interpret the statute as a whole, so as to make sense of the entire statutory scheme.") (internal quotation marks and citations omitted). Because the statutory framework makes clear that Section 638.51 only applies to telephone communications, Plaintiff's claim fails.[5]

**2. The Legislative History of Section 638.51 Confirms That It Only Applies to Telephones.**

While courts "look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose," *Dyna-Med, Inc. v. Fair Emp. & Hous. Comm'n*, 43 Cal.

---

[4] Indeed, the Ninth Circuit recently addressed a similar issue with respect to another section of CIPA, Section 637.7. In analyzing both the plain language of the statute and the legislative history underlying its enactment, the Ninth Circuit "decline[d] to accept [the plaintiff]'s invitation to expand liability under § 637.7." The court went on to note that "Section 637.7 criminalizes attaching a tracking device to an unsuspecting person's vehicle. If we were to accept [the plaintiff]'s definition of 'vehicle,' § 637.7 would transform from a circumscribed privacy law into an expansive consumer protection law targeting the collection of location data generally. That is not what the legislature intended." *See Mollaei v. Otonomo Inc.*, No. 23-16079, 2025 WL 1163727, at *3 (9th Cir. Apr. 22, 2025). The same is true here.

[5] The conclusion that Section 638.51 pertains exclusively to telephonic communication is further bolstered by Section 638's exclusive focus on impermissible methods of selling or obtaining "telephone calling pattern records or lists" to "ensure that telephone companies maintain telephone calling pattern records or lists in the strictest confidence, and protect the privacy of their subscribers with all due care." Cal. Penal Code § 638(e); *see Berkeley Ctr. for Indep. Living*, 42 Cal. App. 4th at 878.

3d 1379, 1386-87 (1987), "if 'the wording of the statute is ambiguous,' [courts] 'may consider extrinsic evidence of the legislature's intent, including the statutory scheme of which the provision is a part, the history and background of the statute, the apparent purpose, and any considerations of constitutionality.'" *Mollaei*, 2025 WL 1163727, at *2 (quoting *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 527 (9th Cir. 2001).

As discussed above, the statute applies only to telephone communications based on the plain language of Section 638.51. Even if the Court were to find Section 638.51 to be ambiguous, however, its legislative history similarly demonstrates that the statute was never intended to apply to web-based advertising technology like the Tools.

The California legislature passed CIPA in 1967 to protect Californians' "right of privacy" against "eavesdropping upon private communications." Cal. Penal Code § 630. In 2015, California enacted Assembly Bill 929, which added to CIPA the various California Penal Code provisions pertaining to pen registers. *See* 2015 California Assembly Bill No. 929 ("AB 929"), California 2015–2016 Regular Session. The Legislative Counsel's Digest, at the beginning of AB 929, explains to legislators that the "bill would clarify that any location information obtained by a pen register or a track and trace device is limited to the information that can be determined from ***the telephone number***." *Id.* (emphasis added). Notably, the Legislative Counsel's Digest does not refer to internet communications or website data. Statutory interpretation must "yield to" and "must be consistent with the evident legislative intent and, of course, with the effectuation of the purposes intended to be served by the [statute]." *See Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 458 (1974). Indeed, if the legislature intended to prohibit data collection by data and analytics software, it could have explicitly done so.

This point is further underscored by the fact that the California legislature deliberately chose not to mirror amendments made to the analogous federal Pen Register Act, despite full awareness of those changes. The current Pen Register Act, which was amended in 2001, requires that any order authorizing the use of a pen register or trap and trace device specify, *inter alia*, "the identity, if known, of the person to whom is leased or in whose name is listed **the telephone line *or other facility*** to which the pen register or trap and trace device is to be **attached *or applied*.**"

18 U.S.C. § 3123(b)(1)(A) (emphasis added). This language explicitly expands the federal Pen Register Act to cover orders for the use of devices beyond those that can be "attached" to a "telephone line," unlike CIPA's more limited statutory language.

