**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Emily A. Horne (State Bar No. 347723)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
ehorne@bursor.com
jwilner@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7408
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SONNI ECHEVERRIA-CORZAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FOX CORPORATION and FOX NEWS NETWORK, LLC,<br><br>Defendants. | Case No. 3:25-cv-04253-AMO<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Date: August 28, 2025<br>Time: 2:00 p.m.<br>Courtroom: 10<br>Judge: Hon. Araceli Martínez-Olguín |

## TABLE OF CONTENTS

PAGE

INTRODUCTION ........ 1

ARGUMENT ........ 3

I. THE CIPA DOES NOT CONFLICT WITH THE CCPA ........ 3

II. CIPA §§ 638.50-638.51 APPLY TO DEFENDANTS' CONDUCT ........ 5

A. The Trackers Are "Pen Registers" Based On The Plain Text Of The CIPA, Which Controls ........ 5

1. Federal Courts Have Uniformly Held That Comparable Software Is Covered By CIPA §§ 638.50-638.51 ........ 5

2. Nothing In The Statutory Text Limits The Definition Of A "Pen Register" To Telephonic Equipment ........ 6

3. Defendants' Citations To Other Provisions Of The CIPA Do Not Affect The Plain Definition Of A "Pen Register" ........ 7

4. The California Supreme Court Has Rejected Defendants' Rule Of Lenity Argument As Applied To The CIPA ........ 9

5. The Federal Pen Register Act Does Not Affect The Plain Text Definition Of A "Pen Register" Under The CIPA ........ 9

B. California Supreme Court Precedent And The Legislative History Support Applying The CIPA To Defendants' Conduct ........ 10

III. IP ADDRESSES, DEVICE METADTA, AND UNIQUE USER IDENTIFIERS ARE "ROUTING, ADDRESSING, OR SIGNALING" INFORMATION ........ 12

IV. THE TRANSMISSIONS CAPTUERED BY THE TRACKERS ARE ELECTRONIC COMMUNICATIONS ........ 14

V. WEBSITE USERS DID NOT VOLUNTARILY DISCLOSE THEIR ADDRESSING INFORMATION TO THIRD PARTY DATA BROKERS AND DATA SELLERS ........ 15

VI. THIS ACTION SHOULD NOT BE STAYED BASED ON A PROSPECTIVE-ONLY BILL THAT HAS BEEN FROZEN IN THE LEGISLATURE ........ 17

CONCLUSION ........ 18

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*ACA Int'l v. FCC*,
885 F.3d 687 (D.C. Cir. 2018)........................................ 15

*Application of U.S. of America for an Order Authorizing Use of a Cellular Telephone Digital Analyzer*,
885 F. Supp. 197 (C.D. Cal. 1995)........................................ 10

*Capitol Recs. Inc. v. Thomas-Rasset*,
2009 WL 1664468 (D. Minn. June 11, 2009)........................................ 15

*Conohan v. Rad Power Bikes Inc.*,
2025 WL 1111246 (C.D. Cal. Apr. 3, 2025)........................................ 1, 15

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
603 U.S. 799 (2024)........................................ 1, 10, 18

*Droesch v. Wells Fargo Bank, N.A.*,
2021 WL 1817057 (N.D. Cal. May 6, 2021)........................................ 3, 17

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002)........................................ 11

*Gladstone v. Amazon Web Servs., Inc.*,
739 F. Supp. 3d 846 (W.D. Wash. 2024)........................................ 6, 8, 11

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023)........................................ passim

*Heiting v. FKA Distributing Co.*,
2025 WL 736594 n.3 (C.D. Cal. Feb. 3, 2025)........................................ 7, 14

*Howard v. Lab. Corp. of Am.*,
2024 WL 42560677 (M.D.N.C. Aug, 8, 2024)........................................ 9

*Howard v. Lab. Corp. of Am.*,
2024 WL 4326898 (M.D.N.C. Sept. 27, 2024)........................................ 9

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020)........................................ 15

*In re Innovatio IP Ventures, LLC Patent Litig.*,
886 F. Supp. 2d 888 (N.D. Ill. 2012)........................................ 15, 16

*Jackson v. Hill*,
2021 WL 12301887 (C.D. Cal. Oct. 20, 2021) ..................................................................... 17

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023)............................................................................... 6

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022)................................................................. 8, 11

*Lesh v. Cable News Network, Inc.*,
767 F. Supp. 3d 33 (S.D.N.Y. 2025) ........................................................................ passim

*Licea v. Hickory Farms LLC*,
2024 WL 1698147 (Cal. Super. Ct. Mar. 13, 2024).............................................. 15, 16

*Lopez v. Sony Elecs., Inc.*,
5 Cal. 5th 627 (2018)........................................................................................................ 4

*M.G. v. Therapymatch, Inc.*,
2024 WL 4219992 (N.D. Cal. Sept. 16, 2024)................................................................. 4

*Matera v. Google Inc.*,
2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) ................................................................ 11

*Mirmalek v. Los Angeles Times Communications LLC*,
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) .......................................................... passim

*Mollaei v. Otonomo Inc.*,
2025 WL 1163727 (9th Cir. Apr. 22, 2025).................................................................... 8

*Moody v. C2 Educ. Sys. Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024).................................................................... passim

*Nabors Corp. Servs., Inc. v. City of Long Beach*,
108 Cal. App. 5th 540 (2025)........................................................................................ 17

*Ribas v. Clark*,
38 Cal. 3d 355 (1985)...................................................................................................... 3

*Rodriguez v. Autotrader.com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025).............................................................. 1, 5, 15, 16

*Roney v. Miller*,
705 F. App'x 670 (9th Cir. 2017).................................................................................. 18

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024)..................................................................... passim

*Smith v. LoanMe, Inc.*,
11 Cal. 5th 183 (2021)...................................................................................................... 9

*Tate v. VITAS Healthcare Corp.*,
762 F. Supp. 3d 949 (E.D. Cal. 2025) ........ 6, 8

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) ........ 9, 12

*United States v. Hawkins*,
228 F.2d 517 (9th Cir. 1955) ........ 4

*United States v. Soybel*,
2020 WL 1452827 (7th Cir. Mar. 16, 2020) ........ 8

*United States v. Soybel*,
13 F.4th 584 (7th Cir. 2021) ........ 10

*United States v. Ulbricht*,
858 F.3d 71 (2d Cir. 2017) ........ 10

*Valentine v. NebudAd, Inc.*,
804 F. Supp. 2d 1022 (N.D. Cal. 2011) ........ 10, 11

