**JENNER & BLOCK LLP**
Brandon D. Fox (SBN 290409)
BFox@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA 90071-2246
Telephone: +1 213 239 5100
Facsimile: +1 213 239 5199

**JENNER & BLOCK LLP**
Kate T. Spelman (SBN 269109)
KSpelman@jenner.com
Rachael A. Goldman (SBN 335138)
RGoldman@jenner.com
2029 Century Park East, Suite 1450
Los Angeles, CA 90067-2901
Telephone: +1 213 239 6900
Facsimile: +1 213-239 5199

Attorneys for Defendants
Fox Corporation and Fox News Network, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

SONNI ECHEVERRIA-CORZAN, individually and on behalf of all others similarly situated,

Plaintiff,

v.

FOX CORPORATION and FOX NEWS NETWORK, LLC,

Defendants.

Case No. 3:25-cv-04253-AMO

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Judge: Hon. Araceli Martínez-Olguín
Ctrm: 10
Date: November 6, 2025
Time: 2:00 p.m.

# TABLE OF CONTENTS


I. INTRODUCTION ....................................................................................................1

II. ARGUMENT ..........................................................................................................2

A. The CCPA Governs and Expressly Permits Fox's Alleged Data Collection Absent Consumer Opt-Outs. ..........................................................................................2

1. The CCPA Controls and Does Not Conflict with CIPA. ......................................2

a. The CCPA's scope includes the collection of data. ....................................3

b. CIPA does not require Fox to obtain users' opt-in consent. ........................4

B. Plaintiff Does Not Plausibly Allege that Fox Used a "Pen Register." ..........................5

1. By Its Plain Text, Section 638.51 Applies Only to Telephone Communications....6

2. The Legislative History of Section 638.51 Also Shows It Applies Only to Telephone Communications. ..................................................................10

3. The Data at Issue Is Not Regulated by Section 638.51's Prohibition on Unauthorized "Pen Registers" and "Trap and Trace Devices." ..........................11

C. Fox's Request for a Stay. .........................................................................................12

III. CONCLUSION .......................................................................................................12

# TABLE OF AUTHORITIES

**Cases** **Page(s)**


*In re Appl. of U.S. for an Order Authorizing the Use of a Cellular Tel. Digit. Analyzer*,
885 F. Supp. 197 (C.D. Cal. 1995) ....................8

*Aviles v. Liveramp, Inc.*,
Case No. 24STCV19869, 2025 WL 487196 (Cal. Super. Ct. Jan. 28, 2025)....................11

*Berkeley Ctr. for Indep. Living v. Coyle*,
42 Cal. App. 4th 874 (1996) ....................6

*Casillas v. Transitions Optical, Inc.*,
Case No. 23STCV30742, 2024 WL 4873370 (Cal. Super. Ct. Sept. 9, 2024) ....................11

*Gabrielli v. Motorola Mobility LLC*,
Case No. 24-cv-09533-JST, 2025 WL 1939957 (N.D. Cal. July 14, 2025) ....................7

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) ....................11

*Khamooshi v. Politico LLC*,
No. 24-cv-07836-SK, 2025 WL 1408896 (N.D. Cal., May 13, 2025) ....................11

*Lesh v. Cable News Network, Inc.*,
767 F. Supp. 3d 33 (S.D.N.Y. 2025)....................9

*Mirmalek v. L.A. Times Commc'ns LLC*,
Case No. 24-cv-01797-CRB, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ....................5

*Mt. Hawley Ins. Co. v. Lopez*,
215 Cal. App. 4th 1385 (2013) ....................6

*Pac. Palisades Bowl Mobile Ests., LLC v. City of Los Angeles*,
55 Cal. 4th 783 (2012) ....................4

