**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7408
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
jwilner@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SONNI ECHEVERRIA-CORZAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FOX CORPORATION and FOX NEWS NETWORK, LLC,<br><br>Defendants. | Case No. 3:25-cv-04253-AMO<br><br>**PLAINTIFF'S STATEMENT OF RECENT DECISIONS** |

Pursuant to Local Civil Rule 7-3(d)(2), Plaintiff Sonni Echeverria-Corzan ("Plaintiff") respectfully submits this Statement of Recent Decisions regarding the pending Motion to Dismiss the First Amended Complaint. *See* ECF Nos. 11-12. Plaintiff respectfully brings to the Court's attention a recent decision by the Honorable Donna M. Ryu in *Garon v. Keleops Usa, Inc.,* 2025 WL 2522374 (N.D. Cal. Sept. 2, 2025). A copy of the decision is attached hereto as **Exhibit 1**. Additionally, Plaintiff respectfully brings to the Court's attention a recent decision by the Honorable Rita F. Lin in *Deivaprakash v. Conde Nast Digital,* 2025 WL 2541952 (N.D. Cal. Sept. 4, 2025). A copy of the decision is attached hereto as **Exhibit 2**. Finally, Plaintiff respectfully brings to the Court's attention a recent decision by the Honorable Jeffrey S. Ross in *Scarlett v. Future US, LLC*, No. CGC-25-621912 (S.F. Superior Ct. Sept. 5, 2025). A copy of the decision is attached hereto as **Exhibit 3**. These decisions are relevant to the Parties' respective arguments regarding whether Plaintiff has alleged a claim for a violation of Cal. Pen. Code § 638.51(a).

Dated: September 9, 2025

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: /s/ Philip L. Fraietta

Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7408
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
jwilner@bursor.com

*Attorneys for Plaintiff*

**EXHIBIT 1**

2025 WL 2522374
Only the Westlaw citation is currently available.
United States District Court, N.D. California.

JEFFREY GARON, Plaintiff,
v.
KELEOPS USA, INC., Defendant.

Case No. 25-cv-02124-DMR
|
Filed 09/02/2025

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

Donna M. Ryu Chief Magistrate Judge

***1** Plaintiff Jeffrey Garon ("Garon" or "Plaintiff"), individually and on behalf of all others similarly situated, brings this putative class action against Keleops USA, Inc. ("Keleops" or "Defendant"), asserting a single claim under the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 638.51(a). Keleops now moves to dismiss the First Amended Complaint ("FAC") in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] [Docket No. 16 (Mot.).] Garon filed an opposition (Docket No. 22 (Opp'n)), and Keleops filed a reply (Docket No. 23 (Reply)). The parties also filed a joint stipulation for leave for Keleops to file a sur-reply. [Docket No. 23 (stip.); Docket No. 23-1 (proposed sur-reply).]

This matter is suitable for determination without oral argument. Civ. L.R. 7-1(b). For the reasons stated below, the motion to dismiss is denied.

## I. BACKGROUND

### A. Factual Allegations[2]

Garon alleges that Keleops owns and operates the website https://gizmodo.com (the "Website").[3] FAC ¶ 1. When users visit the Website, Keleops causes various trackers[4]—the Steam Rail Tracker, AGKN Tracker, and Crowd Control Tracker (the "Trackers"), which are operated by third parties ironSource, Neustar, and Lotame (the "Third Parties")—to be installed on the user's internet browsers. *Id.* ¶¶ 2, 83. Specifically, to load the Website onto a user's browser, the browser sends an "HTTP" or "GET" request to Keleops' server where the Website data is stored. *Id.* ¶ 28. Keleops' server then sends an "HTTP response" back to the browser with instructions. *Id.* These instructions not only include how to properly display the Website, but also cause the Trackers to be installed on the browser. *Id.* ¶¶ 29-30.

***2** The Trackers then cause the browser to send identifying information to the Third Parties. *Id.* ¶ 30. This includes the user's IP address, the user-agent string (browser, operating system, and device type), and device capabilities (e.g., supported image formats and compression methods). *Id.* ¶ 31. A number of elements—such as persistent identifiers and fingerprinting and server-side matching ("device identifier information")—remain and allow users to be identified even after clearing standard session data, such as cookies. *Id.* This device identifier information forms a detailed, unique fingerprint that allows for cross-site tracking and behavioral profiling. *Id.*; *see also see id.* ¶¶ 84-114 (alleging functionality of Trackers).

Garon alleges that these Trackers constitute a "pen register" within the meaning of CIPA section 638.50(b), and that Keleops has violated CIPA section 638.51(a) by installing the Trackers absent Garon's consent and a court order. FAC ¶¶ 3, 33, 155, 157, 159. He further alleges that Keleops has long incorporated the Trackers' code into the Website's code. *Id.* ¶ 32. Thus, when Garon and other putative class members visited the Website, Trackers were installed on their browsers, which allowed the Third Parties to collect users' IP addresses and other device information to be used by Keleops and the Third Parties for marketing, advertising, and analytics purposes. *Id.* ¶ 32, 131-41.

### B. Procedural History

Garon initiated this action in the Superior Court of California, County of Marin on January 28, 2025, on behalf of "all California residents who accessed the Website while in California and had their IP address collected by the Trackers." *Id.* ¶ 143. The FAC asserts a single claim for violation of CIPA section 658.1(a). *Id.* ¶¶ 150-59. On February 28, 2025, Keleops removed to this court based on diversity jurisdiction. *See* Not. of Removal.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th

Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson*, 551 U.S. at 94, and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief," *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (internal quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

Under Federal Rule of Civil Procedure 15(a), leave to amend should be granted as a matter of course, at least until the defendant files a responsive pleading. Fed. R. Civ. P. 15(a)(1). After that point, Rule 15(a) provides generally that leave to amend the pleadings before trial should be given "freely ... when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quotation omitted). However, leave to amend may be denied where the complaint "could not be saved by any amendment," *i.e.*, "where the amendment would be futile." *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004).

## III. DISCUSSION

### A. Request for Judicial Notice

***3** Keleops requests the court take judicial notice of minute orders issued in three cases in the Superior Court of California, County of Los Angeles: (1) *Licea v. Hickory Farms LLC*, Case No. 23STCV26148, 2024 WL 1698147 (Cal. Super. Mar. 13, 2024); (2) *Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 WL 487194 (Cal. Super. Jan. 27, 2025); and (3) *Aviles v. Liveramp, Inc.*, No. 24STCV19869, 2025 WL 487196 (Cal. Super. Jan. 28, 2025). [Docket No. 17 (RJN).]

Federal Rule of Evidence 201(b) provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." As filings in state court actions are undisputed matters of public record, the court grants Keleops' request and takes judicial notice of the existence of the rulings in the three cited minute orders. *See Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (courts "may take judicial notice of undisputed matters of public record ..., including documents on file in ... state courts"); *Banks v. Allison*, 140 F.4th 1181, 1185 n.3 (9th Cir. 2025) (taking judicial notice of state court records).