Indeed, the California legislature had unequivocal knowledge of the 2001 amendments to the federal Pen Register Act—and the widespread use of the internet—when it enacted Sections 638.51 and 638.52 in 2015, yet it did *not* adopt the more expansive language in the current version of the federal Pen Register Act regarding "other facili[ties] . . . to which the pen register . . . is to be . . . applied," instead continuing to limit CIPA to law enforcement's application for orders regarding the installation and use of devices that can be "attached" to a "telephone line." *See* Cal. Penal Code § 638.52(d). And while the California legislature has repeatedly amended CIPA since 2015,[6] it has not altered the language of the pen register and trap and trace statutes to capture broader technology, such as targeted advertising tools.

In fact, the California legislature is poised to do the opposite. California Senate Bill 690, which was recently passed by the California State Senate and is awaiting consideration by the Assembly, would specify that online tracking technologies such as those allegedly at issue here are exempt from CIPA.[7] Should the legislature enact S.B. 690, the law would further cement the California legislature's intent—already evidenced by CIPA's legislative history—to reject the contorted interpretation of Section 638.51 that Plaintiff advances.[8]

Accordingly, CIPA's legislative history confirms that Section 638.51 only applies to telephone communications, and not to website user data collected by advertising technology.

---

[6] *See, e.g.*, Cal. Penal Code §§ 631 (amended 2022), 632 (amended 2016), 633 (amended 2018), 633.02 (added 2015), 633.5 (amended 2017), 633.6 (same), 637.2 (amended 2016).

[7] S.B. 690, California Legislature 2025–2026 Regular Session (as amended March 24, 2025).

[8] Though the current version of the bill does not expressly create retroactivity, the language of the bill indicates that it was designed to clarify existing law in direct response to the avalanche of misguided litigation. In any event, the contours of the final bill and any accompanying statements of legislative intent are yet unknown.

**3. The Information Fox Allegedly Captures is Not the Type of Data that is Regulated by Section 638.51's Prohibition on Unauthorized "Pen Registers."**

Plaintiff alleges that, in addition to her IP address, the Tools capture her "[d]evice [m]etadata," which she defines to include "information such as device type[] and browser type." Am. Compl. ¶ 3. But even if the Court were to determine that Section 638.51 applies to websites, rather than to telephones only, the statute still does not apply here because neither Plaintiff's IP address nor her device metadata fall within the specific type of information a pen register collects under CIPA's definition.

As discussed *supra*, a pen register is a device installed on a targeted telephone to measure its outgoing electrical impulses, thereby revealing the *recipient* of the outbound communications—not its originator. *See, e.g., People v. Larkin*, 194 Cal. App. 3d 650, 653 n.2 (1987) ("A pen register. . . . registers the phone numbers dialed to make outgoing calls."). Put simply, pen registers enable law enforcement to identify the persons *to whom* targeted individuals in a criminal investigation are speaking. They do not, however, identify information about the *originator* of a communication. *See In re Application of U.S. for an Order Authorizing Use of a Pen Register & Trap On (XXX) Internet Serv. Acct./User Name, (xxxxxxxx@xxx.com)*, 396 F. Supp. 2d 45, 48 (D. Mass. 2005) (explaining a pen register "obtain[s] the internet addresses *accessed* by a person") (emphasis added).

Here, the only information the Tools allegedly obtain from Plaintiff is her IP address and her "[d]evice [m]etadata," which supposedly reveal information relating to the approximate location of her "desktop and mobile browsers." *See* Am. Compl. ¶¶ 189–192. This information, by definition, relates to the *origin* of her interactions with Fox. Because a "'pen register' is a device that records" information relating to the *recipient*—*i.e.*, "the numbers dialed for *outgoing* calls made from the target phone," rather than identification information about the originator of the outgoing calls, Plaintiff has not alleged a violation of Section 638.51. *See In re Application for Pen Register and Trap/Trace Device with Cell Site Location Authority*, 396 F. Supp. 2d 747, 752 (S.D. Tex. 2005) (emphasis added). A California court addressing this issue recently

concluded the same. *See* Minute Order at 5, *Marielita Palacios v. Fandom, Inc.*, Case No. 24STCV11264 (Cal. Super. Ct. Sept. 24, 2024) (holding the software at issue was "not a pen register" because it "d[id] not collect the destination information of communications" from the plaintiff's computer).[9]