*Venckiene v. United States*,
929 F.3d 843 (7th Cir. 2019) ........ 12, 17

*Vera v. O'Keefe*,
791 F. Supp. 2d 959 (S.D. Cal. 2011) ........ 9

*Yockey v. Salesforce, Inc.*,
745 F. Supp. 3d 945 (N.D. Cal. 2024) ........ 8

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........ 4

*Zarif v. Hwareh.com, Inc.*,
2025 WL 486317 (S.D. Cal. Feb. 13, 2025) ........ 5

**STATUTES**

18 U.S.C. § 3121 ........ 9

Cal. Civ. Code. § 1798 ........ 3, 4, 13

Cal. Pen. Code § 629.51 ........ 7, 14

Cal. Pen. Code § 637.7 ........ 8

Cal. Pen. Code § 638.50 ........ passim

Cal. Pen. Code § 638.51(a) ........ 14

Cal. Pen. Code § 638.52 ........ 7

**OTHER AUTHORITIES**

Assembly Bill 929 ........ 11

Senate Bill 690 ........ passim

Plaintiff Sonni Echeverria-Corzan ("Plaintiff") respectfully submits this opposition to Defendants Fox Corporation and Fox News Network, LLC's ("Defendants" or "Fox") Motion to Dismiss the First Amended Complaint (ECF No. 11) (the "Motion" or "MTD").

**INTRODUCTION**

In opposition to Plaintiff's claim under Sections 638.50-638.51 of the California Invasion of Privacy Act ("CIPA"), Defendants resort to a smorgasbord of 12(b)(6) arguments that have been widely rejected by federal courts. *See generally*, *e.g.*, *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924 (N.D. Cal. 2024); *Mirmalek v. Los Angeles Times Communications LLC*, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024); *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072 (C.D. Cal. 2024); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023); *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921 (C.D. Cal. 2025); *Conohan v. Rad Power Bikes Inc.*, 2025 WL 1111246 (C.D. Cal. Apr. 3, 2025) (same); *Lesh v. Cable News Network, Inc.*, 767 F. Supp. 3d 33 (S.D.N.Y. 2025). There is good reason for this. As the Supreme Court has held, held, "the text of a law controls over purported legislative intentions unmoored from any statutory text." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 815 (2024). Thus, "the Court's analysis must begin with the statutory text, and if that text is clear, must end there." *Shah*, 754 F. Supp. 3d at 929

The text of the CIPA is clear here. The CIPA defines a "pen register" broadly as a "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Pen. Code § 638.50(b). As the authorities Plaintiff cites above have held, this definition applies to software installed on website users' browsers and operated by third parties that collect users' IP addresses and other information, like Device Metadata[1] and unique user identifiers. Plaintiff alleges facts in line with those holdings here. *See*, *e.g.*, First Amended Complaint (ECF No. 1-1) (the "FAC") ¶¶ 2-3, 32-34, 63-65.

There is something different about Plaintiff's allegations here though: they allege a far more invasive course of conduct by Defendants than in other cases brought under CIPA § 638.51. Two of

[1] All capitalized terms not otherwise defined herein shall have the same meaning as in the FAC.

the Trackers that Defendants install on Website users' browsers here are operated by registered data brokers—PubMatic and OpenX. *See*, *e.g.*, *id.* FAC ¶¶ 67, 111, 127. PubMatic and OpenX's collection of Website users' information enables them and Defendants to de-anonymize and identify Website users by linking their information like IP addresses to comprehensive profiles of users that these entities maintain. *See*, *e.g.*, *id.* ¶¶ 56, 76-89, 134-139. This conduct is in and of itself harmful, as governmental organizations from the FTC to NATO have found. *See*, *e.g.*, *id.* ¶¶ 131-133. But it is compounded by the fact that PubMatic, OpenX, and Microsoft—the other Third Party whose Tracker Defendants install—then sell these comprehensive user profiles in real-time auctions to advertisers, a process known as "real time bidding." *Id.* ¶¶ 142-146. During this process, the information that is collected directly from Website users is linked to the profiles held by data brokers like PubMatic and OpenX, enriching the value of Website users' data and allowing their data to be sold for a higher price to advertisers. *Id.* ¶ 146. Defendants obviously profit from this arrangement, as the more valuable and more identifiable its users are, the more money it makes from the sale of Website user data through real-time bidding. *See*, *e.g.*, *Id.* ¶¶ 146, 159-161, 170, 177, 188, 192. And the real-time bidding process also causes significant harm to users. Indeed, as some privacy scholars have noted, this process, which was utilized by Defendants' Website is akin to "[t]he biggest data breach ever recorded" because of the sheer number of entities that receive personal information. *Id.* ¶ 150.

So, this case is not just about third parties who collect Website users' IP addresses. It is about Defendants placing the Trackers of data brokers (or companies who sync with data brokers) on users' Website browsers to de-anonymize and identify them, so that the users' data can be sold to advertisers for more money in real-time auctions, which results in greater profits for Defendants. *See*, *e.g.*, FAC ¶¶ 7, 131-134, 147-150. Defendants' installation and use of the Trackers expose Website users to incredibly invasive privacy harms in the span of milliseconds. *See*, *e.g.*, *Mirmalek*, 2024 WL 5102709, at *4 ("Plaintiff has plausibly alleged that she was injured by being tracked across multiple visits for marketing and advertising purposes, and that she did not expect or agree to such tracking.") (cleaned up). And all of this, Plaintiff alleges, is done without Website users' consent. *See*, *e.g.*, FAC ¶¶ 6, 193, 210. This is the conduct that Plaintiff alleges violates the CIPA.

On the other side, Defendants hope that the California State Legislature will give its invasive conduct a free pass with California Senate Bill 690 ("S.B. 690"). Except, that bill is not retroactive, has been frozen in the Assembly until 2026 after the bill faced "outstanding concerns around consumer privacy,"[2] and its ultimate form (and passage at all) is unknown. So, notwithstanding the Court must apply the law as it is currently written, there is no basis to stay this action based on a bill that has no impact on this case and that may never pass. *Droesch v. Wells Fargo Bank, N.A.*, 2021 WL 1817057, at *6 (N.D. Cal. May 6, 2021).