*People v. Avery*,
27 Cal. 4th 49 (2002) ....................9

*Ret. Assoc. v. Bellino*,
126 Cal. App. 4th 781 (2005) ....................6, 7

*Riganian v. LiveRamp Holdings, Inc.*,
Case No. 25-cv-00824-JST, 2025 WL 2021802 (N.D. Cal. July 18, 2025) ....................7

*Sanchez v. Cars.com Inc.*,
No. 24STCV13201, 2025 WL 487194 (Cal. Super. Ct. Jan. 27, 2025)....................9

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) ....................6, 7

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) ....................8, 12

*United States v. Hawkins*,
228 F.2d 517 (9th Cir. 1955) ....................5

*United States v. Rosenow*,
50 F.4th 715 (9th Cir. 2022) ....................12

*United States v. Soybel*,
13 F.4th 584 (7th Cir. 2021) ....................8

*United States v. Ulbricht*,
858 F.3d 71 (2d Cir. 2017)....................8

*Vera v. O'Keefe*,
791 F. Supp. 2d 959 (S.D. Cal. 2011)....................9

**Statutes**

18 U.S.C. § 3123....................8

Cal. Civ. Code § 1798.115....................3

Cal. Civ. Code § 1798.120....................3

Cal. Civ. Code § 1798.135....................3

Cal. Civ. Code § 1798.140....................3

Cal. Civ. Code § 1798.175....................4

Cal. Code Regs., Title 11 § 7012 ....................3

Cal. Penal Code § 638.50(b) ....................11

Cal. Penal Code § 638.52....................2, 6, 7, 8

**I. <u>INTRODUCTION</u>**

In her opposition, Plaintiff spends considerable effort reframing her theory of liability as a consumer protection crusade against Fox's allegedly "incredibly invasive privacy harms." Opp'n to Mot. to Dismiss the FAC ("Opp'n") at 2. But Plaintiff is merely attempting to distract the Court from the mundane target of Plaintiff's allegations: Fox's use—prevalent across the internet—of Tools on its Website to collect users' IP addresses, "[d]evice [m]etadata," and "unique user identifiers" to facilitate targeted advertising to users who have not opted out of receiving them. Am. Compl.[1] ¶¶ 3–4. Contrary to Plaintiff's characterizations, this is a standard industry practice that enables news websites to provide users with free access to their content without implementing paywalls.

Throughout her opposition, Plaintiff hyperbolizes her complaint, asserting that she "allege[s] a far more invasive course of conduct" than in other California Invasion of Privacy Act ("CIPA") cases. Opp'n at 1. This rhetoric only serves to mask her complaint's lack of substance. Plaintiff engages in similar tactics in constructing and then knocking down strawman arguments, rather than addressing the meritorious arguments Fox raises.

Stripped of the opposition's sensational retelling of the complaint, Plaintiff's claim fails as a matter of law on several independent grounds. First, Plaintiff's misinterpretation of CIPA Section 638.51 is incompatible with the California Consumer Privacy Act ("CCPA"), which expressly governs the data collection on which Plaintiff's claim is founded. Plaintiff argues that her interpretation of CIPA can be harmonized with the CCPA because the statutes regulate the collection and use of data at different points, or alternatively, that CIPA governs in the event the laws conflict. Opp'n at 3–4. This is incorrect on multiple levels. The opt-in regime Plaintiff advances under CIPA cannot be reconciled with either CIPA's text or the opt-out regime the CCPA explicitly established. Regardless, the CCPA's opt-out regime controls under established principles of statutory interpretation.

[1] Terms not separately defined retain the definitions included in Fox's motion to dismiss.

Second, CIPA's plain text and legislative history establish that Section 638.51 is meant to apply only to devices that may be attached to a telephone line—not to websites. The statute itself requires law enforcement to identify a "telephone line" in order to seek a court order. Cal. Penal Code § 638.52(a), (d). And despite Plaintiff's contention that CIPA should be interpreted as applying to "new" tools and techniques, *see* Opp'n at 10–11, Section 638.51 and its related provisions were passed *in 2015*, well after the internet was invented.