### B. Stipulation to File Sur-Reply

Garon contends that Keleops' reply raises new arguments that were not raised in its motion. [Docket No. 23 at 1.] Although Keleops disputes that its reply improperly raises new arguments, it stipulated to allow Garon to file a sur-reply. *Id.*; *see* Docket No. 23-1 (proposed sur-reply).

The court agrees with Garon that the reply offers new arguments that were not raised in the motion and do not address arguments raised in the opposition. The court therefore grants the stipulated request to file a sur-reply.

### C. Allegations about Trackers as Pen Registers

Keleops argues the CIPA claim fails because Garon has not alleged the existence of a pen register for two reasons. First, Keleops contends that the FAC "alleges the transmission of Plaintiff's IP address," but that "[r]ecording an IP address is not equivalent to recording the numbers dialed from a phone and does not make any record of other outgoing routing, dialing, or signaling information." Mot. at 9. Second, Keleops asserts that software is not a "device or process" within the meaning of CIPA. *Id.* at 10-14.

CIPA provides that "a person may not install or use a pen register ... without first obtaining a court order[.]" Cal. Penal Code § 638.51. A "pen register" is "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b).

The FAC contains sufficient allegations that the Trackers constitute "pen registers" within the meaning of CIPA. First, the FAC adequately alleges that the Trackers constitute a "device or process." *See, e.g.*, FAC ¶ 91 ("The Steamrail Tracker is at least a 'process' because it is 'software that identifies consumers, gathers data, and correlates that data.'


© 2025 Thomson Reuters. No claim to original U.S. Government Works.

") (citation omitted); *id.* ¶ 92 ("[T]he Steamrail Tracker is a 'device' because 'in order for software to work, it must be run on some kind of computing device.' ") (citation omitted); *id.* ¶ 101 ("The AGKN Tracker is at least a 'process' because it is 'software that identifies consumers, gathers data, and correlates that data.' ") (citation omitted); *id.* ¶ 102 ("[T]he AGKN Tracker is a 'device' because 'in order for software to work, it must be run on some kind of computing device.' ") (citation omitted); *id.* ¶ 112 ("The Crowd Control Tracker is at least a 'process' because it is 'software that identifies consumers, gathers data, and correlates that data.' ") (citation omitted); *id.* ¶ 113 ("[T]he Crowd Control Tracker is a 'device' because 'in order for software to work, it must be run on some kind of computing device.' ") (citation omitted).

***4** These allegations are sufficient to withstand Keleops' motion. "A process can take many forms" including "software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting.' " *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023), (finding a software development kit constituted a pen register); *see Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-CV-01797-CRB, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024) (finding "[p]laintiff adequately allege[d] that the Trackers are a 'device or process' as required by CIPA's definition of a pen register" based on similar allegations); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 928 (N.D. Cal. 2024) (same).

Second, there are plausible allegations that the Trackers "record[ ] or decode[ ] ... addressing ... information ... but not the contents of a communication." Cal. Penal Code § 638.50(b). The FAC alleges that an "IP address is a unique identifier for a device," and that "[p]ublic IP addresses can be used to determine the approximate physical location of a device." *Id.* ¶¶ 34, 38; *see id.* ¶ 42 ("[T]he public IP address divulges the approximate location of the user that is connecting to the Internet and the router directing those communications (presumably the user's house or workplace) ..."). Moreover, while "the Trackers ... enabled the Third Parties to collect Plaintiffs and Class Members' IP addresses," they "do not collect the content of Plaintiffs and the Class's electronic communications with the Website." *Id.* ¶¶ 155-56. This is sufficient to survive a Rule 12(b)(6) motion. *See Shah*, 754 F. Supp. 3d at 929 ("Construing the pleadings in the light most favorable to Plaintiff, the IP addresses collected by the Trackers fall within the statutory definition of 'addressing' information.") (citing *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014)); *In re Zynga Priv. Litig.*, 750 F.3d at 1108 ("IP addresses 'constitute addressing information and do not necessarily reveal any more about the underlying contents of communication than do phone numbers.' ") (citation omitted).

Keleops' arguments to the contrary are based on an unsupported and impermissibly narrow reading of the statute. According to Keleops, CIPA was intended to "to protect individuals from the use of 'device[s] or process[es]' that could be used for telephone surveillance[,]" and "[n]othing in the Penal Code extends a pen register to software." Mot. at 10 (brackets in the original; citations omitted); *see id.* at 9 ("A pen register is a device installed on a landline telephone to make a record of the phone numbers dialed from that phone."); *id.* at 10 ("The 'device or process' required under Section 638.50 must be tied to 'telephonic functionality' ..."). Keleops wholly fails to acknowledge that courts have repeatedly rejected these arguments and makes no attempt to distinguish those cases from the case at hand. *See Fajardo v. Barr*, 808 F. App'x 413, 414 (9th Cir. 2020) ("[T]he failure to mention *Roman-Suaste* in the opening brief is inexplicable. We take this opportunity to remind counsel that the duty of candor requires counsel to bring relevant adverse authority to our attention and argue why that authority does not control.").

Contrary to Keleops' argument, "[n]othing in the statutory definition limits pen registers to those that operate the same way as a traditional phone pen register." *Shah*, 754 F. Supp. 3d at 929. Rather, "the expansive language in the California Legislature's chosen definition" of a pen register "is specific as to the type of data a pen register collects—'dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted,' but ... is vague and inclusive as to the form of the collection tool—'a device or process.' " *Greenley*, 684 F. Supp. 3d at 1050 (citing Cal. Penal Code § 538.50(b)); *see Shah*, 754 F. Supp. 3d at 928 (quoting *Greenley*, 684 F. Supp. 3d at 1050); *Mirmalek*, 2024 WL 5102709, at *3 (same); *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1076 (C.D. Cal. 2024) ("Though § 638.52 refers to pen registers and trap and trace devices as physically attached to telephone lines, the definitions set forth under § 638.50 do not state any such requirement."); *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 929 (C.D. Cal. 2025) ("Defendant argues that this language makes clear that § 638.51 applies only to telephone surveillance, not software.... However, as this Court explained in *Moody v. C2 Educational Systems Inc.*, § 638.51 and the definitions

supplied by § 638.50 are not so limited.”). “If the drafters of Section 638.50 had intended for ‘pen register’ to be limited to telephone technologies, they knew how to do so—as evidenced by other sections of CIPA where they imposed such limitations.” *Gabrielli v. Motorola Mobility LLC*, No. 24-CV-09533-JST, 2025 WL 1939957, at *11 (N.D. Cal. July 14, 2025) (citing Cal. Penal Code §§ 631(a), 632.7). The statutory language “indicates courts should focus less on the form of the data collector and more on the result.” *Greenley*, 684 F. Supp. 3d at 1050.

***5** As the statute does not specify the form of the “device or process,” the idea of what constitutes such “device or process” has evolved. “Traditionally, law enforcement used ‘pen registers’ in investigations to record all numbers called from a particular telephone, and ‘pen registers’ required physical machines. Today, pen registers take the form of software.” *Greenley*, 684 F. Supp. 3d at 1050 (footnote omitted). Similarly, “[a] process can take many forms. Surely among them is software that identifies consumers, gathers data, and correlates that data through unique ‘fingerprinting.’ ” *Id.* Courts have thus repeatedly “reject[ed] the contention that a private company's surreptitiously embedded software installed in a telephone cannot constitute a ‘pen register.’ ” *Id.* at 1051.