Additionally, even accepting as true Plaintiff's conclusory allegations that the Tools capture "outgoing information" consistent with the definition of a pen register, *see* Am. Compl. ¶¶ 92, 110, 120, "[d]evice [m]etadata," such as the "device type" and "browser type" that Plaintiff allegedly used to access the Website, does not constitute "dialing, routing, addressing, or signaling" information within the plain language of CIPA, as such information does not provide the type of identifying information contemplated by the statute. *See, e.g.*, *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276 (2009) ("undefined" words in statutes carry their "ordinary meaning"). Indeed, even if Plaintiff were correct that the Tools collect information akin to "the specific handset" Plaintiff used to access the Website, Am. Compl. ¶ 44 n.2, such information tells us nothing about the path taken by the alleged communication nor its destination and thus does not constitute "addressing" information within the meaning of CIPA. Consequently, software designed to collect "[d]evice [m]etadata" cannot meet the definition of a "pen register" under Section 638.51.

**C. Section 638.51 Does Not Apply to the Voluntary Disclosure of IP Addresses.**

Plaintiff attempts to shoehorn every interaction between a website visitor and a website through which information is voluntarily provided (such as an IP address) into CIPA's narrow purview. But public policy—and common sense—broadly disfavor such an expansion. Indeed, a

---

[9] Additionally, Fox's alleged use of the Tools cannot implicate Section 638.51 because, even accepting the inapt characterization of Plaintiff's website visits as an outgoing "communication" of her IP address and device metadata to Fox, the statute applies only to communications for which both incoming and outgoing transmissions can be tracked—the former via a trap and trace device, and the latter by a pen register. Simply visiting a website (which is what Plaintiff alleges she did here) does not constitute such a communication. In this instance, there could be no corresponding incoming communication (and thus no related trap and trace device) because the Website does not transmit communications to Plaintiff. This mismatch further reveals the nonsensical nature of Plaintiff's theory of liability.

user's public-facing IP address is necessary to access any website, and it defies reason to suggest that website operators violate CIPA—with potential criminal exposure—merely by utilizing for advertising purposes information that a visitor voluntarily discloses.

Courts considering this issue under the federal Pen Register Act have recognized the risks of holding otherwise, concluding that the "Pen Register Act cannot be intended to prevent individuals who receive electronic communications from recording the IP information sent to them. If it did apply in those cases, *then the Internet could not function* because standard computer operations require recording IP addresses so parties can communicate with one another over the Internet." *Capitol Recs. Inc. v. Thomas-Rasset*, No. 06-1497, 2009 WL 1664468, at *3 (D. Minn. June 11, 2009) (emphasis added); *see also In re Innovatio IP Ventures, LLC Patent Litig.*, 886 F. Supp. 2d 888, 895 (N.D. Ill. 2012) (wherever "devices on a network ***necessarily receive addressing information***," the capture of such information cannot violate the prohibition on pen registers).

Indeed, the Court in *In re Innovatio* applied this logic to hold that the Pen Register Act cannot prohibit acquisition of addressing information automatically sent with data packets over Wi-Fi networks because, since "all Wi-Fi devices on a network necessarily receive addressing information to determine if a data packet is addressed to them, doing so would put any user of a Wi-Fi network on which a third party was also operating in violation of the Act." 886 F. Supp. 2d at 895. California courts have applied similar logic to Section 638.51 claims. *See, e.g.*, Minute Order at 6, *Jose Licea v. Hickory Farms LLC*, Case No. 23STCV26148 (Cal. Super. Ct. Mar. 13, 2024) (stating that public policy considerations militate against Plaintiff's theory that when a website visitor provides an IP address to a website operator "for purposes of connecting [to] the website," "every single [website] voluntarily visited by a potential plaintiff" results in a violation of CIPA).