For the reasons set forth below, Defendants' Motion should be denied.

## <u>ARGUMENT</u>

### I. THE CIPA DOES NOT CONFLICT WITH THE CCPA

Defendants argue that Plaintiff's claims fail because the "CCPA—not CIPA—clearly governs." MTD at 5 (citing California Consumer Privacy Act Cal. Civ. Code § 1798.100, *et seq.* ("CCPA")). California case law says otherwise.

In *Mirmalek v. Los Angeles Times Commc'ns LLC*, 2024 WL 5102709, at *5 (N.D. Cal. Dec. 12, 2024), which also dealt with a CIPA § 638.51 claim, the court rejected defendant's identical argument and found the "CCPA does not preempt CIPA" because the "CCPA and CIPA are complementary." This is because the CIPA protects against the unauthorized surveillance of Californians without *prior* consent, while the CCPA governs how data is managed and used *after* it is collected. For instance, CIPA § 638.51 prohibits companies such as Defendant from installing a pen register that enables third parties to collect users' personal information without notice and consent. The CCPA sets forth what that notice and consent must look like (Cal. Civ. Code §§ 1798.100, 1798.115, 1798.130), and the right of consumers to opt-out of that collection (Cal. Civ. Code §§ 1798.120, 1798.135). And the CCPA pertains largely to information businesses collect and who they disclose it to later, whereas the CIPA, in contrast, focuses on prohibiting the "simultaneous dissemination" of that information "to an unannounced second auditor." *Ribas v. Clark*, 38 Cal. 3d 355, 360 (1985).

---

[2] Tyler Katzenberger, *California Democrat Delays Effort To Limit Data Privacy Lawsuits*, POLITICO (July 1, 2025), https://tinyurl.com/7ybpzdd2.

Moreover, the California Legislature "is presumed to know its own laws, and a later general statute does not overrule an earlier specific one unless it does so clearly." *United States v. Hawkins*, 228 F.2d 517, 518 (9th Cir. 1955); *see also Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 n.29 (C.D. Cal. 2021) ("Quantum Metric briefly suggests that it should be considered an extension of Lululemon under the California Consumer Privacy Act … but it offers no authority to suggest that the Consumer Privacy Act rewrote CIPA in that way."). Indeed, this Court had no trouble harmonizing CIPA and the CCPA in sustaining claims brought under both statutes. *See M.G. v. Therapymatch, Inc.*, 2024 WL 4219992, at *5, 7 (N.D. Cal. Sept. 16, 2024) (Martínez-Olguín, J.) (denying the defendant's motion to dismiss the CIPA *and* CCPA claims). Simply put, the "CCPA and CIPA are complementary." *Mirmalek*, 2024 WL 5102709, at *5.

However, even if there was a conflict between the CCPA and the CIPA (and there is not), the CIPA would govern by the CCPA's own terms. Specifically, Cal. Civ. Code. § 1798.175 provides: "in the event of a conflict between other laws and the provisions of this title, the provisions of the law that afford the greatest protection for the right of privacy for consumers shall control." By Defendants' own argument, the CIPA prohibits Defendants' conduct while the CCPA "expressly permits the specific online data collection Plaintiff alleges here." MTD at 6. Thus, as the court held in *Mirmalek*, 2024 WL 5102709, at *5, "by Defendant's own argument, CIPA should control" because the CIPA is more protective of consumer privacy.

Defendants' reliance on *Lopez v. Sony Elecs., Inc.*, 5 Cal. 5th 627 (2018), is inapposite. As an initial matter, *Lopez* did not deal with the CCPA, which explicitly holds that "the provisions of the law that afford the greatest protection for the right of privacy for consumers shall control" over it. Cal. Civ. Code § 1798.175. The statutes in *Lopez* lacked any similar provision. Moreover, the statutes in *Lopez* were "irreconcilable" because they had varying statutes of limitations. *Lopez*, 5 Cal. 5th at 634. Thus, "harmony [was] not possible" and the court had to determine which [of the two conflicting] limitations period the Legislature intended to apply." *Id*. Here, by contrast, there is nothing inconsistent about the simultaneous existence of the CIPA and CCPA: the former prohibits unauthorized collection of information, while the latter controls how that information is used once collected in an authorized manner.

## II. CIPA §§ 638.50-638.51 APPLY TO DEFENDANTS' CONDUCT

### A. The Trackers Are "Pen Registers" Based On The Plain Text Of The CIPA, Which Controls

#### *1. Federal Courts Have Uniformly Held That Comparable Software Is Covered By CIPA §§ 638.50-638.51*

Defendants argue that "Section 638.51's plain language shows that it applies to telephone communications, not any of the website data Plaintiff alleges the T[rackers] collect." MTD at 6. Federal courts adjudicating these claims beg to differ.

CIPA § 638.50(b) defines a "pen register" as a "device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." "Nothing in the statutory definition limits pen registers to those that operate the same way as a traditional phone pen register." *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 929 (N.D. Cal. 2024). On the contrary, the "California Legislature[] chose[]" "expansive language" for the definition of a "pen register" that "the Court cannot ignore"—language that is "specific as to the type of data [collected]," but "vague and inclusive as to the form of the collection tool" (*i.e.* "device or process"). *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023).

Thus, federal courts have universally held that online trackers or tracking software such as the Trackers at issue here are "pen registers." *See, e.g.*, *Shah*, 754 F. Supp. 3d at 929 (agreeing with "[p]laintiffs' theory [] that the third-party Trackers operate as pen registers under the meaning of the statute because they are processes that record users' IP addressing information"); *Mirmalek*, 2024 WL 5102709, at *3 ("[U]nder the inclusive language of CIPA's definition of a pen register, Plaintiff sufficiently alleges that the Trackers are a 'device or process…'"); *Moody v. C2 Educational Sys. Inc.*, 742 F. Supp. 3d 1072, 1076 (C.D. Cal. 2024) ("Plaintiff's allegations that the TikTok Software is embedded in the Website and collects information from visitors plausibly fall within the scope of §§ 638.50 and 638.51."); *Greenley*, 684 F. Supp. 3d at 1050 (finding software constituted a "pen register"); *Zarif v. Hwareh.com, Inc.*, 2025 WL 486317, at *12 (S.D. Cal. Feb. 13, 2025) (same); *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 929 (C.D. Cal. 2025) (same); *Lesh v. Cable News Network, Inc.*, 767 F. Supp. 3d 33, 40 (S.D.N.Y. Feb. 20, 2025) (same).