Accordingly, the Court should dismiss Plaintiff's lawsuit with prejudice.

## II. ARGUMENT

Plaintiff's theory is viable only if both: (a) the CCPA does not govern the conduct at issue, and (b) the Tools amount to pen registers and trap and trace devices under CIPA. While Plaintiff must establish both, she cannot establish either. Her claim therefore fails.

### A. The CCPA Governs and Expressly Permits Fox's Alleged Data Collection Absent Consumer Opt-Outs.

The CCPA is a robust consumer protection statute that the California legislature passed to explicitly regulate the conduct at issue here. Plaintiff tacitly admits both that the CCPA authorizes Fox's alleged conduct and that Fox complies with the CCPA. Because the CCPA controls over CIPA Section 638.51, Plaintiff's claim fails.

#### 1. The CCPA Controls and Does Not Conflict with CIPA.

Both parties agree that there is no conflict between the CCPA and CIPA. Opp'n at 3. The CCPA and CIPA Section 638.51 operate in harmony as plainly written. Plaintiff's complaint and her opposition rest on two misinterpretations and mischaracterizations of CIPA and the CCPA. First, she argues that the CCPA is inapplicable to the conduct she has alleged. But the CCPA plainly governs the conduct at issue and permits Fox's use of the Tools absent website visitors' opting out of this use. Second, she claims that CIPA created an "opt-in" regime. But the only "opt-in" reference in CIPA does not apply to the conduct at issue, and Plaintiff does not argue otherwise.

**a. The CCPA's scope includes the collection of data.**

Plaintiff is wrong in contending that CIPA and the CCPA govern separate conduct. She claims that CIPA "protects against the unauthorized surveillance of Californians without *prior* consent, while the CCPA governs how data is managed and used *after* it is collected." Opp'n at 3 (emphasis in original). This mischaracterizes the CCPA, which by its own terms applies to data collection, and misinterprets CIPA Section 638.51 to inappropriately manufacture a conflict between the statutes.

The CCPA expressly regulates the collection and use of the very "unique personal identifier[s]" Plaintiff alleges Fox collects and shares, including website "cookies, beacons, pixel tags, mobile ad identifiers, or similar technology." Cal. Civ. Code § 1798.140(aj); *see, e.g.*, Am. Compl. ¶¶ 2, 59–120. The CCPA and its regulations explicitly authorize website operators to collect and share "personal information," so long as they "post a conspicuous link to the notice on the introductory page of the business's website and on all webpages where personal information is ***collected***." Cal. Code Regs., tit. 11 § 7012(c)(1) (emphasis added); *see also* Cal. Civ. Code § 1798.140. The CCPA therefore expressly permits Fox and other website operators to collect the very information Plaintiff complains about here.

Once Fox collects the data, the CCPA explicitly allows it to engage in the conduct Plaintiff claims to be unlawful. The CCPA establishes an *opt-out* scheme that allows consumers to "direct a business that sells or shares personal information about the consumer to third parties not to sell or share the consumer's personal information." Cal. Civ. Code §§ 1798.115, 1798.120(a)(1). To effectuate the opt-out right, a business must provide a clear and conspicuous opt-out link on its internet homepage. *Id.* § 1798.135(a). The CCPA defines "sharing" to include making available or transferring personal information to a third party "for cross-context behavioral advertising," which is defined as "the targeting of advertising to a consumer based on the consumer's personal information obtained from the consumer's activity across businesses, distinctly-branded websites, applications, or services." *Id.* § 1798.140(k), (ah).