Keleops' cited cases are not persuasive. For instance, *Smith v. Maryland*, 442 U.S. 735 (1979), and *People v. Larkin*, 194 Cal. App. 3d 650 (1987), were decided before the internet became prevalent. Those courts thus did not have the opportunity to consider whether software could fall within the scope of CIPA.

Keleops also cites three state court cases that have “dismissed similar CIPA pen register claims”: *Licea v. Hickory Farms LLC, Sanchez v. Cars.com Inc.*, and *Aviles v. Liveramp, Inc.* [5] Mot. at 10-12, 15; *see* RJN. The court respectfully declines to do so here. *Licea* and *Sanchez* reached their conclusions based on an analysis of CIPA's legislative history. *Licea*, 2024 WL 1698147, at *3 (“Legislative updates and commentary continue to explicitly cover cordless and cellular phone technology without reference to internet based communications.”); *Sanchez*, WL 487194, at *3 (“Here, the legislative history of the CIPA suggests that ‘pen register’ and ‘track and trace devices’ refers to devices or processes that are used to record or decode dialing, routing, addressing, or signaling information from telephone numbers, not internet communications such as websites.”). The court is persuaded by the reasoning in *Greenley, Shah*, and *Mirmalek*—which was based on the plain statutory language. *See Hernandez v. Williams, Zinman & Parham PC*, 829 F.3d 1068, 1073 (9th Cir. 2016) (“When an examination of the plain language of the statute, its structure, and purpose clearly reveals congressional intent, our judicial inquiry is complete.”); *Riganian v. LiveRamp Holdings, Inc.*, No. 25-CV-00824-JST, 2025 WL 2021802, at *12 (N.D. Cal. July 18, 2025) (“[T]he Court respectfully disagrees with the California Superior Court's conclusion in *Sanchez*, which focused its analysis on the legislative history of the CIPA rather than on the expansive, plain language of Section 638.50.”).

Keleops' reliance on *Khamooshi v. Politico LLC*, No. 24-CV-07836-SK, 2025 WL 1408896 (N.D. Cal. May 13, 2025), is also misplaced. As an initial matter, *Khamooshi* concerned a Rule 12(b)(1) motion to dismiss for lack of Article III standing, such that the issue was “whether disclosure of IP addresses gives rise to a privacy injury.” 2025 WL 1408896, at *1-3. Keleops has not moved to dismissed for lack of standing, and it does not otherwise explain why *Khamooshi*, which did not consider whether trackers constitute pen registers under CIPA, is “particularly salient here.” Reply at 3. The court declines to consider Keleops' argument that “this lawsuit is not based on any individualized harm, but rather part of a broader campaign to leverage statutory damages in the absence of concrete injury” (*id.*), when Keleops brings its motion only pursuant to Rule 12(b)(6) and made no such argument in its opening brief.

***6** Finally, Keleops argues the FAC should be dismissed under the rule of lenity. Reply at 5. At least one court has expressly declined to do so. In *Riganian v. LiveRamp Holdings, Inc.*, the court rejected the defendant's argument that the rule of lenity applied to CIPA, explaining that

> “The rule of lenity applies to criminal and punitive statutes and requires ambiguities to be resolved in favor of the defendant.” *Sec. & Exch. Comm'n v. Bardman*, 231 F. Supp. 3d 442, 447 n.6 (N.D. Cal. 2017) (citing *Fed. Election Comm'n v. Arlen Specter '96*, 150 F. Supp. 2d 797 (E.D. Pa. 2001)). The “rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a ‘grievous ambiguity or uncertainty in the statute.’ ” *Barber v. Thomas*, 560 U.S. 474, 488, 130 S.Ct. 2499, 177 L.Ed.2d 1 (2010) (quoting *Muscarello v. United States*, 524 U.S. 125, 139, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998)); *see also People v. Superior Ct. of Riverside Cnty.*, 81 Cal. App. 5th 851, 886, 297 Cal. Rptr. 3d 517 (2022) (explaining that the rule of lenity applies “only if the court can do no more than guess what the legislative body intended; there

must be an egregious ambiguity and uncertainty to justify invoking the rule" (internal quotations omitted)).

2025 WL 2021802, at *12. The court agrees. Like the defendant in *Rignanian*, Keleops has not identified any "grievous ambiguity or uncertainty" in CIPA.

For these reasons, the court denies Keleops' motion to dismiss on grounds that Garon failed to adequately allege the existence of a pen register within the meaning of CIPA.

**D. Exemption Under Section 638.51(b)**

Keleops contends that it is subject to CIPA's exemption that allows "[a] provider of electronic or wire communication service may use a pen register or a trap and trace device ... [t]o operate, maintain, and test a wire or electronic communication service." Cal. Penal Code § 638.51(b)(1); Mot. at 14 ("Fundamentally, any website provider must collect IP addresses to operate a website."); Reply at 7 ("Plaintiff does not dispute that Gizmodo.com must collect IP addresses to deliver content to visitors. This fundamental web functionality falls squarely within the statutory exemption.").

The court declines to dismiss the FAC on these grounds at this time. Whether Keleops uses the Trackers "[t]o operate, maintain, and test a wire or electronic communication service," Cal. Penal Code § 638.51(b)(1), is a question of fact not suitable for a Rule 12(b)(6) motion, which tests the sufficiency of the pleadings.

**E. Stay in Light of SB690**

Keleops urges the court to stay the case while California Senate Bill 690 ("SB690"), which would amend California Penal Code sections 631, 632, 632.7, 637.2, and 638.50, is pending in the California Legislature. Mot. at 15-16. According to Keleops, SB690 "demonstrates a clear legislative intent to curb litigation created by misconstruing CIPA" and "would render this entire case moot if enacted." *Id.* at 15, 20. Garon argues there is no grounds for a stay based on a bill that may or may not be enacted with the current proposed language. Opp'n at 18-19.

The court agrees with Garon. SB690 is too tenuous to form a basis to stay the case. There is no indication when SB690 will be enacted, or whether the proposed language Keleops contends bears on the issues here will be part of the final bill. *See San Francisco Tech., Inc. v. Dial Corp.*, No. 10-CV-04986-JF/PSG, 2011 WL 941152, at *4 (N.D. Cal. Mar. 17, 2011) (denying request to stay "pending the enactment of federal legislation that retroactively could alter the standing requirements" where "there [wa]s no indication that passage of the legislation is imminent" and "the unpredictability of the legislative process counsel[ed] against the imposition of a stay."); *Log Cabin Republicans v. United States*, No. CV 04-08425-VAP (EX), 2010 WL 11508368, at *7 (C.D. Cal. July 6, 2010) (denying motion to stay in light of pending legislation because, "[g]iven the many contingencies involved—including the threshold contingency of Congressional approval—and the lack of clear timelines, any ultimate repeal that may result from this legislation [wa]s at this point remote, if not wholly speculative."). Moreover, "[i]f courts were to stay actions every time new legislation was introduced the judicial system would grind to a halt." *Droesch v. Wells Fargo Bank, N.A.*, No. 20-CV-06751-JSC, 2021 WL 1817057, at *6 (N.D. Cal. May 6, 2021).