Here, Plaintiff makes broad assertions about the privacy implications of the Tools' collection of IP addresses. *See, e.g.*, Am. Compl. ¶¶ 49–58. But what Plaintiff fails to mention is that the internet is *designed* to expose IP addresses to enable communication. Indeed, website operators "necessarily receive" this information, which is voluntarily disclosed through use of the

internet. *In re Innovatio IP Ventures, LLC.*, 886 F. Supp. 2d at 895. To penalize the collection or processing of Plaintiff's IP address or "[d]evice [m]etadata" would thus effectively criminalize the internet, and such an "anomalous outcome[]" based on an "unreasonable, and impermissible, interpretation of the statute's reach" should be rejected. *ACA Int'l v. FCC*, 885 F.3d. 687, 697 (D.C. Cir. 2018).[10]

## IV. ALTERNATIVELY, THIS COURT SHOULD STAY THIS CASE PENDING CONCLUSIVE LEGISLATIVE ACTION ON S.B. 690.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In considering whether to issue a stay, courts weigh: (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254–55). Courts have recognized that a stay is favored when pending legislation directly addresses the primary dispute in an action. *See, e.g.*, *Luckey v. U.S. Dep't of the Navy*, No. 18-CV-06071, 2019 WL 4059855, at *2 (N.D. Cal. Aug. 28, 2019) (granting a stay pending the outcome of the legislative process and explaining that "a central dispute before the Court is whether [certain case law] applies, and passage of the [pending legislation] would clarify (or even conclusively resolve) that question"); *Stinnie v. Holcomb*, 396 F. Supp. 3d 653, 661 (W.D. Va. 2019) (staying case based in part on possibility that

[10] To further illustrate the astonishing breadth of Plaintiff's claim, a finding that CIPA prohibits a website from receiving the user's IP address would be similar to a determination that CIPA prevents the recipient of a phone call from writing down the number of the person who called them—something CIPA assuredly does not do. It would also prevent any caller ID function that assists people in distinguishing telemarketing calls from those of their friends and family. The result would be that bad actors could place threatening calls or hack websites with impunity since they would have no fear of being identified.

Virginia Legislature would repeal offending provision, and noting that even if it failed to do so, there would be "ample time" for the court "to address the merits of the case").

Here, exercising discretion to impose a stay pending the outcome of the legislative process would "conserve judicial time and energy by allowing the [] Legislature to address the [sole issue in this matter], which may moot this litigation entirely." *Pavek v. Simon*, No. 19-CV-3000, 2020 WL 4013982, at *2 (D. Minn. July 16, 2020). Indeed, the central dispute in this matter is whether Section 638.51 prohibits Fox's alleged use of the Tools on the Website. As discussed *supra*, Fox anticipates that passage of S.B. 690 would cement the conclusion that CIPA does not apply to this conduct. The legislation passed the Senate on June 3, 2025 and is awaiting consideration by the Assembly.[11] The last day of the legislative session is September 12, 2025, and the fate of S.B. 690 will be determined by October 12, 2025—the last day for Governor Newsom to sign the bill into law.[12] Thus, the contours of the legislation and any accompanying statements of legislative intent will be finalized less than two months after the hearing on this Motion. Given the lack of harm arising from a short stay and the judicial efficiency that would result in a short pause of the matter pending legislative action, a stay is clearly warranted.

## V. CONCLUSION

The Court should dismiss Plaintiff's complaint with prejudice. Plaintiff's claim fails as a matter of law and any amendment would be futile, as the CCPA (and not CIPA) governs the conduct at issue. Fox therefore respectfully requests that this Court grant dismissal with prejudice and without leave to amend. *See Zadrozny v. Bank of N.Y. Mellon*, 720 F.3d 1163, 1173 (9th Cir. 2013) ("A party is not entitled to an opportunity to amend h[er] complaint if any potential amendment would be futile.") (alteration and citation omitted). Alternatively, Fox requests that the Court stay this action pending conclusive legislative action on S.B. 690.

---

[11] SB 690, Crimes: Invasion of privacy, 2025-2026 Reg. Sess. (Cal. 2025), https://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=202520260SB690 (last visited June 10, 2025).

[12] 2025 Legislative Deadlines, California State Assembly, https://www. assembly. ca.gov/schedules-publications/legislative-deadlines#month9 (revised Oct. 16, 2024).

Dated: June 10, 2025

JENNER & BLOCK LLP

By: */s/ Brandon D. Fox*

Brandon D. Fox
Kate T. Spelman
Rachael A. Goldman

Attorneys for Defendants
Fox Corporation and Fox News Network, LLC