The Trackers here are "pen registers," either because they are "processes" or "devices." As to "processes," courts have held this term encompasses "software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting.'" *Greenley*, 684 F. Supp. 3d at 1050. Here, Plaintiff alleges that the Trackers are operated by data brokers who use the Trackers (in conjunction with Defendants) to de-anonymize and identify consumers through the information they collect from website users, combine that information into comprehensive profiles, and ultimately sell those profiles to numerous advertisers through the real-time bidding process. FAC ¶¶ 59-120, 121-124, 134-139, 148, 158, 159-161, 162-188.

As to "devices," "[i]t is far from clear that the plain and ordinary meaning of 'device' is limited to a physical or tangible object" and cannot include software. *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 958 (N.D. Cal. 2023). Indeed, a contrary ruling would "ignore[] the fundamental fact that, in order for software to work, it must be run on some kind of computing device." *Id*. It is artificial to claim that software must be viewed in isolation from the computing device on which it runs and with which it is inseparable in regard to the challenged conduct." *Id*. For that reason, courts have regularly construed other provisions of the CIPA that employ the word "device"—and where, like here, that term is not qualified by other language—to cover software. *See, e.g.*, *Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846, 856 (W.D. Wash. 2024) ("[T]he Court finds that 'device,' as used in [CIPA] Section 632, can include software."); *Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949, 958 (E.D. Cal. 2025) (same). Moreover, the statute's use of the "electronic communications" in defining a pen register suggests that software can fall under the definition. *See* Cal. Pen. Code § 638.50(b).

*2. Nothing In The Statutory Text Limits The Definition Of A "Pen Register" To Telephonic Equipment*

Defendants insist that a "pen register" must be "capable of attachment to a telephone line." MTD at 7. But neither the word "attachment" nor "telephone line" appears anywhere in the definition of a "pen register." Cal. Pen. Code § 638.50; *see also Lesh*, 767 F. Supp. 3d at 41 ("The statutory text includes no limitation to information transmitted by telephone or over a phone line."). On the contrary, the text of the statute is not only broad (*Greenley*, 684 F. Supp. 3d at 1050), it

expressly contemplates technology beyond telephones, vis-à-vis defining "pen registers" as including devices or processes that capture "wire *or* electronic communications[s]." Cal. Pen. Code § 638.50(b) (emphasis added); *see also Lesh*, 767 F. Supp. 3d at 41 ("[T]he definition of pen register in CIPA encompasses a variety of 'electronic communications.'").

*3. Defendants' Citations To Other Provisions Of The CIPA Do Not Affect The Plain Definition Of A "Pen Register"*

Defendants state that "[w]ire communications and electronic communications," as defined by Cal. Pen. Code § 629.51, "are limited to transfers of the human voice or other forms of intelligence." MTD at 7 (cleaned up). This misrepresents the law. A "wire communication" "means any aural transfer…," and an "aural transfer" means "a transfer containing the human voice." Cal. Pen. Code §§ 629.51(a)(1), (a)(4). But an "electronic communication" is defined to "not include … [a]ny wire communication." Cal. Pen. Code § 629.51(a)(2)(A). So, while a "wire communication" must involve the human voice, an "electronic communication" *explicitly cannot*. And a "pen register" is defined to include "a device or process that records or decodes … information transmitted by an instrument or facility from which a wire *or* electric communication is transmitted." Cal. Pen. Code § 638.50(b) (emphasis added).

Defendants also cite to Cal. Pen. Code § 638.52 to claim "the 'pen register' must be capable of attachment to a telephone line" through mentions of the words "attach[]" and "telephone line." MTD at 7-8 (cleaned up) (emphases removed). "Section 638.52, however, merely lists requirements relating to a particular type of pen register: one that is installed on a telephone line … But that does not alter the statutory definition of a pen register stated in § 638.50(b) or the prohibition on non-law enforcement use of such pen registers." *Shah*, 754 F. Supp. 3d at 930; *see also Moody*, 742 F. Supp. 3d at 1076 ("Though § 638.52 refers to pen registers and trap and trace devices as physically attached to telephone lines, the definitions set forth under § 638.50 do not state any such requirement."); *Lesh*, 767 F. Supp. 3d at 41 (rejecting same argument as Defendants bring here and noting "[t]he Court will not read the term 'telephone' into Section 638.50 just because the word is used in another section of the statute that bears little relevance here"); *Heiting v. FKA Distributing Co.*, 2025 WL 736594, at *3 n.3 (C.D. Cal. Feb. 3, 2025) ("California Penal Code section 638.52, which governs the

authorization of the use of pen register or trap and trace devices by law enforcement officers, references telephone lines to which the pen register or trap and trace device is to be attached, but neither section 638.50 nor section 638.51 makes reference to telephone lines.")

Defendants' argument that "Plaintiff's proposed interpretation of Section 638.51 … would bar law enforcement from ever utilizing software to track website interactions" because "they would be unable to obtain an order specifying the 'telephone line'" (MTD at 8:1-4) is flat wrong. Federal law enforcement officers have had no issues procuring an order authorizing a pen register that collects electronic information. *See* Brief of the United States, *United States v. Soybel*, 2020 WL 1452827, at *7 (7th Cir. Mar. 16, 2020) (noting law enforcement applied to, and a court authorized, the installation and use of "a pen register to record and decode … information (including IP addresses, MAC addresses, port numbers, packet headers, and packet size) for all electronic communications transmitted to or from the Subject IP address"); *see also id.* (noting said pen register was installed "on network switches housed in the … building's mechanical room").