**b. CIPA does not require Fox to obtain users' opt-in consent.**

Plaintiff advocates for an opt-in framework, purportedly under CIPA Section 638.51, that would require user consent *prior* to data collection or sharing. But the statute does not support this interpretation. Indeed, Plaintiff cites to no provision in Section 638.51 or any other part of CIPA to support her argument that user consent plays a role at all in assessing whether Fox's use of the Tools was lawful. There is only one part of Section 638.51(b) that allows for the use of a pen register or trap and trace device "[i]f the consent of the user of that service has been obtained," but the provision only applies to "[a] provider of electronic or wire communication service." Plaintiff does not allege that Fox is a provider of electronic or wire communication service, so the provision is inapplicable to her allegations. There is no other part of CIPA that allows for the installation of pen registers or trap and trace devices with users' consent. Because no exception under Section 638.51(b) applies, if Plaintiff were correct that the CCPA does not govern and if the Tools were to fall within CIPA's definition of a pen register then websites could never provide targeted advertising—even to users who wanted to see advertising targeted to their interests. This is yet another reason why Plaintiff's reading of CIPA does not make sense and why the CCPA must control. But to the extent CIPA applies at all, the Court should interpret the statute to harmonize with the CCPA, which means that the CCPA's opt-out structure—rather than the one invented by Plaintiff—governs.

The CCPA establishes a system where a business lawfully can share information for the purposes of targeted advertising as long as it discloses that collection and use, unless and until a consumer opts *out*. CIPA does not conflict with that system. It is only Plaintiff's *interpretation* of CIPA that conflicts. Plaintiff would establish a system under CIPA where it is criminal for a business to share information for the purposes of targeted advertising unless and until a consumer opts *in*. Plaintiff's interpretation of CIPA not only is inconsistent with the plain language in CIPA, but it also would be irreconcilable with the CCPA and would violate the statutory mandate for courts to construe statutes to harmonize with the CCPA. *See* Cal. Civ. Code § 1798.175 (CCPA's instruction that "[w]herever possible, law relating to consumers' personal information should be construed to harmonize with the provisions of [CCPA]"); *Pac. Palisades Bowl Mobile Ests., LLC*

*v. City of Los Angeles*, 55 Cal. 4th 783, 805–806 (2012) (limiting applicability of statute because broader application would "overrid[e]" provisions of other statutes, impermissibly "effect[ing] an implied partial repeal of them").

If there is a need to harmonize the statutes, as there has to be if CIPA applies, the result must be that the Court finds that the CCPA created an opt-out system. Holding otherwise would negate the CCPA's very specific provisions in favor of an older, general statute, contrary to the well settled rule that later, specific statutes take precedence over earlier, general provisions. *See* Mot. to Dismiss ("Mot.") at 5.[2] Plaintiff uses sleight of hand by asserting that CIPA Section 638.51 must control because the legislature "is presumed to know its own laws, and a later general statute does not overrule an earlier specific one unless it does so clearly." Opp'n at 4 (quoting *United States v. Hawkins*, 228 F.2d 517, 518 (9th Cir. 1955)). Setting aside that the legislature cannot be "presumed to know" the ways creative lawyers will try to stretch older laws to cover new technology, this tenet of statutory interpretation mandating that "later *general* statute[s]" may not overrule "earlier *specific* one[s]" does not apply here. *Id.* (emphasis added). Indeed, Plaintiff's characterization inverts reality. Here, the later statute is specific and the earlier one general: The CCPA, in exacting detail, creates a statutory and regulatory framework that specifically applies to the exact data collection practices Plaintiff challenges. In contrast, CIPA—especially if stretched as far as Plaintiff advocates for—is much more general. The CCPA must control.[3]

**B. Plaintiff Does Not Plausibly Allege that Fox Used a "Pen Register."**

Separately, Plaintiff's claim fails because Fox's Tools are not "pen registers" under CIPA Section 638.51. Plaintiff attempts to shoehorn her allegations of online data collection to fit

---

[2] *Mirmalek v. L.A. Times Commc'ns LLC*, Case No. 24-cv-01797-CRB, 2024 WL 5102709, at *5 (N.D. Cal. Dec. 12, 2024), which Plaintiff cites for the argument that the "CCPA does not preempt CIPA," does not support Plaintiff's argument because Fox agrees there is no conflict between the CCPA and CIPA.