***7** Accordingly, Keleops' request for a stay is denied.

**IV. CONCLUSION**

For these reasons, the court denies Keleops' motion to dismiss. Keleops shall file an answer to the FAC within two weeks of this order.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 2522374

## Footnotes

1 Defendant filed the Notice of Removal and FAC as a single docket entry. [*See* Docket No. 1.] Citations to the Notice of Removal refer to ECF pages 1-6, and citations to the FAC refer to ECF pages 7-51.

2 When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

3 In footnotes, the parties discuss whether Keleops owns or operates the Website. Mot. at 7 n.1; Opp'n at 3 n.4. Keleops contends that it "is the sole member of Gizmodo USA LLC, the American entity owning and operating Gizmodo.com. Gizmodo USA LLC acquired Gizmodo.com in June 2024." Mot. at 7 n.1. As Garon points out, however, Keleops does not move to dismiss on grounds that it is an improperly named party. Opp'n at 3 n.4; *see generally* Mot. Garon asserts, without citation, that negotiating contracts or integrating code amounts to "installation," and deriving revenue through trackers constitutes "use." Opp'n at 3 n.4. The court declines to address such throwaway arguments and bare assertions made only in passing. *See Christian Legal Soc. Chapter of Univ. of California v. Wu*, 626 F.3d 483, 487 (9th Cir. 2010) ("[W]e've refused to address claims that were only argued in passing ..., or that were bare assertions ... with no supporting argument[.]") (cleaned up); *Guatay Christian Fellowship v. Cnty. of San Diego*, 670 F.3d 957, 987 (9th Cir. 2011) (declining to consider argument unsupported by any argument or legal authority). If the parties want an adjudication on an issue, they need to queue it up at an appropriate stage and state their positions along with supporting legal authority.

4 The FAC alleges that "[w]hen users visit the Website, Defendant causes four Trackers—the Steamrail Tracker, AGKN Tracker, and Crowd Control Tracker ( collectively, the 'Trackers')—to be installed on Website visitors' internet browsers." FAC ¶ 2. It is unclear how many Trackers are allegedly installed: although Garon alleges there are "four Trackers," he only identifies three. *See id.* For purposes of this order, the court assumes there are three Trackers.

5 In *Avila*, the court noted that, "[w]hile the statutory definition of a pen register now includes electronic communications in mediums other than simply telephone communications, Plaintiff has not provided authority showing that the category of information collected by pen registers as defined by the statute has been expanded." 2025 WL 487196, at *2. That is not the case here. As set forth above, at least three reported opinions issued by California-based federal district courts have held that trackers that collect IP addresses fall within CIPA's scope.

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

**EXHIBIT 2**

2025 WL 2541952
Only the Westlaw citation is currently available.
United States District Court, N.D. California.

Aaron DEIVAPRAKASH, Plaintiff,
v.
CONDÉ NAST DIGITAL, Defendant.

Case No. 25-cv-04021-RFL
|
Signed September 4, 2025

**Attorneys and Law Firms**

L. Timothy Fisher, Emily Ayres Horne, Joshua R. Wilner, Bursor & Fisher, P.A., Walnut Creek, CA, Max Stuart Roberts, Philip Lawrence Fraietta, Bursor & Fisher P.A., New York, NY, for Plaintiff.

Jack Frank Altura, Matthew D. Pearson, Womble Bond Dickinson (U.S.) LLP, Irvine, CA, for Defendant.

**ORDER DENYING MOTION TO DISMISS**

Re: Dkt. No. 11

RITA F. LIN, United States District Judge

***1** Plaintiff Aaron Deivaprakash accuses Defendant Condé Nast Digital of facilitating third-party collection of his information and tracking of his Internet-browsing activity. He brings this action to recover against Condé under the California Invasion of Privacy Act (the "CIPA"), and Condé now moves to dismiss. (*See* Dkt. Nos. 1-1 (the "Complaint"), 11 (the "Motion").)[1] For the reasons set forth below, the Court **DENIES** the Motion.

## I. BACKGROUND

The following discussion of background facts is based on the allegations contained in the Complaint, the truth of which the Court accepts for purposes of resolving the Motion. *See Boquist v. Courtney*, 32 F.4th 764, 772 (9th Cir. 2022).

### A. Condé Facilitates Internet Tracking and Data Collection

Condé owns and operates the newyorker.com and wired.com websites. (*See* Complaint ¶ 1.) When users visit the websites, code embedded in the websites by Condé installs three "trackers" on the users' Internet browsers. (*See id.* ¶ 64.) The trackers collect the users' IP addresses and metadata (*e.g.*, browser type) and send that information to third parties operating the trackers. (*See id.* ¶¶ 2, 32.) The trackers also embed "cookies" in the users' browsers that allow the third parties to monitor the users' behavior across the Internet (beyond their use of Condé's websites). (*See id.* ¶¶ 33, 77-78.) Through this monitoring, as users browse the Internet, the third parties compile comprehensive profiles reflecting the users' geographic locations, incomes, and preferences, among other characteristics. (*See id.* ¶¶ 146-48.) The third parties share these profiles with each other, which: (1) improves their ability to identify users as they browse the Internet; and (2) correspondingly hinders users' ability to remain anonymous. (*See id.* ¶¶ 161-67.) Advertisers then purchase the profiles so that they can present the users with targeted advertising, and these sales generate revenue for Condé. (*See id.* ¶¶ 12, 149-56.)

### B. Third Parties Tracked Deivaprakash

Deivaprakash visited Condé's websites multiple times between 2012 and 2024. (*See id.* ¶ 196.) The websites installed the trackers on his browser, and the trackers collected his information as he browsed the Internet, which the third parties used to develop a profile on him. (*See id.* ¶¶ 197-98.) Advertisers then purchased the profile and presented him with targeted advertising. (*See id.* ¶ 198.) Deivaprakash never consented to the installation or use of the trackers, and Condé never obtained a court order permitting their installation or use. (*See id.* ¶ 199.)

## II. LEGAL STANDARD

A complaint "must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). Failure to satisfy this requirement may result in dismissal. *See id.* 12(b)(6). To survive a Rule 12(b)(6) challenge, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim

> ***2** has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

> inference that the defendant is liable for the misconduct alleged. [This] standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

See *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quotation marks and citations omitted).

In ruling on a motion to dismiss, a court may consider only "the complaint, materials incorporated into the complaint by reference, and matters [subject to] judicial notice." *See UFCW Loc. 1500 Pension Fund v. Mayer*, 895 F.3d 695, 698 (9th Cir. 2018) (citation omitted). A court must also presume the truth of a plaintiff's allegations and draw all reasonable inferences in their favor. *See Boquist*, 32 F.4th at 773. However, a court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (citation omitted).

**III. DISCUSSION**

The CIPA prohibits installing or using "pen registers" without prior court approval. *See* Cal. Penal Code § 638.51(a). Deivaprakash alleges that Condé violated the pen register provision when its websites installed the trackers on his Internet browser. Condé offers four reasons why that claim should be dismissed as insufficiently pled. However, none provides a valid basis for dismissal.