Defendants also cite to *Mollaei v. Otonomo Inc.*, 2025 WL 1163727 (9th Cir. Apr. 22, 2025), which Defendants claim supports a narrow interpretation of CIPA § 638.50 here. *Mollaei*, however, involved CIPA § 637.7. *Id*. That provision of CIPA narrowly defines an "electronic tracking device" as "any device attached to a vehicle or other movable thing." Cal. Pen. Code § 637.7(d). Based on this definition, the Ninth Circuit concluded that software "installed during manufacturing" were not "attached to a vehicle." *Mollaei*, 2025 WL 1163727, at *2-3. CIPA § 638.50(b), by contrast, does not define a "pen register" so narrowly, such as through the use of the words "attached." For this reason, courts have regularly distinguished the narrow definitions in CIPA § 637.7 from other provisions of the statute that, like those here, are drafted more broadly. *See Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 955 n.6 (N.D. Cal. 2024) (distinguishing definitions in CIPA § 637.7 from definition of "device" for purposes of CIPA § 632); *Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949, 957-58 (E.D. Cal. 2025) (same); *Gladstone*, 739 F. Supp. 3d at 857 (same); *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, Section 631(a) applies to Internet communications.").

*4. The California Supreme Court Has Rejected Defendants' Rule Of Lenity Argument As Applied To The CIPA*

Defendants also incorrectly argue that the rule of lenity applies to the present action and "to the extent that any section of CIPA is ambiguous or the Court cannot ascertain legislative intent … the Court should construe any doubt in favor of [Defendants]." MTD at 6 n.3. As an initial matter, "the rule of lenity only applies where there is a grievous ambiguity or uncertainty in the language and structure of the statute." *Vera v. O'Keefe*, 791 F. Supp. 2d 959, 964 (S.D. Cal. 2011) (cleaned up). But there is no ambiguity—let alone "grievous ambiguity"—in the text of the CIPA § 638.50. On the contrary, the "text is clear." *Shah*, 754 F. Supp. 3d at 929. And "the California Supreme Court has instructed courts to interpret CIPA in the manner that fulfills the legislative purpose of CIPA by giving greater protection to privacy interests," which includes enforcement by private citizens. *See Shah*, 754 F. Supp. 3d at 930 (cleaned up).

Moreover, "the rule of lenity does not apply every time there are two or more reasonable interpretations of a penal statute." *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 202 (2021). For this reason, no less than the California Supreme Court has rejected the rule of lenity's application to other provisions of the CIPA where the statute's language was in dispute. *See id.* (declining to "apply the rule of lenity" to CIPA § 632.7); *see also Vera*, 791 F. Supp. 2d at 965 ("Giles has at most shown that a narrower interpretation of [CIPA] § 632 is conceivable, but that is insufficient to establish ambiguity."); ); *Howard v. Lab. Corp. of Am.*, 2024 WL 42560677, at *8 (M.D.N.C. Aug, 8, 2024), *report and recommendation adopted*, 2024 WL 4326898 (M.D.N.C. Sept. 27, 2024) (rejecting application of rule of lenity to CIPA because "the statutes appear to apply, at least facially, to the conduct alleged"). Defendants' citations to a California decision covering a different statute and a decision by a Massachusetts court that also did not involve the CIPA are unpersuasive.

*5. The Federal Pen Register Act Does Not Affect The Plain Text Definition Of A "Pen Register" Under The CIPA*

Defendants contend a "similar issue" that arises under the "federal Pen Register Act [18 U.S.C. § 3121]" supports their position that the CIPA only applies to telephonic pen registers. MTD at 8; *see id.* at 8-9. Contrary to Defendants' arguments, the federal pen register act *has* been applied to monitoring internet communications. *See United States v. Forrester*, 512 F.3d 500, 510 (9th Cir.

2008) ("We conclude that the surveillance techniques [that reveal IP addresses] are constitutionally indistinguishable from the use of a pen register."); *United States v. Soybel*, 13 F.4th 584, 586-87 (7th Cir. 2021) (pen register installed under federal statute "to monitor internet traffic in and out of the building generally and Soybel's unit specifically"); *United States v. Ulbricht*, 858 F.3d 71, 83 (2d Cir. 2017) (same "to monitor Internet Protocol ('IP') address traffic to and from various devices associated with Ulbricht"). Regardless, as the *Lesh* court held:

> [Defendants'] argument that the *federal* Pen[] Register Act is limited to information transmitted on telephone lines – and thus CIPA should be limited to telephone lines – is without merit. [Plaintiff] does not bring any claims under the federal Pen[] Register Act and, as explained above, CIPA broadly defines "pen register." The Court will not use a similar federal statute so as to read a requirement into the text of a California statute.

*Lesh*, 767 F. Supp. 3d at 41 (emphasis in original); *Moody*, 742 F. Supp. 3d at 1076 (rejecting argument that limitations in federal pen register statute should be applied to California law).[3] Indeed, the ECPA—which encompasses the federal pen register law—does not preempt more protective state laws. *Valentine v. NebudAd, Inc.*, 804 F. Supp. 2d 1022, 1029 (N.D. Cal. 2011) ("[T]he ECPA does not preempt the CIPA."). Thus, even if the federal pen register law was limited to telephonic devices (and it is not), that would have no bearing on the CIPA.

**B. California Supreme Court Precedent And The Legislative History Support Applying The CIPA To Defendants' Conduct**

Defendants also argue that CIPA § 638.51's "legislative history similarly demonstrates that the statute was never intended to apply to web-based advertising technology." However, "the text of a law controls over purported legislative intentions unmoored from any statutory text," and "the Court may not replace the actual text with speculation as to Congress' intent." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 815 (2024). And as the "text is clear" here, "the Court's analysis … must end there." *Shah*, 754 F. Supp. 3d at 929; *see also* Argument § II.A, *supra*.

Even incorporating legislative intent, Defendants are still wrong. "CIPA was passed, in part, because 'the development of new devices and techniques for the purpose of eavesdropping upon

[3] *Moody* also distinguished *Application of U.S. of America for an Order Authorizing Use of a Cellular Telephone Digital Analyzer*, 885 F. Supp. 197 (C.D. Cal. 1995), which is the sole case Defendants rely on for this point. MTD at 8:11-13

private communications [] has created a serious threat to the free exercise of personal liberties.'" *Lesh*, 767 F. Supp. 3d at 41 (quoting Cal. Pen. Code § 630). "In light of this intent, the California Supreme Court has instructed courts to interpret CIPA in the manner that 'fulfills the legislative purpose of CIPA by giving greater protection to privacy interests.'" *Matera v. Google Inc.*, 2016 WL 8200619, at *19 (N.D. Cal. Aug. 12, 2016) (Koh, J.) (quoting *Flanagan v. Flanagan*, 27 Cal. 4th 766, 775 (2002)). "As such, courts have repeatedly held that [the] provisions of CIPA are not limited to the traditional versions of the tools at issue, based on the plain language of the statute, the California Supreme Court's pronouncements regarding the broad legislative intent underlying CIPA to protect privacy, and the California courts' approach to updating obsolete statutes in light of emerging technologies." *Shah*, 754 F. Supp. 3d 930-31 (cleaned up); *Javier*, 2022 WL 1744107, at *1 ("Though written in terms of wiretapping, Section 631(a) applies to Internet communications."); *Gladstone*, 739 F. Supp. 3d at 856 ("[T]he Court finds that 'device,' as used in [CIPA] Section 632, can include software.").