[3] Plaintiff also argues that if there were a conflict, CIPA would control because "the provisions of the law that affords the greatest protection for the right of privacy for consumers shall control." Opp'n at 4. But any conflict has been created by Plaintiff's interpretation of CIPA and not by the provisions within the statute itself. Instead of stretching the bounds of CIPA to find a conflict, the Court should attempt to harmonize the statues, as the CCPA demands.

CIPA's definition of a "pen register," but the statute's plain text, legislative history, and practical application all show that Section 638.51 does not and cannot apply to Plaintiff's allegations.

**1. By Its Plain Text, Section 638.51 Applies Only to Telephone Communications.**

The plain text of CIPA Section 638.51 shows that it applies only to telephone lines. While courts have issued inconsistent opinions on the statute's reach, the cases finding a narrower application of CIPA Section 638.51—and that it does not regulate websites—are better reasoned.

The statute's various references to telephone lines are consistent with this limitation. For instance, Section 638.52 requires that an order "authorizing or approving the installation and use of a pen register or a trap and trace device" shall specify, among other things, the person who is connected to "***the telephone line*** to which the pen register or trap and trace device is to be ***attached***" and the "number and, if known, physical location of ***the telephone line*** to which the pen register or trap and trace device is to be ***attached*** and, in the case of a trap and trace device, the geographic limits of the trap and trace order." Cal. Penal Code § 638.52(a), (d) (emphasis added). The statutory text is unequivocal that a telephone line is required to bring conduct under the purview of Section 638.51.

Plaintiff cites *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924 (N.D. Cal. 2024), to argue otherwise. *See* Opp'n at 7. The *Shah* court concluded that Section 638.52 "merely lists requirements relating to a particular type of pen register . . . that is installed on a telephone line." *Id.* at 930. But that conclusion cannot be reconciled with the fact that Sections 638.50 through 638.53 were passed *together* to effectuate a holistic regime, and they must therefore be read together. *See Kern Cnty. Emp.s' Ret. Assoc. v. Bellino*, 126 Cal. App. 4th 781, 788 (2005) (The rules of statutory interpretation "require that different sections of a code must be read together, that the literal language of the statutes is the primary guide to legislative intent, and that code provisions relating to the same subject must be harmonized to the extent possible."); *see also Berkeley Ctr. for Indep. Living v. Coyle*, 42 Cal. App. 4th 874, 878 (1996); *Mt. Hawley Ins. Co. v. Lopez*, 215 Cal. App. 4th 1385, 1414 (2013).

Moreover, *Shah*'s conclusion is not borne out by the language of Section 638.52, which states that a magistrate "shall enter an ex parte order authorizing the installation and use of a pen register or a trap and trace device" if certain requirements are met, and that such an order "*shall* specify" the owner or lessor, phone number, and physical location ***of the telephone line***. Cal. Penal Code § 638.52(b), (d) (emphasis added). Contrary to the *Shah* court's reasoning, the statutory text contains no indication that Section 638.52 applies only to "a particular type of pen register" that attaches to telephones. Nor does the statute contain any optional language that would allow a law enforcement officer to obtain an order to install a pen register without fulfilling the requirements of Section 638.52—including the requirement to provide certain information about the telephone line. Thus, as Fox explains in its motion, if the Court adopts Plaintiff's proposed interpretation of Section 638.51, law enforcement could never use software to track website interactions because law enforcement would be unable to obtain an order specifying the "telephone line" as required under Section 638.52. *See* Mot. at 8. Such an interpretation yields a nonsensical outcome.[4]