**A. Deivaprakash Sufficiently Alleges That the Trackers Are Pen Registers**

A pen register is "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." *Id.* § 638.50(b). Condé argues that the trackers do not satisfy this definition for three reasons.

***First***, Condé argues that the trackers do not record or decode any information; instead, they simply instruct users' browsers to transmit the information in question to the third parties. (*See* Motion at 13-14; *see also* Complaint ¶ 32.) That characterization ignores Deivaprakash's explicit allegations that the trackers also collect and store users' information, including cookies which "uniquely identify" each user. (*See, e.g.*, Complaint ¶¶ 61 n.25, 67-70, 76, 109.) Deivaprakash further alleges that the trackers store these cookies "along with a unique user ID, the user's IP address," and/or "Device Metadata," which are alleged to be the routing, signaling, or addressing information at issue. (*See id.* ¶¶ 77, 108-109, 125.) Those allegations suffice. [2] *See, e.g., Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 929-30 (N.D. Cal. 2024) (trackers allegedly "capture[d] the outgoing information"); *Mirmalek v. L.A. Times Commc'ns LLC*, No. 24-cv-01797-CRB, 2024 WL 5102709, at *4 (N.D. Cal. Dec. 12, 2024) ("[T]he Trackers record the addressing information by instruct[ing] the user's browser to send ... the user's IP address to the Tracker and by stor[ing] a cookie with the user's IP address in the user's browser cache." (quotation marks omitted)).

***3** ***Second***, Condé argues that the trackers collect more than just dialing, routing, addressing, or signaling information. (*See* Motion at 14-17.) As an initial matter, the pen register definition does not automatically exclude devices that collect more than just these four categories of information; rather, only devices that go beyond these four categories to also collect the contents of a communication fall outside the definition. *See* Cal. Penal Code § 638.50(b). Condé appears to argue that the trackers also collect the contents of communications, but it bases that conclusion on an interpretation of a screenshot of "traffic from [Deivaprakash's] browser" when he used one of Condé's websites (*see* Complaint ¶ 80; Motion at 16-17):




This screenshot does not provide an adequate basis to conclude as a matter of law under Rule 12(b)(6) that, despite Deivaprakash's allegations to the contrary, the trackers collect the contents of communications. Condé also implies that the trackers' transmission of device metadata places them outside the scope of the pen register definition (*see* Motion at 16-17), but ***meta***data necessarily does not constitute the content of a communication. *See also Shah*, 754 F. Supp. 3d at 929 ("[T]he 'contents' referenced by [the pen register definition] are the users' HTTP requests to load [a] website ....").

***Third***, Condé argues that the third parties receive information affirmatively sent to them by users' browsers (under

instruction from the trackers), as opposed to information intercepted by the trackers. (*See* Motion at 17-19.) As an initial matter, it is not clear how this argument implicates the pen register definition. At best, Condé appears to be arguing that the CIPA does not prohibit the third parties from recording information voluntarily shared with them. But as discussed above, Deivaprakash sufficiently alleges that the trackers themselves recorded the information from his request to Condé's website (*i.e.*, before they transmitted any information to the third parties). Deivaprakash also alleges that he did not consent to the trackers' recording of that information from his visit to Condé's website for the purpose of transmitting it to the third parties, thereby defeating any assertion of voluntariness. (*See* Complaint ¶ 199.) Nor, as Condé asserts, does the California Consumer Privacy Act insulate Condé from liability, as the cited provision provides a right to opt out from selling or sharing information (*see* Motion at 18-19; Cal. Civ. Code § 1798.120(a)(1)), and Deivaprakash expressly alleges a "surreptitious collection" of data (*see* Complaint ¶ 134); if Deivaprakash did not know about the data collection, he could not have exercised his right to opt out. *See also* *Mirmalek*, 2024 WL 5102709, at *5 (opt-out framework of the California Consumer Privacy Act does not prohibit pursuing CIPA claim).

**B. Deivaprakash Sufficiently Alleges That Condé Used the Trackers**

The CIPA prohibits the installation or use of pen registers without prior court approval. *See* Cal. Penal Code § 638.51(a). Therefore, Condé argues, even if the trackers are pen registers, it did not violate the statute because it did not install or use the trackers. With respect to use, Condé asserts that websites record users' IP addresses as part of their ordinary operations and without utilizing trackers. (*See* Motion at 19-20.) Even if true, Deivaprakash alleges the collection of other information as well, and Condé does not claim that websites also collect this other information in the ordinary course without utilizing trackers. And as discussed above, Deivaprakash sufficiently alleges that the trackers themselves collected IP addresses, and he bases his claim on this collection (and not on any collection separate from that performed by the trackers). Accordingly, Deivaprakash adequately alleges Condé's use of the trackers. [3]

**C. Deivaprakash Sufficiently Alleges That He Suffered an Injury Caused by Condé**

***4** The CIPA confers statutory standing to bring a private right of action on persons "injured by a violation" of the statute. *See* Cal. Pen. Code § 637.2(a). Deivaprakash sufficiently alleges that he suffered an injury in the form of an invasion of privacy. Specifically, as discussed above, Deivaprakash describes how the trackers allow the third parties to generate profiles that reflect users' geographic locations, incomes, and preferences, among other characteristics, and hinder users' ability to remain anonymous as they browse the Internet, and he alleges that the third parties did so with respect to him. (*See* Complaint ¶¶ 198, 200.) These allegations suffice. *See, e.g., Shah*, 754 F. Supp. 3d at 932 (sufficient allegations of injury where trackers collected IP addresses and "reveal[ed] geographical location and other personal information sufficient for third parties to conduct targeted advertising"); *Mirmalek*, 2024 WL 5102709, at *4 (similar). Accordingly, it does not matter whether Deivaprakash had a "reasonable expectation of privacy" in the information collected (*see* Motion at 24) because the privacy violation extends beyond the collection of just his IP address and metadata; it encompasses how that collection allegedly allowed the third parties to: (1) build a profile reflecting his personal information; and (2) interfere with his ability to remain anonymous.

For the same reason, Condé's reliance on *Mitchener v. CuriosityStream, Inc.*, No. 25-cv-01471-NW, 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025), does not support its injury argument. (*See* Dkt. No. 25.) There, the court held that the plaintiff did not have an expectation of privacy regarding his metadata. *See* *Mitchener*, 2025 WL 2272413, at *4-5. But here, Plaintiff alleges a privacy invasion based on the creation of a detailed profile and his reduced capacity to remain anonymous. *Mitchener* also concerned **Article III** standing, while Condé disputes whether Deivaprakash satisfies the requirements of **statutory** standing. [4] *See also* *Khamooshi v. Politico LLC*, No. 24-cv-07836-SK, ––– F.Supp.3d ––––, –––– n.5, 2025 WL 1408896, at *4 n.5 (N.D. Cal. May 13, 2025) ("Article III standing is different from, and not to be measured by, statutory standing." (citation omitted)).