Defendants ignore this legislative history and cite to Assembly Bill 929. *See* MTD at 10. "Those materials, however, merely describe traditional telephone-based pen registers as being among the variety of electronic tools used by law enforcement "to apprehend criminals in this age of rapidly changing technology." *Shah*, 754 F. Supp. 3d at 930 n.2. "Nowhere in those materials did the Legislature state an intent to add a statutory requirement limiting pen registers to those traditional forms." *Id*. Defendants further argue that because the "California legislature deliberately chose not to mirror amendments made to the analogous federal Pen Register Act," the CIPA must apply to only telephone lines. MTD at 10. But there is no requirement that these two statutes be identical. *Lesh*, 767 F. Supp. 3d at 41 ("The Court will not use a similar federal statute so as to read a requirement into the text of a California statute."). And again, the ECPA does not preempt more protective state laws. *Valentine*, 804 F. Supp. 2d at 1029.

Defendants also cite to an unenacted bill, S.B. 690, as illustrative of legislative intent. MTD at 11. This is a tenuous argument. As discussed in more detail below, that bill does not apply retroactively, has been tabled for the entirety of the 2025 legislative session based on strong opposition from immigrant groups, domestic violence survivors, and privacy advocates, and its

ultimate form (or passage at all) is unknown. Argument § V, *infra*. Thus, it is unclear at best what legislative policy S.B. 690 represents. Regardless, "[f]ederal courts apply duly enacted laws; they do not try to guess which bills may or may not be enacted into law." *Venckiene v. United States*, 929 F.3d 843, 864 (7th Cir. 2019). Thus, the Court must apply CIPA as written, not as an unenacted amendment purports to alter it based on guesses about what the bill's sponsor alone wants.

## III. IP ADDRESSES, DEVICE METADTA, AND UNIQUE USER IDENTIFIERS ARE "ROUTING, ADDRESSING, OR SIGNALING" INFORMATION

Defendants contend that "even if the Court were to determine that Section 638.51 applies to websites, rather than to telephones only, the statute still does not apply here because neither Plaintiff's IP address nor her device metadata fall within the specific type of information a pen register collects" under the CIPA. MTD at 12:6-9. Defendants ignore Plaintiff's allegations regarding the capture of her unique user identifiers, which Plaintiff also alleges constitute "addressing" information. *See*, *e.g.*, FAC ¶¶ 72, 92, 97, 110, 115. Regardless, Defendants are wrong.

*First*, as numerous courts have held, Plaintiff's IP address constitutes "routing, addressing, or signaling information" under the CIPA. *See, e.g.*, *Shah*, 754 F. Supp. 3d at 929 ("[T]he IP addresses collected by the Trackers fall within the statutory definition of 'addressing' information."); *Mirmalek*, 2024 WL 5102709, at *4 ("Plaintiff adequately alleges that the Trackers record addressing information in the form of IP addresses."); *Lesh*, 767 F. Supp. 3d at 40 ("[T]he IP addresses collected by the Trackers qualify as 'addressing information' under the statute."). Indeed, the Ninth Circuit held almost twenty years ago that "IP addresses constitute addressing information" under the federal pen register act. *Forrester*, 512 F.3d at 511. This is so because IP addresses "determine[] the general geographic coordinates of the user who is accessing a website" (*i.e.*, "addressing" information), and are "sending or directing the user's communication from the router in their home or work to the website they are communicating with" (*i.e.*, "routing" or "signaling" information). FAC ¶¶ 47-48.

*Second*, Plaintiff's Device Metadata and unique user identifiers also constitute "addressing" information. *See, e.g.*, FAC ¶¶ 30-34, 64, 72-77, 81-92, 97-110, 114-120 ("cookie" and "user-agent" strings show unique identifiers and Device Metadata being collected by the Trackers); *see also Moody*, 742 F. Supp. 3d at 1077 (finding "device and browser information" "fall within the scope of

the statute). All three pieces of information—IP addresses, Device Metadata, and unique user identifiers—thus constitute "addressing" information because they are used by the data broker operators of the Trackers to de-anonymize and identify Website users by using those pieces of information to match Website users to comprehensive profiles. FAC ¶¶ 67-81, 93-100, 111-120, 146, 152-161, 178-188; *see also Greenley*, 684 F. Supp. 3d at 1050 ("software that identifies consumers" is a pen register). Or, in other words, if someone's name would be "addressing" information because it allows for the identification of a user, then so should information that can be linked to a name and thus identify a user. *Cf.* Cal. Civ. Code § 1798.140(v) (defining "personal information" as including information "reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household").

*Third*, Defendants argue that even if this information falls within the purview of the statute (which it does), "pen registers enable law enforcement to identify the persons *to whom* targeted individuals in a criminal investigation are speaking. They do not, however, identify information about the *originator* of a communication." MTD at 12:14-16. The text of the CIPA says otherwise. The CIPA defines a "pen register" as a "device or process that records or decodes … information *transmitted by* an instrument or facility *from which* a wire or electronic communication is transmitted." Cal. Pen. Code § 638.50(b) (emphasis added).

Nothing about that "statutory definition limits pen registers to those that operate the same way as a traditional phone pen register." *Shah*, 754 F. Supp. 3d at 929. Instead, the statute's definition makes clear that the Trackers qualify as a "pen register" if they "record addressing information *transmitted by* the user's computer or smartphone in connection with the outgoing HTTP request to [Defendants'] website, regardless of whether that addressing information pertains to the sender or the recipient of the communication at issue." *Id.* (emphasis added); *see also id.* ("By the plain meaning of § 638.50(b), collection of the recipient phone number or IP address is not a required element."); *Mirmalek*, 2024 WL 5102709, at *4 (following *Shah*); *Lesh*, 767 F. Supp. 3d at 40 (same). Based on this plain language, courts have held that a tracker is a "pen register" under Cal.