Plaintiff's reliance on a 2020 case to show that federal law enforcement in the Seventh Circuit has been able to procure orders to install pen registers under the federal Pen Register Act to facilities besides telephone lines misses the mark entirely. Plaintiff's argument is based on a more recent version of the Pen Register Act that does not parallel CIPA because it *specifically allows* law enforcement to *obtain orders to track website interactions*. A timeline helps illustrate the point:

[4] For similar reasons, Fox respectfully disagrees with Judge Tigar's recent orders denying motions to dismiss in *Riganian v. LiveRamp Holdings, Inc.*, Case No. 25-cv-00824-JST, 2025 WL 2021802 (N.D. Cal. July 18, 2025) and *Gabrielli v. Motorola Mobility LLC*, Case No. 24-cv-09533-JST, 2025 WL 1939957 (N.D. Cal. July 14, 2025), as well as other decisions that have adopted similar reasoning. In these cases, the courts did not "read together" "different sections of [the] code," as courts interpreting California law are required to do, *see Kern Cnty. Emp.s' Ret. Assoc.*, 126 Cal. App. 4th at 788, nor did they consider the impossibility of requiring law enforcement to specify a "telephone line" to obtain a court order to track online activity, *see* Cal. Penal Code § 638.52.

- **1986:** Congress enacts the original Pen Register Act to provide that a pen register application must specify "the telephone line to which the pen register or trap and trace device is to be attached." 18 U.S.C. § 3123(b)(1)(C) (1986).
- **2001:** Congress amends the Pen Register Act as part of the USA PATRIOT Act to allow for applications specifying "the telephone line *or other facility* to which the pen register or trap and trace device is to be attached *or applied*." *See* PL 107–56, October 26, 2001, 115 Stat 272.
- **2015:** California's legislature enacts CIPA Sections 638.50 through 638.53 and adopts the language of the original, pre-2001 Pen Register Act: an order issued pursuant to the statute must specify "the telephone line to which the pen register or trap and trace device is to be attached." Cal. Penal Code § 638.52(d)(1), (3).

This history also shows why, contrary to Plaintiff's argument, Fox was correct to compare CIPA to the original version of the Pen Register Act. As Fox explained in its motion, courts interpreted the *pre*-2001 version of the Pen Register Act as limited to telephone lines, in part because that version—like Section 638.52 of CIPA—required that a pen register order "include 'the number and, if known, physical location of the telephone line to which the pen register or trap and trace device is to be attached. . . .'" *In re Appl. of U.S. for an Order Authorizing the Use of a Cellular Tel. Digit. Analyzer*, 885 F. Supp. 197, 200 (C.D. Cal. 1995) ("*In re Appl. of U.S. for Use of Analyzer*"); *see* Mot. at 8–9. In response, Plaintiff cites cases from 2008 and later interpreting the *post*-2001 version of the statute for the proposition that the Pen Register Act "*has* been applied to monitoring internet communications." Opp'n at 9–10 (emphasis in original) (citing *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008); *United States v. Soybel*, 13 F.4th 584, 586–87 (7th Cir. 2021); *United States v. Ulbricht*, 858 F.3d 71, 83 (2d Cir. 2017)). But authorities interpreting the *post*-2001 version of the Act are not responsive to Fox's argument. As shown in the bullet points above, Congress modified the Pen Register Act in 2001 to apply to more than just telephone lines—which the California legislature has never done with CIPA. Accordingly, cases applying the amended Pen Register Act to internet communications are irrelevant.

What is entirely relevant is that California's legislature "adopted the same authorization provision in CIPA section 638.52 that courts . . . relied on under the [pre-2001 version of the] federal Pen Register Act to find that the Act applied only to mechanical, telephone number-tracing technology, not technology used to collect the IP address from a desktop computer." *Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 WL 487194, at *3 (Cal. Super. Ct. Jan. 27, 2025) (sustaining demurrer to Section 638.51 claim based on finding that the statute applied only to telephone lines).[5]