Condé also argues that it did not cause any privacy injury allegedly suffered by Deivaprakash because the injury "was caused by information [the third parties] had amassed on him separate and apart from anything" Condé did. (*See* Motion at 27.) Condé ignores, however, that, as alleged by Deivaprakash, it enabled the third parties to amass information about Deivaprakash by embedding the code in its websites that surreptitiously installed the trackers on Deivaprakash's browser in the first place. (*See* Complaint ¶ 64.) And contrary to Condé's assertion otherwise (*see* Motion

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

at 28), under Deivaprakash's allegations, his injury would not have occurred without Condé's installation of the trackers that provided the addressing information used in building the third parties' profiles. [5]

**D. The Rule of Lenity Does Not Apply**

Under the rule of lenity, "ambiguity in a criminal statute should be resolved in favor of lenity, giving the defendant the benefit of every reasonable doubt on questions of interpretation." *See People v. Nuckles*, 56 Cal. 4th 601, 611, 155 Cal.Rptr.3d 374, 298 P.3d 867 (2013) (citation omitted). But the rule "does not apply every time there are two or more reasonable interpretations of a penal statute. On the contrary, this principle applies only when two reasonable interpretations of the same provision stand in relative equipoise." *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 202, 276 Cal.Rptr.3d 746, 483 P.3d 869 (2021) (citations and quotation marks omitted). In other words, the rule applies only where "resolution of the statute's ambiguities in a convincing manner is impracticable." *See People v. Avery*, 27 Cal. 4th 49, 58, 115 Cal.Rptr.2d 403, 38 P.3d 1 (2002).

***5** Condé urges the Court to adopt his interpretations of the CIPA in an exercise of lenity, citing ambiguities concerning the pen register definition and whether the statutory prohibition applies to IP addresses. (*See* Motion at 29-31.) But the application of the CIPA to the allegations in this case does not require the interpretation of any ambiguities in the statute, let alone ambiguities that cannot practicably be resolved in a convincing manner. *See, e.g., Riganian v. LiveRamp Holdings, Inc.*, No. 25-cv-00824-JST, ––– F.Supp.3d ––––, ––––, 2025 WL 2021802, at *12 (N.D. Cal. July 18, 2025) (declining to apply rule of lenity to definition of pen register where the defendant "argued for a certain interpretation" but did not establish any "grievous ambiguity"). Moreover, "the California Supreme Court has instructed courts to interpret CIPA in the manner that fulfills the legislative purpose of CIPA by giving greater protection to privacy interests." *Shah*, 754 F. Supp. 3d at 930 (quotation marks and citation omitted). Implementation of that directive further weighs against application of lenity here.

**IV. CONCLUSION**

For the foregoing reasons, the Court **DENIES** the Motion.

**IT IS SO ORDERED.**

**All Citations**

--- F.Supp.3d ----, 2025 WL 2541952

## Footnotes

1 All citations to page numbers in the Motion refer to ECF page numbers.

2 Because Deivaprakash sufficiently alleges that the trackers record information, this Order does not reach Condé's argument that the trackers do not decode information. (*See* Motion at 14.)

3 Because Deivaprakash adequately alleges Condé's use of the trackers, this Order does not reach Condé's argument that it did not install the trackers.

4 In any event, Deivaprakash's allegations likely satisfy Article III's injury requirement. In *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020), the Ninth Circuit held that allegations of data collection performed "in order to receive and compile [the plaintiffs'] personally identifiable browsing history ... no matter how sensitive or personal" constituted sufficient allegations of injury for purposes of Article III standing. *See id.* at 598 (quotation marks omitted). That holding remains good law after the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 594 U.S. 413, 141 S.Ct. 2190, 210 L.Ed.2d 568 (2021). *See Popa v. Microsoft Corp.*, No. 24-14, ––– F.4th ––––, –––– – ––––, 2025 WL 2448824, at *7-8 (9th Cir. Aug. 26, 2025).

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

5 Because Deivaprakash sufficiently alleges that Condé caused his privacy injury, this Order does not reach Condé's argument that Condé's alleged unjust enrichment does not satisfy the CIPA's injury requirement. (*See* Motion at 28-29.)

End of Document © 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

**EXHIBIT 3**

E-SERVICE
77011350
Sep 05 2025
02:20PM
File & ServeXpress

FILED
Superior Court of California
County of San Francisco
SEP 05 2025
CLERK OF THE COURT
BY: Deputy Clerk

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

JACKSON SCARLETT, individually and on behalf of all others similarly situated,

Plaintiff,

v.

FUTURE US, LLC,

Defendants.

Case No. CGC-25-621912

ORDER OVERRULING DEMURRER TO FIRST AMENDED COMPLAINT AND ORDER AFTER CASE MANAGEMENT CONFERENCE

**INTRODUCTION**

This matter came on regularly for hearing on September 5, 2025, at 10:00 a.m., in Department 606, the Honorable Jeffrey S. Ross presiding. Kaili Lynn and Joshua Wilner (Bursor & Fisher, P.A.) appeared for plaintiff Jackson Scarlett. Jeremy Goldman, Caren Decter, and Cesarina da Parma (Frankfurt Kurnit Klein & Selz PC) appeared for defendant Future US, LLC. Having reviewed and considered the parties' briefing and arguments, IT IS HEREBY ORDERED that the court OVERRULES defendant's demurrer to the first amended complaint.

**BACKGROUND**

Plaintiff visited Future's TechRadar Website during the period from 2020 through August 2024 and, as a result Trackers were placed which, plaintiff alleges, allowed various Third Parties to

collect plaintiff's "IP address, Device Metadata, and set a cookie with a unique user ID that allowed the Third Parties to pervasively track Plaintiff across multiple TechRadar Website sessions and even other websites, as well as deanonymize and identify Plaintiff by synchronizing his user profile with any profiles maintained in the Third Parties' databases, or in those of the other entities with whom the Third Parties sync their trackers on the Website." (FAC, ¶¶ 195, 196.) Plaintiff alleges a single cause of action under California Penal Code section 638.51(a) which prohibits the installation or use of a "pen register or a trap and trace device without first obtaining a court order." (FAC, ¶ 216.) Plaintiff alleges that the Trackers are pen registers because they are " 'devices or processes' that are being used to ascertain the identify of 'visitors to Defendant's Websites,' and are thus capturing 'addressing' information." (FAC, ¶ 219.) The statute provides for exceptions, which are not applicable here, and "[a]ny person who has been injured by a violation of this chapter [which includes section 638.51(a)] may bring an action against the person who committed the violation for the greater of the following amounts: (1) Five thousand dollars ($5,000) per violation[;] (2) Three times the amount of actual damages, if any, sustained by the plaintiff." (Penal Code, § 637.2(a).) Plaintiff sues on behalf of himself and seeks to represent a class whose members are similarly situated.