Pen. Code § 638.50(b) if it "identifies consumers, gathers data, and correlates that data through unique 'fingerprinting.'" *Greenley*, 684 F. Supp. 3d at 1050. Per the above, Plaintiff has so alleged.[4]

**IV. THE TRANSMISSIONS CAPTUERED BY THE TRACKERS ARE ELECTRONIC COMMUNICATIONS**

In a footnote, Defendants contend "the statute applies only to communications for which both incoming and outgoing transmissions can be tracked tracked—the former via a trap and trace device, and the latter by a pen register. Simply visiting a website … does not constitute such a communication." MTD at 13 n.9. As to the former contention, the statute requires no such thing. The CIPA prohibits the non-consensual installation or use of "a pen register *or* a trap and trace device." Cal. Pen. Code § 638.51(a) (emphasis added). The statute does not require both devices—or the presence of both incoming and outgoing communications—to be actionable.

As to the latter, Cal. Pen. Code § 629.51(a)(2) defines an "[e]lectronic communication" as "any transfer of signs, signals, writings, images, sounds, data, or intelligence of any nature." *See also* Cal. Pen. Code § 638.50(a) ("'Wire communication' and 'electronic communication' have the meanings set forth in subdivision (a) of Section 629.51."). As courts have held, "[t]he HTTP request transmitted from users' computers or smartphones constitutes an electronic communication, and the Trackers record the addressing information associated with this communication." *Shah*, 754 F. Supp. 3d at 931; *Mirmalek*, 2024 WL 5102709, at *4 (following *Shah* and noting "Plaintiff alleges that users' devices transmit electronic communication in the form of Hypertext Transfer Protocol (HTTP) or GET requests to load Defendant's website.") (cleaned up); *Lesh*, 767 F. Supp. 3d at 40 ("These facts adequately allege the transmission of an electronic communication."). Plaintiff here alleges that when she accessed the Website, multiple such "signals" or "data" were transmitted from her computer to the Trackers that Defendants installed. *See*, *e.g.*, FAC ¶¶ 30-32, 62-64, 70-73, 96-97, 114-115.

---

[4] At worst, even if Defendants were correct (and they are not), that would simply mean Defendant installed "trap and trace devices" on Plaintiff's browser rather than "pen registers," and either is sufficient to state a CIPA § 638.51 claim. *See Heiting*, 2025 WL 736594, at *3 (finding software that "identifies the source of visitors to Defendant's website" was a "trap and trace device").

## V. WEBSITE USERS DID NOT VOLUNTARILY DISCLOSE THEIR ADDRESSING INFORMATION TO THIRD PARTY DATA BROKERS AND DATA SELLERS

Defendants rely on inapposite caselaw to attempt to contend that users "voluntarily provided" their IP addresses to Defendants, who, as website operators, "necessarily receive this information" by visiting the Website. MTD at 13-15. As numerous courts have found, that mischaracterizes Plaintiff's claim.

Plaintiff's claim is *not* that Defendants themselves collected the information at issue to "communicate" with users. Instead, Plaintiff's claim concerns the *Third Parties'* collection of her personal information (as caused by Defendants' installation of their Trackers). *See*, *e.g.*, FAC ¶¶ 2, 32, 34, 70-72, 92, 96-97, 110, 114-115, 120, 124, 159. And "[a] user who consents to disclose their IP address to [Defendants] as part of accessing [their] website does not necessarily consent to disclose their IP address to the third parties operating the Trackers." *Shah*, 754 F. Supp. 3d at 932; *see also Conohan v. Rad Power Bikes Inc.*, 2025 WL 1111246, at *6 (C.D. Cal. Apr. 3, 2025) (following *Shah* on this point); *Autotrader.com*, 762 F. Supp. 3d at 930 (rejecting same argument Defendant makes here where the plaintiff alleged her "information was sent to third parties, not just Defendant"). Indeed, to sustain a consent argument at the motion to dismiss stage, Defendants "bear the burden to [show]… the allegations of the complaint established consent as a matter of law." *Shah*, 754 F. Supp. 3d at 931 (citing *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 823 (N.D. Cal. 2020)). Specifically, Defendants bear the burden to establish that the "user agreed to the specific use or collection." *Id.* at 932. Defendants make no such effort here.

Defendants' citations should not persuade. Defendants cite to cases where the users sued the operator of the website who were collecting their IP addresses directly. MTD at 14 (citing *Capitol Recs. Inc. v. Thomas-Rasset*, 2009 WL 1664468 (D. Minn. June 11, 2009); *In re Innovatio IP Ventures, LLC Patent Litig.*, 886 F. Supp. 2d 888 (N.D. Ill. 2012); *Licea v. Hickory Farms LLC*, 2024 WL 1698147 (Cal. Super. Ct. Mar. 13, 2024)).[5] The *Shah* court distinguished authorities like these (including *Capital Records* explicitly) as "involv[ing] situations where users were directly

[5] Defendants also cite to *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018). But that case did not consider the federal or California pen register statute, nor did the *ACA Int'l* court examine internet communications containing device identifiers and IP addresses that were recorded by data brokers.

communicating with the party alleged to be operating the pen register and voluntarily sent that party their IP address." *Shah*, 754 F. Supp. 3d at 932 n.3; *see also Licea v. Hickory Farms LLC*, 2024 WL 1698147, at *4 (Cal. Super. Ct. Mar. 13, 2024) (pinning analysis on collection of IP address "for purposes of connecting the website," rather than collection by third party). But that is different than the claim here, where Defendants' installation of the Tracked caused the *Third Parties* to collect Plaintiffs' information. *Shah*, 754 F. Supp. 3d at 932. The *In re Innovatio* court also found the statute inapplicable because (i) the court was "without adequate briefing on the subject," and (ii) the technology at issue seemingly collected the "content of an electronic communication," which falls outside the purview of the pen register statute. *In re Innovatio IP Ventures, LLC Patent Litig.*, 886 F. Supp. 2d at 895.