To the extent the Court perceives ambiguity in Section 638.51, it should resolve that ambiguity in favor of Fox pursuant to the rule of lenity. *See* Mot. at 6 n.3 (citing *People v. Avery*, 27 Cal. 4th 49, 58 (2002)). Plaintiff argues that this rule cannot apply because there is no "grievous ambiguity or uncertainty in the language and structure of the statute."[6] Opp'n at 9 (citing *Vera v. O'Keefe*, 791 F. Supp. 2d 959, 964 (S.D. Cal. 2011)). But a "grievous ambiguity or uncertainty" exists when "a court has seized everything from which aid can be derived" and is "left with an ambiguous statute." *Vera*, 791 F. Supp. 2d at 964. Here, Section 638.51 cannot apply to Plaintiff's allegations because (1) Section 638.51's plain text and legislative history establish that it does not apply to internet communications; (2) Section 638.51's prohibition on the use of pen registers cannot practically apply to the type of data Plaintiff alleges Fox collects; and (3) the legislature has enacted a later, more specific statute—the CCPA—that explicitly governs the type of data collection at issue. Nevertheless, to the extent the Court finds Section 638.51 is ambiguous or determines that it cannot ascertain legislative intent (such as with respect to whether Section 638.51 applies to website technology), the Court should construe any doubt in favor of Fox.

---

[5] Plaintiff cites *Lesh v. Cable News Network, Inc.*, 767 F. Supp. 3d 33, 41 (S.D.N.Y. 2025), for the proposition that the Court should not "read a [federal] requirement into the text of a California statute." *See* Opp'n at 10. But Fox does not argue that the Court should read a federal requirement into Section 638.51. Rather, Fox argues that this Court should review and analyze Section 638.51 just as the Central District of California did in *In re Application of U.S. for Use of Analyzer* in finding that the federal act applied to telephone lines only.

[6] Plaintiff's cited authorities rejecting rule of lenity arguments under CIPA involved unrelated statutory provisions and thus offer no insight into the clarity of Section 638.51. *See* Opp'n at 9.

### 2. The Legislative History of Section 638.51 Also Shows It Applies Only to Telephone Communications.

Notwithstanding the unambiguous legislative history confining Section 638.51 to telephone communications, Plaintiff relies on cases advocating for the law's application to "new" tools and techniques. Opp'n at 10–11. But this reasoning is flawed, as Section 638.51 was passed in 2015, long after internet technology was established, yet the California legislature still chose to limit Section 638.51's reach to telephone communications. In fact, the legislative history shows that the legislature considered widespread internet usage when authoring Section 638.51 and its related provisions and chose *not* to expand the bill to apply to internet communications.

Inexplicably, Plaintiff criticizes Fox for "ignor[ing] [the] legislative history" of CIPA "and cit[ing] to Assembly Bill 929." Opp'n at 11. But Assembly Bill 929 is *the* bill that added Section 638.51 and its related section to CIPA. *See* Mot. at 10 (citing 2015 Cal. Assemb. B. No. 929, Cal. 2015–2016 Regular Session ("Assembly Bill 929")). As such, Assembly Bill 929—and not the case law on which Plaintiff relies—is the relevant reflection of legislative history for these sections.

Assembly Bill 929 fully supports Fox. The author of Assembly Bill 929, Judge Edwin P. Chau—then an assembly member—specified that the bill targets "criminals [who] are becoming more and more sophisticated in their use of technology" by "authoriz[ing] state and local law enforcement officers to use pen register and trap and trace devices" that, on the one hand, "record all outgoing numbers from a particular telephone line" and, on the other hand, "record what numbers have called a specific telephone line, i.e. all incoming phone numbers." Pen Registers: Authorized Use: Hearing on Assemb. B. 929 Before S. Comm. On Pub. Safety, 2015-2016 Sess. (Cal. July 8, 2015) (Statement of Assemblymember Erwin P. Chau). In other words, the author of Assembly Bill 929 was well aware of "sophisticated" technology, and still he authored Assembly Bill 929 to allow law enforcement to combat crime by recording telephone numbers specifically. The legislature's choice to retain telephone-specific language, and not to revise the language to address internet usage, demonstrates its affirmative approval of CIPA's limited application to telephones.