**REQUEST FOR JUDICIAL NOTICE**

Future asks the court to take judicial notice of various trial court minutes orders sustaining demurrers, some with and others without leave to amend. (RJN, Exs. A–F.). Trial court orders are not citable. (California Rules of Court, rule 8.1115; *County of San Bernadino v. Cohen* (2015) 242 Cal.App.4th 803, 816.) While the court declines to take judicial notice, reading the orders demonstrates their limited utility for these purposes. The court is unable to compare the adequacy of the allegations in the complaints as to which demurrers were sustained with the detailed FAC. And as to the four where leave to amend was granted, the court cannot determine whether, with that leave, the amended complaint survived a subsequent demurrer. Accordingly, the court denies the request to take judicial notice of those orders, namely, Exhibits A–F. The court declines to take judicial notice of Exhibit G as it is irrelevant to the allegations in the FAC for the reasons discussed below. The court takes judicial notice of Exhibit H, pursuant to Evidence Code section 452, subdivisions (a) and (b), but observes that the language of the

statute—not a selection from its legislative history—informs the court's analysis. (*Corner Post, Inc. Bd. of Governors of Fed. Rsrv. Sys.* (2024) 603 U.S. 799, 815.)

**LEGAL STANDARD**

A demurrer lies where "the pleading does not state facts sufficient to constitute a cause of action." (Code Civ. Proc., § 430.10, subd. (e).) A demurrer admits "all material facts properly pleaded, but not contentions, deductions, or conclusions of fact or law." (See *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318; see also *C&H Foods Co. v. Hartford Ins. Co.* (1984) 163 Cal.App.3d 1055, 1062 ["material facts alleged in the complaint are treated as true for the purpose of ruling on the demurrer"].) A plaintiff "must set forth factual allegations that sufficiently state all required elements of [a] cause of action…and, [a]llegations must be factual and specific, not vague or conclus[ory]." (*Rakestraw v. Cal. Physicians' Serv.* (2000) 81 Cal.App.4th 39, 43–44 [internal citations omitted].) The complaint is given "a reasonable interpretation, reading it as a whole and its parts in their context." (*Blank, supra*, 39 Cal.3d at p. 318; see also *Kruss v. Booth* (2010) 185 Cal.App.4th 699, 713 [the court must "draw[] all reasonable inferences…in favor of the plaintiff"].) "Where written documents are the foundation of an action and are attached to the complaint and incorporated therein by reference, they become a part of the complaint and may be considered on demurrer." (*City of Pomona v. Super. Ct.* (2001) 89 Cal.App.4th 793, 800.). "Leave to amend should be denied where the facts are not in dispute and the nature of the claim is clear, but no liability exists under substantive law." (*Lawrence v. Bank of Am.* (1985) 163 Cal.App.3d 431, 436.) The burden to show that any pleading defects can be cured by amendment lies with the opposing party. (*Shimmon v. Franchise Tax Bd.* (2010) 189 Cal.App.4th 688, 692; *Blank, supra,* 39 Cal.3d at p. 318.)

**ANALYSIS**

Future demurs to plaintiff's first amended complaint on the following grounds: (1) plaintiff lacks standing and (2) the FAC does not state facts sufficient to constitute a cause of action against defendant.

"The California Invasion of Privacy Act (§ 630 et seq. (CIPA)) was enacted in 1967, replacing prior laws that permitted the recording of telephone conversations with the consent of one party to the conversation. [Citation.] The purpose of the act was to protect the right of privacy by, among other things, requiring that all parties consent to a recording of their conversation." (*Flanagan v. Flanagan* (2002) 27

Cal.4th 766, 768–69.) " ' "In enacting [CIPA], the Legislature declared in broad terms its intent 'to protect the right of privacy of the people of this state' from what it perceived as 'a serious threat to the free exercise of personal liberties [that] cannot be tolerated in a free and civilized society.' (Pen. Code, § 630.) This philosophy appears to lie at the heart of virtually all the decisions construing the Privacy Act." ' [Citations.]" (*Gruber v. Yelp Inc.* (2020) 55 Cal.App.5th 591, 606.)

As the first basis for demurrer, Future disputes plaintiff's standing. Future contends "Plaintiff lacks standing because he has no protectable privacy interest in his IP address and device metadata." If plaintiff's lack of standing to sue appears on the face of the complaint or from matters judicially noticeable, a general demurrer lies for failure to state a cause of action in *this* plaintiff. (*County of Fresno v. Shelton* (1998) 66 Cal.App.4th 996, 1009.) Plaintiff sufficient alleges standing. Section 637.2 confers a private right of action on "[a]ny person who has been injured by a violation of this chapter." (Cal. Pen. Code, § 637.2(a); see also *Moody v. C2Educational Sys., Inc.* (C.D. Cal. 2024) 742 F.Supp.3d 1072, 1077 ("California Penal Code § 637.2 states that an individual injured by a violation of CIPA may bring a private action to enforce it.").

At the hearing, Future elaborated on its contention that plaintiff was not "injured by a violation of the statute." (Cal. Penal Code § 637.29(a).) In furtherance of that position Future argued that its software's collection of plaintiff's IP address and Device Metadata (i.e., browser type, operating system, and device type) does not violate CIPA because the data collected is not sensitive personal information. Therefore, Future claims plaintiff was not injured by the retention of the data and lacks standing. (Demurrer at pp. 8:20–9:19.) In support of that position Future disputed that its conduct as alleged in the FAC constitutes either a "pen register" as defined by Penal Code section 638.50(b) or as a "trap and trace device." (Pen. Code, § 638.50(c)). Future referred the court to plaintiff's allegation: "Defendant incorporates the Trackers' code into the code of its Websites, including when Plaintiff and Class Members visited the Websites. Thus, when Plaintiff and Class Members visited the Websites, Defendant caused the Trackers to be installed on Plaintiff's and Class Members' browsers. This allowed the Third Parties—through their respective Trackers—to collect Plaintiff's and Class Members' IP addresses and Device Metadata and pervasively tack them across the Internet." (FAC, ¶ 58.) Future argued that this conduct does not satisfy the prerequisites for violation of CIPA.

Plaintiff further alleges: "Defendant installed the Trackers—which are pen registers—on Plaintiff's and Class Members' browsers, which allowed the Third Parties to collect Plaintiff's and Class Members' IP addresses and Device Metadata. The Trackers also set a unique user identifier on Plaintiff's and Class Members' browsers so the Third Parties could de-anonymize Plaintiff and Class Members and track them across multiple Website sessions and multiple websites." (FAC, ¶ 220.) Plaintiff alleges defendant and the Third Parties used the information collected by the Trackers to identify plaintiff and the class members and create new profiles of them in the Third Parties' databases or match them to pre-existing profiles, sell plaintiff and class members' information to advertisers for hyper-targeted advertising based on the information collected, target plaintiff and class members with advertisements, and de-anonymize plaintiffs and class members and generate revenue from the sale of their information, which boosted defendant, advertisers' and Third Parties' revenues and the value of the Third Parties' services. (FAC, ¶ 221.) Plaintiff and the class members did not provide consent and there was no court order allowing defendant to install or use the Trackers. (FAC, ¶ 223.) Plaintiff alleges injury and damages. (FAC, ¶ 224.) Whether plaintiff's claims can be maintained on behalf of the putative class is an issue for another day as that issue is not appropriate on demurrer and is for class certification.

Future concedes that no California appellate courts have addressed whether the alleged conduct constitutes either a "pen register" or "trap and trace device" and there is no California authority as to whether the alleged conduct would violated CIPA.