Defendants also make the hyperbolic arguments that Plaintiff's interpretation "would be similar to a determination that CIPA prevents the recipient of a phone call from writing down the number of the person who called them … It would also prevent any caller ID function that assists people in distinguishing telemarketing calls from those of their friends and family." MTD at 15 n.10. As an initial matter, "[i]t does not appear that the Website's tracking software is analogous to a caller ID system" because "[u]nlike a caller ID system, which is installed on the call recipient's device, the Website installs the tracking software on the visitor's browser." *Autotrader.com*, 762 F. Supp. 3d at 930. For these same reasons, the Trackers are not "analogous" to writing down someone's number. And in both of those instances, the *only* recipient of the information is the other party to the communication, not a third party, meaning the voluntary provision exception can apply. *See Shah*, 754 F. Supp. 3d at 932.

But Plaintiff must be clear again. The Trackers are not just writing someone's number down. They are operated by Third Parties that use the information they collect to de-anonymize users, link their information to profiles, and sell their information to advertisers for Defendants' benefit. *See, e.g.*, FAC ¶¶ 76-89, 100-107, 124, 134-139, 144-146, 158-188.[6] That is such a far cry from the limited capabilities of caller ID or a notepad that it makes Defendants' comparison laughable.

---

[6] Ironically, one of the harms caused by the collection of information by data brokers—which Defendants cause here—is an increase in spam, phishing attacks, and identity theft. FAC ¶ 134. So while Defendants claim Plaintiff would outlaw caller ID that protects against annoying telemarketing

In short, Defendants cannot escape the fatal flaw in their argument: that Plaintiff's actual claim is about the collection of information by the *Third Parties* (as caused by Defendants' installation and use of the Trackers). And it is not necessary or voluntary for third party data brokers or data sellers to collect this information to de-anonymize users, compile comprehensive profiles and them, and sell users' information to advertisers at Defendant's behest. *See*, *e.g.*, FAC ¶¶ 124, 159-161.

## VI. THIS ACTION SHOULD NOT BE STAYED BASED ON A PROSPECTIVE-ONLY BILL THAT HAS BEEN FROZEN IN THE LEGISLATURE

Absent a persuasive argument in favor of dismissal, Defendants ask this Court to stay this action pending the California State Legislature's pending decision on S.B. 690. *See* MTD at 15-16. This is so, Defendants contend, because S.B. 690 would "address the sole issue in this matter, which may moot this litigation entirely." *Id.* at 16:4-5 (cleaned up). Yet courts do not stay actions based on proposed legislation. Indeed, "[i]f courts were to stay actions every time new legislation was introduced the judicial system would grind to a halt." *Droesch v. Wells Fargo Bank, N.A.*, 2021 WL 1817057, at *6 (N.D. Cal. May 6, 2021); *Jackson v. Hill*, 2021 WL 12301887, at *2 (C.D. Cal. Oct. 20, 2021) ("The Court finds that this pending legislation is too tenuous to form a basis to stay the [petition]."). And Defendants "cite[] no legal authority for [their] suggestion that pending legislation should entitle [them] to a stay." *Venckiene v. United States*, 929 F.3d 843, 864 (7th Cir. 2019). Nor can they, because "[f]ederal courts apply duly enacted laws; they do not try to guess which bills may or may not be enacted into law." *Id.*

There are at least three additional reasons why the Court should not stay this action pending S.B. 690. *First*, the bill's retroactive application was struck following strong opposition,[7] meaning even enactment of the bill as written will have zero impact on this case. *See also Nabors Corp. Servs., Inc. v. City of Long Beach*, 108 Cal. App. 5th 540, 556-57 (2025) ("[I]n the absence of an express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature … must have intended a retroactive application …

calls or website hacking (and Plaintiff does no such thing), the research suggests it is Defendants' conduct that is leading to these consequences.

[7] CALIFORNIA SENATE BILL 690, https://legiscan.com/CA/text/SB690/2025.

Consequently, a statute that is ambiguous with respect to retroactive application is construed … to be unambiguously prospective.") (cleaned up).

*Second*, recent developments mean the bill will *not* "be finalized less than two months after the hearing on this Motion." MTD at 16:12-13. Specifically, the bill has been frozen in the Assembly until 2026 after the bill faced "outstanding concerns around consumer privacy."[8] During this pause, it is possible the bill will be amended and rewritten to address these concerns. Thus, if S.B. 690 ever passes (which is unclear), it will not be until next year, and its ultimate form remains up in the air.

*Finally*, Defendants claim the bill bears on this lawsuit because it would "clarify existing law." MTD at 11 n.8. Except, the bill represents the intent of its sponsors, not the legislature. And the intent of a bill's sponsor cannot overcome the plain text of the law. *Corner Post*, 603 U.S. at 815 ("[T]he text of a law controls over purported legislative intentions unmoored from any statutory text," and "the Court may not replace the actual text with speculation as to Congress' intent."). Moreover, S.B. 690 states it would "specify that a pen register does not include a device or process used in a manner consistent with a commercial business purpose."[9] In other words, the bill is not clarifying legislative intent or re-writing the CIPA. Instead, it is an implicit acknowledgment that CIPA's plain text covers Defendants' conduct and thus requests a broad exemption to excuse privacy-invasive conduct like Defendants'. And again, the text controls.

In sum, S.B. 690 is a bill whose passage is unknown—both when it may occur (if at all) and what form it will take—and which will have zero effect on this lawsuit as a prospective only bill. And it is an implicit acknowledgment that the text of the CIPA as written applies to Defendants' conduct, which ends the inquiry. Even if prospective legislation could be a basis to stay an action (and it is not), S.B. 690 would not fit that bill.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' Motion. If the Court grants the Motion in any respect, Plaintiff respectfully requests leave to amend. *See Roney v. Miller*, 705

---

[8] Tyler Katzenberger, *California Democrat Delays Effort To Limit Data Privacy Lawsuits*, POLITICO (July 1, 2025), https://tinyurl.com/7ybpzdd2.

[9] CALIFORNIA SENATE BILL 690, https://legiscan.com/CA/text/SB690/2025.

F. App'x 670, 671 (9th Cir. 2017) (holding lower court erred in denying leave to amend after dismissing first amended complaint).

Dated: July 8, 2025

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Emily A. Horne*
Emily A. Horne

L. Timothy Fisher (State Bar No. 191626)
Emily A. Horne (State Bar No. 347723)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
ehorne@bursor.com
jwilner@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7408
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com

*Attorneys for Plaintiff*