**3. The Data at Issue Is Not Regulated by Section 638.51's Prohibition on Unauthorized "Pen Registers" and "Trap and Trace Devices."**

Even if the Court were to find that Section 638.51 applies to websites, Plaintiff's allegations that Fox collects her IP address, "[d]evice [m]etadata," and "unique user identifiers" when she visits the site are insufficient to bring her claims within CIPA's prohibition on the unauthorized use of "pen registers" and "trap and trace devices."

As Fox explains in its motion, Section 638.51 does not govern the collection of device metadata. Mot. at 13. Plaintiff seeks to sidestep this clear limitation by asserting that device metadata becomes "addressing" information under Section 638.51 when paired with IP addresses and "unique user identifiers," claiming that this combination of data permits "the identification of a user." Opp'n at 12–13. But CIPA's unambiguous language establishes that a pen register covers only "dialing, routing, addressing, or signaling" information. Cal. Penal Code § 638.50(b). Plaintiff's "device type" and "browser type" data is plainly outside the scope of this statutory definition. *See* Am. Compl. ¶ 3.

Moreover, while Plaintiff highlights the collection of her IP address, she notably fails to address how Section 638.51's prohibition on unauthorized surveillance devices could logically apply to information she voluntarily provided. Indeed, because website access inherently requires users to transmit their IP addresses, California courts have held that Section 638.51 does not forbid the acquisition of such information. *See, e.g.*, *Aviles v. Liveramp, Inc.*, Case No. 24STCV19869, 2025 WL 487196, at *3 (Cal. Super. Ct. Jan. 28, 2025) (sustaining demurrer of claim under Section 638.51 and stating that "[t]he problem with [plaintiff's] argument" that the defendant violated CIPA by collecting her IP address "is that it is normal for websites to track the IP addresses of their visitors"); *Casillas v. Transitions Optical, Inc.*, Case No. 23STCV30742, 2024 WL 4873370, at *4 (Cal. Super. Ct. Sept. 9, 2024) (Section 638.51 "did not, and does not, criminalize the process by which all websites communicate with all users who choose to access them"). Courts in the Ninth Circuit consistently have come to a similar conclusion. *See, e.g.*, *Khamooshi v. Politico LLC*, No. 24-cv-07836-SK, 2025 WL 1408896, at *3 (N.D. Cal., May 13, 2025) ("many courts have explained" that "there is no legally protected privacy interest in IP addresses") (citing *Heeger*

*v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020); *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008); *United States v. Rosenow*, 50 F.4th 715, 737–38 (9th Cir. 2022)). And despite Plaintiff's bald assertion that "[t]he [Tools] are not just writing someone's number down," Opp'n at 16, Plaintiff fails to demonstrate that Fox's alleged receipt and sharing of non-private information constitutes anything more substantial.

### C. Fox's Request for a Stay.

Fox initially requested that the Court stay this action pending definitive legislative action on California Senate Bill 690, which would expressly exempt the Tools and similar tracking technologies from Section 638.51's purview. Since Fox filed the request for a stay, however, it has become unclear when the legislature will act on Senate Bill 690. That timeline may become clearer as the legislative session proceeds. Thus, Fox proposes that the Court and the parties assess the appropriateness of a stay at the hearing on Fox's motion.

## III. CONCLUSION

Because Plaintiff's claim fails as a matter of law, the Court should dismiss the claim with prejudice.

Dated: July 29, 2025

JENNER & BLOCK LLP

By: */s/ Brandon D. Fox*
Brandon D. Fox
Kate T. Spelman
Rachael A. Goldman

Attorneys for Defendants
Fox Corporation and Fox News Network, LLC