Considering the application of CIPA to the same technology, United States District Court Judge Rita Lin concluded that the alleged conduct does implicate CIPA. (*Shah v. Fandom, Inc.* (N.D. Cal. 2024) 754 F.Supp.3d 924 (*Shah*).) While *Shah* is not binding authority, the court finds its reasoning persuasive and instructive here:

> Plaintiffs plausibly allege that the collection of their IP addresses through the Trackers allows the third parties to obtain "personally identifying, non-anonymized information," and that the IP addresses reveal geographical location and other personal information sufficient for third parties to conduct targeted advertising. (FAC ¶¶ 71–72.) Plaintiffs further allege that they were unaware of this tracking, and did not consent to it, as noted above. Perhaps Plaintiffs should expect to reveal their IP addresses to the gamespot.com website, and possibly even to third parties who provide the advertisements that load when Plaintiffs visit that website. But that does not necessarily mean that Plaintiffs should reasonably expect to have Trackers installed that send their IP

> addresses to third parties every time Plaintiffs visit gamespot.com. Plaintiffs have plausibly alleged that they were injured by being tracked across multiple visits for marketing and advertising purposes, and that they did not expect or agree to such tracking.

(*Shah*, *supra*, 754 F.Supp.3d at p. 932.)

At the hearing Future argued that California binding authority cited in its reply compels a different outcome. (*Lieberman v. KCOP Television, Inc.* (2003) 110 Cal.App.4th 156, 167.) To reach its conclusion, Future must overlook the following: "to recover statutory damages for violation of section 632, Lieberman was not required to prove actual damages resulting from the recording. He may recover up to $5,000 for each incident." (*Ibid.*) If Future's alleged conduct constitutes the unconsented installation of either a pen register or a trap and trace device, then one instance provides a basis for seeking the statutory $5,000 penalty and no further injury need be proved.

Future's counsel also referred the court to a case not cited in its briefs, which the court read during the hearing. (*Kight v. CashCall, Inc.* (2011) 200 Cal.App.4th 1377, 1389.) However, *Kight* decides issues under "section 632 [which] prohibits unconsented-to recording or monitoring regardless of the content of the conversation or the purpose of the monitoring, and is intended to protect rights separate and distinct from the right to prevent the disclosure of improperly obtained private information." (*Ibid.*) *Kight* neither supports Future's position nor undermines plaintiff's standing.

Neither case addresses what the court perceives to be the fundamental flaw in Future's argument: If the alleged conduct is either the installation of a "pen register" or a "trap and trace device" then Future's installation of that software on Plaintiff's computer without plaintiff's consent violates CIPA. (Pen. Code, § 638.51(a).) The FAC provides sufficient basis to allege plaintiff's standing to bring the claims and on this ground the demurrer is overruled.

Future additionally argues, "Plaintiff's flawed interpretation of section 638.51(a) would lead to absurd and unintended results." Future's second demurrer ground—that plaintiff's interpretation would lead to absurd and unintended results—is similarly unpersuasive. Again, United States District Court Judge Rita Lin's observation is apt:

> The Court's task is to interpret the law as the Legislature wrote it. The pen register statute is broadly written, and under California law, is to be interpreted broadly to protect privacy and to be applied to new techniques and technologies. That statute reflects the Legislature's judgment that an individual's consent is required before others may track certain

> addressing information in their electronic communications for non-law enforcement purposes. To the extent that Fandom believes the statute may impose too many burdens when applied to the realities of modern technologies, and that it is too unwieldy to obtain users' consent through disclosures of the practices at issue, the question of whether the statute's scope should be narrowed ultimately rests with the Legislature, not the courts.

(*Shah*, *supra*, 754 F.Supp.3d at pp. 932–33.)

Finally, Future argues "the FAC fails to state a claim because the third-party scripts are not 'pen registers' as a matter of law." Penal Code, section 638.50(b) defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Plaintiff adequately pleads each element of this definition to survive demurrer. Plaintiff pleads: "The Trackers are 'pen registers' because they are 'devices or processes' that 'captured' the 'routing, addressing, or signaling information'—the IP address, Device Metadata, and unique user IDs—from the electronic communications transmitted by Plaintiff's and the Class's computers or smartphones." (FAC, ¶ 218.) Plaintiff further alleges, "Likewise, the Trackers are 'pen registers' because they are 'devices or processes' that are being used to ascertain the identity of 'visitors to Defendant's Websites,' and are thus capturing 'addressing' information." (FAC, ¶ 219.)

Judge Lin came to the same conclusion:

> Plaintiffs adequately plead each element of this definition. Plaintiffs' theory is that the third-party Trackers operate as pen registers under the meaning of the statute because they are processes that record users' IP addressing information, but not the content of the electronic communications being transmitted from users' computers or smartphones to Fandom's website. At the motion to dismiss stage, these allegations are sufficient to plausibly allege that the Trackers operate as a "process" under the meaning of the statute.
>
> …
>
> Fandom also argues that the claim fails because the Trackers do not collect any "*recipient* 'dialing, routing, addressing or signaling information' relating to an outgoing communication," but instead collect the *sender's* IP address. (*Id.* at 16.) According to Fandom, because the Trackers do not operate like traditional phone pen registers—which collect the recipient phone number dialed during the outgoing call—they do not meet the definition of pen registers under CIPA. But the Court's analysis must begin with the statutory text, and if that text is clear, must end there. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) (quoting *McDonald v. Sun Oil Co.*, 548 F.3d 774, 780 (9th Cir. 2008)). Nothing in the statutory definition limits pen registers to those that operate the same way as a traditional phone pen register. "The Court cannot ignore the expansive language in the California Legislature's chosen definition." *Greenley*, 684 F.

> Supp. 3d at 1050. By the plain meaning of § 638.50(b), collection of the recipient phone number or IP address is not a required element. All that is required is that the Trackers record addressing information transmitted by the user's computer or smartphone in connection with the outgoing HTTP request to Fandom's website, regardless of whether that addressing information pertains to the sender or the recipient of the communication at issue.

(*Shah*, *supra*, 754 F.Supp.3d at pp. 928–29.)

**CONCLUSION**

The court overrules Future's demurrer to the FAC. Future is ordered to answer within 30 days of the filing of this order.

The court reserves **Wednesday, January 7, 2026, at 9:00 a.m.** for a case management conference. The parties shall file a joint case management conference statement **by Friday, December 19, 2025,** which shall inform the court of: the status of discovery; the proposed date for identification of expert witnesses and exchange of expert reports; and any suggested procedures to assure the efficient and economical litigation of disputed issues.

Dated: September 5, 2025

JEFFREY S. ROSS
Judge of the Superior Court

**CERTIFICATE OF ELECTRONIC SERVICE**
(CCP 1010.6 & CRC 2.251)

I, Sean Kane, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am not a party to the within action.

On September 5, 2025, I electronically served the attached document via File & ServeXpress on the recipients designated on the Transaction Receipt located on the File & ServeXpress website.

Dated: September 5, 2025

Brandon E. Riley, Court Executive Officer

By: ______________________
Sean Kane, Deputy Clerk