**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
E-mail: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Kaili C. Lynn (State Bar No. 334933)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
klynn@bursor.com
jwilner@bursor.com
jwilner@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

SONNI ECHEVERRIA-CORZAN, individually and on behalf of all others similarly situated,

Plaintiff,

v.

FOX CORPORATION and FOX NEWS NETWORK, LLC,

Defendants.

Case No. 3:25-cv-04253-AMO

**PLAINTIFF'S STATEMENT OF RECENT DECISION**

Pursuant to Local Civil Rule 7-3(d)(2), Plaintiff Sonni Echeverria-Corzan ("Plaintiff") respectfully submits this Statement of Recent Decision regarding the pending Motion to Dismiss the First Amended Complaint. *See* ECF Nos. 11-12, 17, 21. Plaintiff brings to the Court's attention two recent decisions. *First*, Plaintiff brings to the Court's attention an October 16, 2025 Order by Judge Susan van Keulen in *Walsh v. Dollar Tree Stores, Inc.*, Case No. 5:25-cv-1601, 2025 WL 2939229 (N.D. Cal. Oct. 16, 2025). The *Walsh* decision is attached hereto as **Exhibit 1**. The *Walsh* decision is relevant to the Parties' respective arguments about whether Plaintiff has stated a claim for a violation of Cal. Pen. Code § 638.51.

*Second*, Plaintiff brings to the Court's attention an October 24, 2025 Order by Judge Charles F. Adams in *Xu v. Reuters News & Media, Inc.*, Case No. 25CV459918, 2025 WL 3035016 (Super. Ct. Santa Clara Cnty. Oct. 24, 2025). The *Xu* decision is attached hereto as **Exhibit 2**. The *Xu* decision is relevant to the Parties' respective arguments about whether Plaintiff has stated a claim for a violation of Cal. Pen. Code § 638.51 and the interplay between the CIPA and the CCPA.

Dated: November 5, 2025

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Philip L. Fraietta*

Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
E-mail: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Kaili C. Lynn (State Bar No. 334933)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
klynn@bursor.com
jwilner@bursor.com

*Attorneys for Plaintiff*

**EXHIBIT 1**

2025 WL 2939229
Only the Westlaw citation is currently available.
United States District Court, N.D. California.

Marco WALSH, et al., Plaintiffs,
v.
DOLLAR TREE STORES, INC., Defendant.

Case No. 25-cv-01601-SVK
|
Signed October 16, 2025

**Attorneys and Law Firms**

Hayley A. Reynolds, Marie Ann McCrary, Seth Adam Safier, Gutride Safier LLP, San Francisco, CA, for Plaintiffs.

Jason David Russell, Hillary Anne Hamilton, Skadden, Arps, Slate, Meagher & Flom LLP, Los Angeles, CA, James Y. Pak, Skadden, Arps, Slate, Meagher & Flom LLP, Palo Alto, CA, for Defendant.

Rebecca Blake Durrant, Kelley, Drye & Warren LLP, La Jolla, CA, Gregory Pruden, Pro Hac Vice, Kelley, Drye & Warren LLP, New York, NY, for Amicus The Retail Litigation Center.

**ORDER DENYING DEFENDANT'S MOTION TO TRANSFER AND GRANTING IN PART AND DENYING IN PART THE MOTION TO DISMISS**

Re: Dkt. Nos. 17, 18

SUSAN VAN KEULEN, United States Magistrate Judge

***1** Plaintiffs Marco Walsh, Howard Yosha and Erica Maldonado (the "Named Plaintiffs") bring this class-action suit on behalf of all others similarly situated (collectively, "Plaintiffs") against Defendant Dollar Tree Stores, Inc. ("Dollar Tree"). Now before the Court are Dollar Tree's motions: (1) to transfer this case to the Eastern District of Virginia and (2) to dismiss all claims for lack of standing, improper venue as to two of the three Named Plaintiffs and failure to state a claim. Dkts. 17-18, respectively. Plaintiffs oppose the motions. Dkts. 35, 37. Both Parties have also filed various requests for judicial notice and oppositions thereto. Dkts. 19, 34, 35-1. Additionally, the Court has heard from *amicus curiae*, the Retail Litigation Center ("RLC") in support of Dollar Tree's motion to dismiss. Dkt. 29. Having considered the submissions, the oral arguments at the hearing on August 26, 2025, the relevant law and the record in this action, the Court **DENIES** Dollar Tree's motion to transfer and **GRANTS IN PART** and **DENIES IN PART** its motion to dismiss.

## I. THE PARTIES' REQUESTS FOR JUDICIAL NOTICE AND OTHER EVIDENCE

This Order concerns Dollar Tree's motion to transfer venue and motion to dismiss. Accordingly, the facts relevant to this Order, described in the Background section below, are drawn principally from Plaintiffs' complaint (Dkt. 1 ("Complaint" or "Compl.")). *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (On a motion to dismiss, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."); *All-Tex, Inc. v. Aramsco, Inc.*, No. 18-cv00410-DSF (EX), 2018 WL 11473762, at *1 (C.D. Cal. Mar. 14, 2018) ("In determining whether to grant a motion to transfer venue, 'uncontroverted allegations in [a] plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [the] plaintiff's favor.' " (quoting

*Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010), *abrogated on other grounds, see Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017) (explaining the impact of *Walden v. Fiore*, 571 U.S. 277 (2014)))). With regard to the motion to transfer only, the Court also considers information contained in the Parties' affidavits. *See All-Tex, Inc.*, 2018 WL 11473762, at *1.

Finally, "judicial notice and incorporation-by-reference [also] have roles to play at the pleading stage." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Accordingly, the Court considers and resolves the Parties' requests for judicial notice, and other submission of evidence, as follows.

**A. Dollar Tree's Requests and Evidence**

First, Dollar Tree requests the Court take judicial notice of its privacy policy, (Dkt. 19-1, Ex. 1 ("Privacy Policy")), and its website terms and conditions, (*see* Dkt. 19-1, Ex. 2 (the "T&C")). Plaintiffs oppose, arguing that the agreements introduced by Dollar Tree are not the versions Plaintiffs encountered (if at all), such that they: (1) cause a dispute of fact as to whether they are binding; (2) are irrelevant; and (3) are not incorporated into the Complaint. Dkt. 34 at 4-6. The Court disagrees. Plaintiffs' Complaint alleges that "Plaintiff Walsh visited the Dollar Tree Website to browse information about Dollar Tree's products" in or around "January 2025." Compl., ¶ 76. Thus, the January 1, 2025 version of the Privacy Policy submitted by dollar tree is the relevant version at least as to Plaintiff Walsh, and so is relevant to the potential class of Plaintiffs. The T&C, dated August 23, 2024, is similarly the correct version – although Plaintiffs dispute whether they were bound by the terms in the first place. Moreover, the Privacy Policy is incorporated by reference in the Complaint, forming the basis of at least Plaintiff Walsh's claim for breach of contract. Compl., ¶¶ 24, 37, 185. Plaintiffs do not challenge the authenticity of the documents. *See* Dkt. 34. Accordingly, the Court finds the contents of the agreements "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* Dkt. 19-1, ¶¶ 14-15. The Court **GRANTS** Dollar Tree's request to take judicial notice of the agreements for the content of the terms stated therein. *See* Dkt. 19.

***2** Second, Dollar Tree requests this Court judicially notice Dkt. 19-1, Ex. 3, a screenshot of Dollar Tree's website showing hyperlinks to the Privacy Policy and T&C. For the same reasons as above, and additionally because Plaintiffs do *not* oppose notice of this exhibit, the Court **GRANTS** Dollar Tree's request, taking judicial notice of hyperlinks to the Privacy Policy and T&C that are available at the bottom of Dollar Tree's website.

Dollar Tree's other requests for judicial notice, (*see* Dkts. 19-20 (exhibits 1-9 to the Pak Declaration)) are **DENIED WITHOUT PREJUDICE**, as the Court does not consider these documents in its analysis.

Finally, Dollar Tree has submitted the declaration of Daniel Bowman, its Director of Digital Operations, in support of both motions. Dkt. 19-1. In addition to attaching the above exhibits, Mr. Bowman avers to various facts relating to the location of Dollar Tree, its current and former employees and third party OneTrust. *Id.*, ¶¶ 5-13. While the Court takes notice of the Privacy Policy, T&C and website screenshot as relevant to both pending motions, it considers the substance of Mr. Bowman's declaration itself *only* with regard to the motion to transfer.

**B. Plaintiffs' Submitted Evidence**

Plaintiffs submit two documents in support of their opposition to the motion to transfer. The first is a screenshot of Dollar Tree's a popup banner that prompts users to either "Accept Advertising Cookies," "Reject Advertising Cookies" or "Manage Cookies." Dkt. 35-2 (the "Cookie Banner"). The Court notes that a substantively identical screenshot of the Cookie Banner is included in the Complaint and that it forms the basis of some of Plaintiffs' claims. *See* Compl., ¶¶ 26-27. The Cookie Banner, including as depicted in Dkt. 35-2, is thus incorporated by reference. *See Khoja*, 899 F.3d at 1002 (documents are incorporated by reference in a complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."). The second is a screenshot of Dollar Tree's website which the Court declines to consider at this time.

Finally, during the hearing, Plaintiffs presented a screenshot of Dollar Tree's "Manage Cookies" popup; Dollar Tree objected to the consideration of this document as an exhibit, and the Court accepted it only as a demonstrative at that time. *See* Dkt. 53 ("Hrg. Tr.") at 16:8-23. However, Plaintiffs have quoted the entire text of the "Manage Cookies" popup in their Complaint, such that the Court—accepting well-pleaded factual allegations as true—may rely on the popup in deciding the pending motions. *See* Compl., ¶ 24. Accordingly, Dollar Tree's objection to the use of screenshot is **OVERRULED**.

## II. BACKGROUND

Plaintiffs' nine causes of action all arise from the same basic allegation: that, despite their clicking the "Reject Advertising Cookies" button on Dollar Tree's website, Dollar Tree nonetheless caused advertising cookies to be placed on Plaintiffs' computers. *See* Compl., ¶ 1. "Cookies" are "small text files sent by a website's server to a user's web browser and stored locally on the user's device" which can be used to track, *e.g.*, a user's browsing and visit history, website interactions, user input data, shopping behavior, session information, and more. *See* Compl., ¶ 20. Cookies may be used for various purposes, including user analytics, personalization and advertising/targeting. *Id.*, ¶ 21.

Dollar Tree's website contains a popup banner that prompts users to either "Accept Advertising Cookies," "Reject Advertising Cookies" or "Manage Cookies." *Id.*, ¶¶ 26-27; *see also* Dkt. 35-2 (the "Cookie Banner"). As seen below, the webpage is dark and does not allow browsing until a selection is made:




Dkt. 35-2; Dkt. 35-1 ("Safier Decl."), ¶¶ 2-3.

The use of Dollar Tree's website involves two agreements: the Privacy Policy and the T&C. Dkt. 19-1, Exs. 2-3. As noticed by the Court, both are accessible via hyperlink at the bottom of Dollar Tree's website. Dkt. 19-1, Ex. 3. Additionally, the "Manage Cookies" option on the Cookie Banner leads to a popup which links to the Privacy Policy but not to the T&C:

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 




*See* Compl., ¶ 24.

Plaintiffs' nine claims may be grouped into several categories. The first and second causes of action are common law privacy allegations, alleging invasion of privacy and intrusion upon seclusion (the "privacy claims"). Compl. at 40-44. The third and fourth causes of action are statutory privacy claims based upon provisions of the California Invasion of Privacy Act ("CIPA") (the "CIPA claims"). *Id.* at 44-51. The seventh and eight causes of action allege breaches of promises or representations by Dollar Tree, implied or otherwise, related to the Privacy Policy (the "contract claims"). *Id.* at 53-57. Relatedly, but not relying on the Privacy Policy, the fifth and sixth causes of action are for common law fraud and unjust enrichment. *Id.* at 51-53. Finally, Plaintiffs allege a trespass to chattels based upon the physical act of storing cookie files on Plaintiffs devices without their consent. *Id.* at 57-58.

As relevant to Dollar Tree's motion to transfer, the Dollar Tree's T&C contain a forum-selection clause selecting the Eastern District of Virginia. Dkt. 19-1 at 20. The Privacy Policy, however, contains no such provision. Dkt. 19-1 at 7-15.

## III. LEGAL STANDARDS

### A. Motion to Transfer

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The "transfer inquiry proceeds in two steps. First, the Court determines 'whether the transferee district was one in which the action might have been brought by the plaintiff.' " *California v. Bureau of Land Mgmt.*, No. 18-cv-00521-HSG, 2018 WL 3439453, at *2 (N.D. Cal. July 17, 2018) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960)). Second, "the Court conducts an individualized case-specific analysis of convenience and fairness" considering the private interests of the Parties and certain public interests. *See id.*, (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quotations omitted)).

"The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum." *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 62-63 and n.6 (2013). Then,

"a court must deem all factors relating to the private interests of the parties entirely in favor of the preselected forum." *Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1087-88 (9th Cir. 2018).

Additionally, although a Court may consider the declarations or affidavits of the Parties in deciding a motion to transfer, any " 'uncontroverted allegations in [a] plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [the] plaintiff's favor.' " *See All-Tex, Inc.*, 2018 WL 11473762, at *1.

**B. Motion to Dismiss**

***4** "A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) tests whether the court has subject matter jurisdiction." *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 900 (N.D. Cal. 2020). "[L]ack of Article III standing requires dismissal for want of subject matter jurisdiction under Rule 12(b)(1)." *Id.* "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a "facial" 12(b)(1) challenge, as is presented here, the Court assumes a plaintiff's factual allegations to be true and draws all reasonable inferences in plaintiff's favor. *Oracle Corp. v. ORG Structure Innovations LLC*, No. 11-cv-3549 SBA, 2012 WL 12951187, at *3 (N.D. Cal. Mar. 30, 2012) (citing *Doe v. See*, 557 F.3d 1066, 1073 (9th Cir. 2009)).

Federal Rule of Civil Procedure 12(b)(3) allows a party to raise the defense of improper venue. When venue is improper within a district, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

Federal Rule of Civil Procedure 12(b)(6) authorizes a district court to dismiss a complaint if it fails to state a claim upon which relief can be granted. In ruling on a motion to dismiss, a court may consider only "the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061. (9th Cir. 2008). Courts generally "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek*, 519 F.3d at 1031. However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Furthermore, Plaintiffs "generally need not plead around affirmative defenses." *Ploof v. Arizona*, No. 22-15061, 2023 WL 2929314, at *1 (9th Cir. Apr. 13, 2023).

If the court finds that dismissal is warranted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

**IV. DISCUSSION**

**A. Dollar Tree's Motion to Transfer is Denied**

As an initial matter, there is no dispute that the Eastern District of Virginia—the target transfer forum—is a "district or division where [this case] might have been brought" originally. Dkt. 17 at 25; *see generally* Dkt. 35. Dollar Tree's principal place of business is Chesapeake, Virginia, meaning that general personal jurisdiction is proper there and that Dollar Tree "resides" there for the purposes of venue. Compl., ¶ 9; *see* 28 U.S.C. 1391. Meanwhile, the Named Plaintiffs are all residents of California and Plaintiffs allege that the amount in controversy exceeds $5,000,000 in the aggregate, such that diversity jurisdiction is proper. Compl., ¶¶ 6-10; *see also* Dkt. 17 at 25.

Accordingly, the Court turns to the second prong of the transfer analysis: whether the private and public interests of convenience and fairness support transfer.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

**1. Dollar Tree has Not Shown that Plaintiffs are Bound by the Forum-Selection Clause in the Website Terms and Conditions**

***5** The Court first addresses whether there is a binding forum-selection clause, because "a valid forum selection clause should be given controlling weight in all but the most exceptional cases." *Aimone v. Investorflow LLC*, No. 23-cv-00118-DMR, 2023 WL 3483287, at *3 (N.D. Cal. May 15, 2023). Here, the Court finds that there is no such binding clause.

There are two agreements at issue here: the Privacy Policy and the T&C. Plaintiffs admit they are bound by the Privacy Policy; indeed, at least the two contract claims rely on the Privacy Policy's terms being binding. Compl., ¶¶ 25, 37, 184-85, 187; Dkt. 35 at 16. However, the Privacy Policy contains no forum-selection clause. Dkt. 19-1 at 7-15.

The T&C do contain a forum-selection clause. Dkt. 19-1 at 20. Dollar Tree argues that Plaintiffs are bound by the T&C and thus its forum-selection clause. *See* Dkt. 17 at 15-18. Plaintiffs disagree, arguing that, although they used Dollar Tree's website, they were not bound by the T&C because they are unenforceable browsewrap. Dkt. 35 at 9-16.

"To form a contract under California ... law, there must be actual or constructive notice of the agreement and the parties must manifest mutual assent." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512-13 (9th Cir. 2023). As to "actual notice," neither Party provides evidence as to whether the Named Plaintiffs viewed the T&C of Dollar Tree's website. *See* Dkt. 35 at 10 (Plaintiffs arguing, without supporting declarations, that Named Plaintiffs did not); Dkt. 9 (Dollar Tree arguing for "limited discovery to determine whether Plaintiffs in fact ... read ... the T[&C]."). "The party moving for transfer has the burden in showing that transfer is appropriate." *Mitek Sys., Inc. v. United Servs. Auto. Ass'n*, No. 19-CV-07223-EMC, 2020 WL 1922635, at *4 (N.D. Cal. Apr. 21, 2020), *aff'd*, 34 F.4th 1334 (Fed. Cir. 2022). Accordingly, Dollar Tree has not met its burden at this juncture to show that any of the Named Plaintiffs actually viewed the T&C.

As to constructive notice, both sides agree that Dollar Tree's T&C—which are available only via hyperlink at the bottom of its webpage and are not part of any independent pop-up, sign-in or check-box—are browsewrap. *See* Dkt. 40 at 7-8 (Dollar Tree's reply); Dkt. 35 at 12-14 (setting forth Plaintiffs' "browsewrap" argument); *see also Oberstein*, 60 F.4th at 513 ("At the other end of the spectrum [from enforceable clickwrap agreements] are so-called 'browsewrap' agreements, in which a website offers terms that are disclosed only through a hyperlink and the user supposedly manifests assent to those terms simply by continuing to use the website," (cleaned up) citations omitted)). "Courts are generally reluctant to enforce such agreements[.]" *Oberstein*, 60 F.4th at 513. Plaintiffs argue that there is a "bright-line rule" and the inquiry ends here. Dkt. 35 at 12-13 (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1178-79 (9th Cir. 2014)). Dollar Tree correctly points out, however, that *Nguyen* only disapproved of notice via hyperlink "without more," suggesting the rule is not all-or-nothing. Dkt. 40 at 7. The *Oberstein* Court's use of the word "generally" similarly suggests that the rule is not always a bright line. *Oberstein*, 60 F.4th at 513. Dollar Tree contends that Plaintiff's invocation of the Privacy Policy, which is contained in an adjacent and similarly placed hyperlink, "is the 'more' " that is required. *Id.* at 7-8.

***6** On the record before it, the Court disagrees. While true that if Plaintiffs were attempting to rely on the website's hyperlink to assert claims under the Privacy Policy, it would be difficult to see how they could disavow having constructive notice of the adjacent, similarly placed T&C hyperlink, that is not what occurred here. As Plaintiffs argue, "[i]t's not that we get to the privacy policy through the [hyperlinks at the] bottom of the web page. Where the consumers ... get to the privacy policies is by going to the mange cookie button." Dkt. 53 ("Hrg. Tr.") at 16:8-18. [1] The "Manage Cookies" popup, as pointed to by Plaintiffs, contains a clear, paragraph explanation of "Site Cookie Preferences" with an explicit statement that "[f]or more information about our privacy practices, [users should] see our Privacy Policy." Compl., ¶ 24 (on Dollar Tree's website, "Privacy Policy" is an underlined hyperlink). Thus, Plaintiffs allege a unique route to the Privacy Policy that does not implicate the T&C hyperlink. Only the hyperlinks at the bottom of the webpage are insufficient to provide constructive notice.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

Finally, Dollar Tree also argues that its T&C are incorporated into the Privacy Policy and referenced therein "in several places." Dkt. 40 at 7-8; Hrg. Tr. at 31:1-6. In fact, there are only two such references, and neither is sufficient to incorporate the forum-selection clause against Plaintiffs. The first reference is in the right-hand column of the 19th row of a 22-row chart; it is inconspicuously placed, not hyperlinked, and the words "terms and conditions" are not even capitalized. Dkt. 19-1 at 10. The second reference is more robust, capitalizing and underlining the words "Terms & Conditions (/terms)" so as to call them to a user's attention. *Id.* at 14. But it is in a section expressly directed to Dollar Tree's coupon program, stating only that "[t]he [Coupon] Programs are subject to our [T&C]." *Id.* at 10. If anything, this might mislead a consumer into supposing that *only* the coupon program, and not general use of the website, is subject to the T&C. Neither of these references is sufficient, without more, to incorporate the T&C into the Privacy Policy. *See In re Holl*, 925 F.3d 1076, 1084 (9th Cir. 2019) (incorporation requires, in relevant part, that "the incorporation [be] clear and unequivocal, the reference [be] called to the attention of the other party and he consents thereto." (Cleaned up)).

The Court finds that, at this juncture, Dollar Tree has not met its burden to show that Plaintiffs are bound by the T&C or the forum-selection clause therein. In so finding, the Court concludes as a matter of law [2] that the hyperlinks at the bottom of the Dollar Tree website are insufficient to provide constructive notice to *these* Plaintiffs of their terms. However, the Court does not decide the factual question of whether Plaintiffs (Named Plaintiffs or potential class members) received *actual* notice of the T&C. As to actual notice, the Court merely decides that Dollar Tree has not met its burden on the motion to transfer.

**2. The Transfer Factors are Neutral or Tip Slightly in Plaintiffs' Favor**

Accordingly, the Court proceeds to the ordinary evaluation of the convenience and fairness factors under Section 1404(a). Pursuant to Section 1404(a), courts consider: "the convenience of the parties and witnesses [and] the interest of justice." 28 U.S.C. § 1404(a). As the Ninth Circuit has explained, in doing so, courts may consider:

> ***7** (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000). "Consistent with the above, courts in this district have articulated additional factors such as [(9)] feasibility of consolidation with other claims, [(10)] local interest in the controversy, and [(11)] relative court congestion." *Crittendon v. Muldrow*, No. 22-CV-09153-RS, 2025 WL 35046, at *2 (N.D. Cal. Jan. 6, 2025). "No single factor is dispositive, and a district court has broad discretion to adjudicate motions for transfer on a case-by-case basis." *Id.* (citing, *inter alia, Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979)).

**a. Convenience of the Parties is Neutral**

Dollar Tree argues that its headquarters are located in the Eastern District of Virginia and that its current and former employees would find testifying in that district more convenient. Dkt. 17 at 29-30. Meanwhile, Plaintiffs argue that Named Plaintiff Walsh resides in this District, and that the other Named Plaintiffs would find travel to this District more convenient than to Virginia. *See* Dkt. 35 at 18-19. "Even where a corporate defendant is correct in claiming that it will provide more witnesses and those witnesses will provide the most relevant testimony," as Dollar Tree claims here, "corporations are better-equipped than individuals to absorb increased litigation costs." *Olosoni v. HRB Tax Grp., Inc.*, No. 19-cv-03610-SK, 2019 WL 7576681, at *4 (N.D. Cal. Nov.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

27, 2019) (cleaned up). On the whole, the Court finds that transfer "would merely shift rather than eliminate the inconvenience" to the Parties, and thus this factor is neutral. *Id.*

**b. Convenience of non-Party Witnesses is Neutral**

"[T]he convenience of nonparty witnesses might present a more compelling case for transfer[.]" *Id.* The Parties have identified the following non-parties as potentially relevant to this litigation: OneTrust, a company headquartered in Atlanta, Georgia who provides technology for the Cookie Banner, (Dkt. 19-1, ¶¶ 12-13); various third-party companies who place cookies and collect data, including Brigade Capital Management, Macellum Capital Management, Google LLC, Meta Platforms, Inc., Microsoft Corporation, Epsilon Data Management, LLC, Pinterest, Inc. and BlueConic, Inc., (Dkt. 35 at 20; Hrg. Tr. at 19:10-18; Dkt. 41-1 (Plaintiffs' Initial Disclosures)); and the former employees of Dollar Tree, (Dkt. 17 at 29-30; Dkt. 19-1, ¶ 11).

According to Plaintiffs' representation, some third-parties are located in this District (Brigade Capital Management, Macellum Capital Management, Google LLC, Meta Platforms, Inc., Epsilon Data Management, LLC, Pinterest, Inc. and BlueConic, Inc.). *See* Hrg. Tr. at 19:19-22. Others are located in other districts (Microsoft in the Western District of Washington and OneTrust in the Northern District of Georgia), and Dollar Tree's represents on information and belief that its former employees are located in Virginia. Dkt. 19-1, ¶ 11.

Dollar Tree's representation is too thin to carry the day. *See* *Visier, Inc. v. iCIMS, Inc.*, No. 24-cv-07544-SVK, 2025 WL 589036, at *3 (N.D. Cal. Feb. 24, 2025) ("When establishing inconvenience to witnesses, the moving party must name the witnesses, state their location, and explain their testimony and its relevance."). Yet, Plaintiffs' third parties are all large corporations, expected to provide mostly electronic discovery. *See* Hrg. Tr. at 20:10-22. To the extent that Plaintiffs seek to depose individuals, the Court can fashion remedies in setting the location of the deposition to reduce the inconvenience to individuals. *See* *Olosoni*, 2019 WL 7576681, at *4. In sum, this factor, too, is neutral.

**c. Ease of Access to Evidence is Neutral**

***8** In a similar vein, given "the electronic nature of most corporate files in the current age," and particularly in light of the fact that the claims at issue relate to the structure of an online website, "relevant information will likely be equally easy to produce in either district." *Id.* (action involving a consumer class action related to an online advertising campaign). Accordingly, this factor is also neutral.

**d. Plaintiffs' Choice of Forum Weighs Somewhat Against Transfer**

"Ordinarily, the defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Visier*, 2025 WL 589036, at *4. "Though a plaintiff's choice of forum may be given less weight in a scenario where plaintiffs' choice of forum is largely fortuitous, such as in nationwide class actions, ... [it] is not purely fortuitous when a plaintiff resides in the forum state and alleges that the conduct underlying her claims occurred in the forum state and violated the forum state's laws." *Olosoni*, 2019 WL 7576681, at *4. Dollar Tree contends that, in this case, Plaintiffs' choice should be afforded little weight because "the crux of the present case lies not in California but in the Eastern District of Virginia," only one of the Named Plaintiffs resides in this District and this District has "minimal interest in the parties or subject matter." Dkt. 17 at 25-27. The Court is only persuaded in part.

First, where "operative facts" occurred is mixed. Virginia is the relevant locale for Dollar Tree's decision-making and representations. However, California is also a relevant locale, as Plaintiffs were allegedly tracked and advertised to by (some) of the third parties (noted in Section III.A.2.b.) in this District. *See* *Olosoni*, 2019 WL 7576681, at *4 (affording "great weight

to Plaintiff's choice of forum" where they "allege that they were harmed by advertising directed to this District."). Second, when the residency of named Plaintiffs is split, the Court agrees that "the degree of deference granted to Plaintiffs' choice of forum must be reduced accordingly," but it is not eliminated. *E.g., Hope v. Lunarlandowner.com, Inc.*, No. 2:20-CV-01783-TLN (DB), 2022 WL 597579, at *4 (E.D. Cal. Feb. 28, 2022) (weighing this factor "slightly against transfer."). Third, Dollar Tree's argument as to this District's interest in "the parties and the subject matter" depends upon the first two arguments; this District thus has some interest in the subject matter and some interest in the parties. Thus, the Court finds this factor weighs somewhat, but not "greatly," against transfer.

**e. This Court is More Familiar with the Governing Law**

Plaintiffs' causes of action are seven torts based in California common law and the two CIPA claims. Dollar Tree argues that there is "nothing particularly novel" about the privacy case here and that "Virginia has its own wiretapping statute [and] privacy statutes [that are] very similar," but also acknowledges that this Court "would be more familiar" with the governing law. Hrg. Tr. at 7:24-8:14. Dollar Tree also argues that "where, as here, a plaintiff asserts common law claims on behalf of a nationwide class, the court would likely be required to apply the law of numerous states," such that the familiarity interest is diminished. Dkt. 40 at 20.

Federal courts are indeed fully capable of construing the laws of jurisdictions outside their home state, and the Eastern District of Virginia "is presumably capable of applying California law;" nonetheless, "it is self-evident that this Court is more familiar with that law." *Visier*, 2025 WL 589036, at *4 (N.D. Cal. Feb. 24, 2025).

***9** Moreover, as Plaintiffs represented at the hearing: "This is a California case, a California class with California laws." Hrg. Tr. at 13:4-13. The Complaint's language is a somewhat ambiguous as to the scope of the class, alleging that it consists of "[a]ll persons who browsed either of the Websites in the State of California after clicking the "Reject Advertising Cookies" button in the popup cookies consent banner...." Compl., ¶ 100. However, although Dollar Tree argued that this would include non-residents who browsed Dollar Tree's websites while "transiting through California," (Hrg. Tr. at 30:5-14), Plaintiffs are masters of their complaint and, as the Court noted, it is not an unfair reading to suggest that the class is limited to California citizens. The Court will accept Plaintiffs' representation on this matter.

Thus, on the whole, this factor weighs slightly against transfer.

**f. Local Interest in the Controversy is Neutral**

Two local interests are at odds in this case: Virginia certainly has "a local interest ... in deciding matters pertaining to businesses that are headquartered in the state." *See Lenk v. Semiconductor Component Indus., LLC*, No. 20-cv-08099-EJD, 2021 WL 3616769, at *4 (N.D. Cal. Aug. 16, 2021). "On the other hand, this District has an interest in protecting citizens of California from potential violations of California law." *Olosoni*, 2019 WL 7576681, at *5. Accepting Plaintiffs' representation, as explained in Section III.A.2.g., above, that the alleged class here is limited to California consumers, these interests are in equipoise. "Courts considering a similar split of interests between fora have concluded that this factor is neutral." *Olosoni*, 2019 WL 7576681, at *5 (collecting cases). This factor is neutral.

**g. Relative Court Congestion Weighs Slightly in Favor of Transfer**

Finally, Dollar Tree cited statistics as to the relative court congestion between this District and the Eastern District of Virginia. *See* Dkt. 17 at 21-22. "It is beyond dispute that the docket of this Court is heavily congested." *Summa Res. Holdings LLC v. Carbon Energy Ltd.*, 2016 WL 2593868, at *7 (N.D. Cal. May 5, 2016). But while Dollar Tree argues that this District is "one of

the busiest courts in the nation," many of our sister Districts are still quite busy. *See U.S. District Courts – Combined Civil and Criminal Federal Court Management Statistics* (Dec. 31, 2024), United States Courts (*available at* https://www.uscourts.gov/sites/default/files/2025-02/fcms_na_distprofile1231.2024.pdf) (last visited September 25, 2025) (*e.g.*, this District is #12 across the U.S. in total actions filed per judge; the Eastern District of Virginia is #39). Overall, while the Eastern District of Virginia is less congested than this Court, the difference is not so stark that this factor is overriding. Accordingly, this factor weighs slightly in favor of transfer.

* * *

In sum, the Court finds that most factors are neutral. *See, supra*, §§ III.A.2.a-c., e., g. Relative court congestion weighs slightly in favor of transfer, while familiarity with the governing law weighs slightly against it. *See, supra*, §§ III.A.2.f., h. Plaintiffs' choice of forum weighs somewhat, if not greatly, against transfer, and it tips the balance. *See, supra*, § III.A.2.d. Moreover, as the movant, Dollar Tree bears the burden of showing that transfer is appropriate. *See Mitek Sys., Inc. v. United Servs. Auto. Ass'n*, 2020 WL 1922635, at *4, *aff'd*, 34 F.4th 1334. Accordingly, Dollar Tree's motion to transfer is **DENIED without prejudice**. [3]

### B. Dollar Tree's Motion to Dismiss is Granted in Part and Denied in Part

***10** Dollar Tree moves to dismiss on three grounds. First, Dollar Tree argues that Plaintiffs lack Article III standing because they fail to allege a concrete injury in fact. Dkt. 18 at 2, 21-23. Second, it argues that two of the Named Plaintiffs do not reside in this District and that venue is thus improper. *Id.* at 2, 23-26. Finally, it argues that Plaintiffs fail to state any plausible claim for relief. *Id.* at 2-3, 26-35. The Court addresses each argument in turn.

#### 1. Plaintiffs Have Alleged an Injury in Fact via Loss of Privacy, Loss of the Benefit of the Bargain and Loss of Value of Devices

"Standing is a threshold matter central to [the court's] subject matter jurisdiction." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). "In a class action, standing is satisfied if at least one named plaintiff meets the requirements." *Id.* "Standing requires that (1) the plaintiff suffered an injury in fact, i.e., one that is sufficiently 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical,' (2) the injury is 'fairly traceable' to the challenged conduct, and (3) the injury is 'likely' to be 'redressed by a favorable decision.' " *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). Plaintiffs "bear[ ] the burden of establishing these elements." *Lujan*, 504 U.S. 555, 561 (1992). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly ... allege facts demonstrating' each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Here, Dollar Tree challenges only the first element.

At the center of this case, Plaintiffs allege that "[c]ontrary to their express rejection of cookies and tracking technologies on [Dollar Tree's] Websites, Defendant nonetheless caused cookies, including the Third Parties' cookies, to be sent to Plaintiffs [ ] browsers, stored on their devices, and transmitted to Third Parties along with user data." Compl., ¶ 3. Plaintiffs allege that their data was actually collected and transmitted and that Third Parties "analyze[d] and aggregate[d] this user data ... for their own purposes and financial gain." *Id.*, ¶¶ 3-5. For the Privacy and CIPA claims, Plaintiffs allege that they were injured by Dollar Tree's intrusions upon their private communications. *See, e.g.*, Compl., ¶¶ 110-17, ¶¶ 124-27, 147-48. For the fraud claim and contract claims, Plaintiffs allege the substantive loss of privacy as well as "harm in the form of diminution of the value of their private and personally identifiable information and communications," pecuniary gain for Dollar Tree, and loss of "the benefit of the bargain" with Dollar Tree. *E.g., id.*, ¶ 166-67, 176-77, 189, 200. Finally, for the trespass claim only, Plaintiffs allege "reduction of storage, disk space, and performance of Plaintiffs' ... computing devices" and related loss of value. *Id.*, ¶ 205-06. In its motion, Dollar Tree contends that each of these alleged harms—loss of privacy, loss of value of communications, loss of value of devices, and "injury in contract"—is insufficient. Dkt. 18 at 22-23. Most of Dollar Tree's arguments are unpersuasive.

As to loss of privacy, as a general matter, "various intangible harms can ... be concrete. Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Gabrielli v. Motorola Mobility LLC*, No. 24-CV-09533-JST, 2025 WL 1939957, at *6 (N.D. Cal. July 14, 2025) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). Dollar Tree challenges that the data here is non-sensitive data (as opposed to, *e.g.*, healthcare data) and has not traditionally supported Article III standing. Dkt. 18 at 22. This Court disagrees. An individual's "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data," (Compl., ¶ 30) can be quite sensitive; loss in the privacy of such data supports Article III standing. *Gabrielli v. Motorola*, 2025 WL 1939957, at *6 (Motorola's use of cookies and other tracking technologies to collect *exactly* this kind of data was "sufficient to establish a concrete injury to [a plaintiff's] right to privacy and confer standing."). [4]

***11** As to the alleged loss of the benefit of the bargain, Dollar Tree focuses on the *merits* of the claims, arguing that no valid contract was formed because Plaintiffs do not allege consideration, but Dollar Tree does not cite a single case where such an inquiry led to denial of standing. Dkt. 18 at 23. To the contrary, benefit of the bargain losses constitute a sufficiently "concrete and particularized" injury which satisfies the requirements of Article III. *See, e.g., Svenson v. Google Inc.*, No. 13-cv-04080-BLF, 2016 WL 8943301, at *11 (N.D. Cal. Dec. 21, 2016) ("Lost benefit of the bargain is a viable theory of injury for breach of contract and unfair competition.").

As to loss of value of communications, Dollar Tree argues that Plaintiffs lack standing because there is no allegation that they actually intended to sell their information. Dkt. 18 at 22. Plaintiffs respond that their willingness to sell is only one potential measure of value, and that this Court should consider instead what Plaintiffs would pay to keep their data private or what third parties would pay to acquire it. Dkt. 37 at 14. Dollar Tree replies that, even on such theories, Plaintiffs have not sufficiently alleged a loss in value of *their specific* data. *See* Dkt. 42 at 11-12 (citing *Hubbard v. Google LLC*, No. 19-cv-07016-SVK, 2024 WL 3302066, at *9 (N.D. Cal. July 1, 2024)). Here, the Court agrees with Dollar Tree. While Plaintiffs' theory may be generally acceptable, there are no allegations as to whether the Named Plaintiffs would either sell their data *or* pay anything to protect their data. *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 614-15 (9th Cir. 2021) ("Although the studies cited by Pruchnicki establish that personal information may have value in general, Pruchnicki failed to adequately allege that *her* personal information actually lost value." (Emphasis in original)); *cf. also LaCourt v. Specific Media, Inc.*, No. 10-cv-01256-GW, 2011 WL 1661532, at *5 (C.D. Cal. Apr. 28, 2011) (in rejecting allegations of injury for purposes of Article III-standing analysis, explaining that "Plaintiffs do not explain how they were 'deprived' of the economic value of their personal information simply because their unspecified personal information was purportedly collected by a third party."). [5]

Finally, as to loss of value of their devices due to lost storage space and performance, the Court agrees with Plaintiffs. While Dollar Tree contends that cookies are harmless, (*see* Dkt. 18 at 23 (citing an online blog's explanation of cookies), Plaintiffs allege that harm occurred, (*see* Compl., ¶¶ 205-06). Unless Plaintiffs' allegation is so farfetched as to be implausible, the Court must take it as true. Plaintiffs' allegation is not so implausible. *See, e.g., In re Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d 650, 658 (N.D. Cal. 2024) (cookies that are not temporary "stay[ ] until [they] is discovered or removed[ ] and create[ ] a measurable impact on the functioning of the systems' memory sufficient to satisfy damage for the trespass."). Thus, at the pleading stage, Plaintiffs have alleged sufficient injury to justify standing for their trespass claim.

Accordingly, because each of Plaintiffs' claims is underpinned by at least one injury in fact, Dollar Tree's motion to dismiss for lack of Article III standing is **DENIED**.

### 2. Venue is Improper as to Plaintiffs Yosha and Maldonado, But Each of Them May Remain a Potential Class Member

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

***12** Under Section 1391(b), venue is proper, in relevant part, in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred...." 28 U.S.C. § 1391(b)(2).[6] Dollar Tree does not challenge that venue as to Plaintiff Walsh is proper in this district. Dkt. 18 at 23-26; Dkt. 42 at 12-14. Rather, Dollar Tree challenges that venue is not proper as to the claims of Plaintiffs Yosha and Maldonado, who reside in the Central and Southern Districts of California, respectively. *Id.*; *see* Compl., ¶¶ 7-8. Plaintiffs allege that they were harmed when they visited Dollar Tree's website to browse information about their products and interacted with the Cookie Banner. *See* Compl., ¶¶ 76, 84, 92. The fundamental issue is thus: Do Walsh's connections to this District satisfy the venue burden for Yosha and Maldonado, as Plaintiffs argue, (Dkt. 37 at 17), or must Yosha and Maldonado "*independently* satisfy § 1391(b)'s requirements," as Dollar Tree urges, (Dkt. 18 at 23 (emphasis by Dollar Tree))?

The Court agrees with Dollar Tree. It is well-established that "in most instances, the rule in a proposed class action is that each named plaintiff must independently establish venue." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1191 (N.D. Cal. 2017), *aff'd*, 905 F.3d 1137 (9th Cir. 2018) (venue ruling not challenged on appeal); *Sanchez Mora v. U.S. Customs & Border Prot.*, No. 3:24-CV-02430-TLT, 2024 WL 5378335, at *6 (N.D. Cal. Nov. 4, 2024) (collecting cases). The Court also agrees with Dollar Tree that "a substantial part of the events or omissions giving rise to" Yosha and Maldonado's claims did not occur in this District: While Plaintiff Walsh browsed Dollar Tree's website here, the other Named Plaintiffs did not. *See* Dkt. 18 at 15.

Plaintiffs do not contest the basic rule but raise three arguments for why venue should nonetheless lie in this District, none of which is persuasive.

First, they argue that this Court has specific jurisdiction over Dollar Tree, and thus venue under 28 U.S.C. § 1391(b)(1) irrespective of subsection (b)(2), because of Dollar Tree's purposeful availment of the markets and laws of California. *See* Dkt. 37 at 16. Yet, Plaintiffs fail to make any argument that *Yosha and Maldonado*'s claims arise out of or relate to Dollar Tree's conduct in *this* District, despite acknowledging that this element is required. *Id.* at 16-17. Accordingly, neither Yosha nor Maldonado can *independently* (*i.e.*, without relying on Walsh's claims) satisfy venue under Section 1391(b)(1) or (b)(2).

Second, relying on *Badvipour v. Blinken*, No. 24-cv-01458-DOC (KES), 2024 WL 5682032, at *6 (C.D. Cal. Dec. 30, 2024), Plaintiffs argue that there is an exception allowing multi-plaintiff cases to proceed once one plaintiff has shown venue is proper. Dkt. 37 at 17. However, that case and the rule it recites deal with joinder in a multi-plaintiff case that is **not** a class action. *See Badvipour*, 2024 WL 5682032, at *1-*2, *5-*6. The situation in non-class action multi-plaintiff cases is understandably different, as "requiring all plaintiffs in a multi-plaintiff suit to independently meet venue requirements would lead to unnecessary litigation." *Id.* (explaining the Ninth Circuit's approval of *Exxon Corp. v. Fed. Trade Commission*, 588 F.2d 895 (3rd Cir. 1978)). In a class action there is no such risk because a single plaintiff may bring claims on behalf of the entire class. Moreover, if applied to class actions, the "exception" advocated by Plaintiffs would swallow the rule. Accordingly, it cannot apply here.

***13** Third, Plaintiffs urge that, under the pendent venue doctrine, this Court may nonetheless adjudicate Yosha and Maldonado's claims if "doing so is justified by principles of judicial economy, convenience, avoidance of piecemeal litigation, and fairness to the litigants." Dkt. 37 at 17 (quoting *Beyard v. Pentagon Fed. Credit Union*, No. 1:21-cv-01063-KJM-SAB, 2025 WL 418706, at *5 (E.D. Cal. Feb. 6, 2025)). The Court disagrees that judicial economy, convenience, for fairness support the invocation of pendent venue here; dismissal of Yosha and Maldonado would not be inefficient or unfair where Plaintiff Walsh remains to represent the class and bring class-wide claims. *Cf. Saravia*, 280 F. Supp. 3d 1168 at 1191-93 and n.11 (retaining jurisdiction over one plaintiff while dismissing two other plaintiffs and "noting that, even though J.G. and F.E.'s individual claims were not properly brought in this forum, as members of the proposed class, they could still benefit from relief granted on a class-wide basis [under A.H.'s claims].").

Accordingly, the Court **GRANTS** Dollar Tree's motion to dismiss Plaintiffs Yosha and Maldonado as named plaintiffs for improper venue. However, as already noted, as members of the proposed class, Yosha and Maldonado can still benefit from relief granted on a class-wide basis based on Walsh's claims in this District; accordingly, the Court **DENIES** Dollar Tree's request to sever their claims and transfer Yosha and Maldonado alone to the Eastern District of Virginia.[7] *See Saravia*, 280

F. Supp. 3d 1168 at 1191 n.11. Additionally, on the face of the Complaint, it does not appear that Yosha or Maldonado could amend to support venue in this District. Accordingly, their dismissal as named plaintiffs is **without leave to amend**.

### 3. Dollar Tree's Rule 12(b)(6) Challenges are Granted in Part

Dollar Tree challenges all of Plaintiffs' [8] claims on 12(b)(6) grounds. The Court treats certain claims together and proceeds through each of Dollar Tree's challenges in turn.

#### a. Plaintiffs' Privacy Claims

Plaintiffs' privacy claims are for (Count I) invasion of privacy at common law, including under the California Constitution, and for (Count II) intrusion upon seclusion. Compl. at 40, 43. The Parties agree that the privacy claims are analyzed together and require Plaintiffs to show that Dollar Tree "(1) intentionally intruded into a ... matter to as to which Plaintiffs have a reasonable expectation of privacy[ ] (2) ... in a manner highly offensive to a reasonable person." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (cleaned up) (cited by both Parties (*compare* Dkt. 18 at 26-27 *with* Dkt. 37 at 17-18)) (quoting *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009)). "Because of the similarity of the tests, courts consider the claims together and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *Id.* Here, Dollar Tree challenges both Plaintiffs' reasonable expectation of privacy in "browsing history, visit history, Website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data" and whether the tracking and sharing of such information is highly offensive. Dkt. 18 at 27-28.

##### i. Plaintiffs Have Sufficiently Alleged a Reasonable Expectation of Privacy

***14** "A 'reasonable' expectation of privacy is an objective entitlement founded on broadly based and widely accepted community norms. Whether an expectation of privacy is 'reasonable' depends on the circumstances of each case." *Thomas v. Papa Johns Int'l, Inc.*, No. 22-CV-2012-DMS (MSB), 2024 WL 2060140, at *2 (S.D. Cal. May 8, 2024), *aff'd*, No. 24-3557, 2025 WL 1704437 (9th Cir. June 18, 2025). Dollar Tree argues that because the type of tracking information at issue here "is routinely collected by websites across the internet," Plaintiffs cannot have a reasonable expectation of privacy. Dkt. 18 at 27-28. In response, Plaintiffs do not take issue with this as a general assertion, but they argue that "there is no blanket rule that 'there can never be a reasonable expectation of privacy over internet activity" and that Dollar Tree created such an expectation in this case. Dkt. 37 at 20-21 (quoting *Papa Johns*, 2024 WL 2060140, at *2). Both Parties cite multiple examples where courts in this Circuit and District have found or have declined to find a reasonable expectation of privacy. Having considered Plaintiffs allegations in light of widely accepted community norms, [9] the Court agrees with Plaintiffs.

"Generally, the internet is not a place where users have a reasonable expectation of privacy." *Papa Johns*, 2024 WL 2060140, at *1 (collecting cases). However, as Plaintiffs persuasively argue, Dollar Tree ***itself*** creates a reasonable expectation of privacy when it presents customers with a Cookie Banner permitting them to "Reject Advertising Cookies." Dkt. 37 at 20-21; *see, e.g.*, Compl., ¶¶ 1-2, 5, 26-31. "Courts have held that plaintiffs have a reasonable expectation of privacy where data is collected without their consent." *In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1156 (N.D. Cal. 2021) (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 603) (finding that "it was reasonable for a user to believe that disabling Location History prevented Google from collecting and storing location data."). This case is of a like kind; having (allegedly) given users the option to "Reject Advertising Cookies" and so opt out of having their data tracked, Dollar Tree cannot say that the users do not have a reasonable expectation of privacy in such data.

### ii. Plaintiffs Have Sufficiently Alleged Highly Offensive Conduct

"In order to maintain a California common law privacy action, [p]laintiffs must show more than an intrusion upon reasonable privacy expectations. Actionable invasions of privacy also must be highly offensive to a reasonable person, and sufficiently serious and unwarranted so as to constitute an egregious breach of the social norms." *In re Google Location Hist. Litig.*, 514 F. Supp. 3d at 1157 (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606)). Dollar Tree's primary argument is that none of the information alleged by Plaintiffs to be at issue is the type whose disclosure is highly offensive. Dkt. 18 at 27; Dkt. 42 at 14-15. While the type of information at issue is a factor, courts in this District "have held that deceit can be a kind of 'plus' factor that is significant in making a privacy intrusion especially offensive." *In re Google Location Hist. Litig.*, 514 F. Supp. 3d at 1157 (cleaned up).

As to the types of data at issue, the disclosure of some types of data would clearly be more offensive than others. While Dollar Tree focuses on distinguishing the data at issue from sensitive health or financial data (*see* Dkt. 18 at 27; Dkt. 42 at 14-15), the Court again notes that some of the data at issue is or may be highly sensitive, especially "browsing history ... user input data, ... and/or geolocation data," (Compl., ¶ 30). While tracking and disclosure of such information is not necessarily highly offensive, considering the "plus factor" of alleged deceit on the part of Dollar Tree in collecting such information via the Cookie Banner, the Court concludes that Plaintiffs have adequately alleged highly offensive conduct. *In re Google Location Hist. Litig.*, 514 F. Supp. 3d at 1157-58 (holding that deceit plus collection of location data was highly offensive).

***15** Accordingly, because Plaintiffs have sufficiently alleged highly offensive conduct in the collection and disclosure of their private information and have sufficiently alleged a reasonable expectation of privacy, the Court **DENIES** Dollar Tree's motion.

### b. Plaintiffs' CIPA Claims

Plaintiffs' CIPA claims allege violations of Cal. Penal Code § 631 (wiretapping) (Count III) and Cal. Penal Code § 638.51 (pen register) (Count IV). Compl. at 44, 49. The RLC as *amicus* explains the common history of both sections (both enacted as part of CIPA in the 1960s). *See, generally*, Dkt. 29. However, Dollar Tree challenges Plaintiffs' assertion of each count for different reasons and the statutes include distinct requirements, (*see* Dkt. 18 at 28-30), so the Court addresses each of Dollar Tree's arguments separately below.

### i. Plaintiffs Fail to State a Claim for Wiretapping Pursuant to Cal. Penal Code § 631

Cal. Penal Code § 631(a) provides, in relevant part, that:

> Any person who, by means of any machine, instrument, or contrivance, or in any other manner,
>
> [(1)] intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or
>
> [(2)] who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or
>
> [(3)] who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

> [(4)] who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section,
>
> is punishable [under this Section].

(subsections added and formatted for clarity). Dollar Tree argues that Plaintiffs have failed to plausibly: (a) allege that "the 'contents' of any of their alleged communications were intercepted;" (b) allege "that Dollar Tree itself intercepted their communications;" (c) explain how Dollar Tree could be held liable for wiretapping where it "is the intended recipient of any alleged communications;" and (d) allege the prerequisites for any "aiding and abetting under the fourth clause of CIPA § 631(a)." Dkt. 18 at 28-29.

In their Opposition, Plaintiffs disavow any reliance on direct liability by Dollar Tree: "Plaintiffs allege that Defendant is liable under the fourth prong of § 631(a) which merely requires that Defendant aid the Third Parties. ... Plaintiffs are not arguing that Defendant is 'directly liable for wiretapping.' " Dkt. 37 at 23. Thus, Dollar Tree's second and third arguments are moot.

However, Section 631(a) requires Dollar Tree to have aided at least one of "the acts or things mentioned above." Cal. Penal Code § 631(a). Accordingly, Plaintiffs must allege that Dollar Tree aided third parties to either (1) make an intentional tap or unauthorized connection, (2) "read[ ], or attempt[ ] to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable..." or (3) "use[ ], or attempt[ ] to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained." Dollar Tree's first and fourth arguments are thus not moot.

***16** As to the "contents" requirement, Plaintiffs clearly allege that certain types of data ("browsing history, visit history...," etc.) were transmitted to third parties. Compl., ¶¶ 141-44. Plaintiffs further allege that a "user's affirmative decisions, actions, choices, preferences, and activities" constitute the contents of their communications with Dollar Tree. *Id.*, ¶ 143. Dollar Tree challenges that "mere interactions with a website" do not constitute contents and are "non-actionable 'record information.' " Dkt. 18 at 28. Indeed,

> Courts analyzing CIPA claims apply the same definitions for the federal Wiretap Act where appropriate. The Ninth Circuit has held that the "contents" of an online communication under federal wiretap law "refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication."

*Mikulsky v. Bloomingdale's LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) (citing *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014)); *see also* *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 n.9 (N.D. Cal. 2023) (explaining that "webpage titles, webpage keywords, the date and times of website visits, IP addresses, page visits, purchase intent signals, and add-to-cart actions" were mere "record information") (citing same)). Plaintiffs acknowledge this distinction but argue that they fall on the correct side of the line because they have alleged collection and tracking of "user input data" which includes "search queries, the user's name, age, gender, email address, location, and/or payment information." Dkt. 37 at 22 (citing same). The Court agrees that "data entered into forms" and "URLs ... include[ing] elements ... such as search terms which would reveal the content a user searched for" and "full-string detailed URLs that might contain folder and file names" may be actionable "contents." *Katz-Lacabe*, 668 F. Supp. 3d at 944-45 n.9. However, the Court also finds that Plaintiffs' allegations as to "user input data"— the only category of data at issue that may constitute actionable contents—are insufficient because Plaintiffs only allege that such data are among the types of data tracked by cookies. Compl., ¶¶ 20, 79-82. Plaintiffs do not allege that Walsh actually generated any user input data or that such data was read, attempted to be read, learned, or communicated in any way by or to third parties.

Beyond addressing the contents requirement, Dollar Tree vaguely challenges Plaintiffs' failure to sufficiently plead an underlying violation of any one of prongs (1), (2) or (3). Dkt. 18 at 29. In response to Dollar Tree's challenge, Plaintiffs concisely and clearly lay out the specific factual allegations they contend support "an intentional tap or unauthorized connection ... "with

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

any line, cable or instrument," lack of "consent of all parties," the "read[ing] or learn[ing of] the contents of any communication while in transit" and the "use[ of] any information so obtained." Dkt. 37 at 23 (citing paragraphs by issue). Dollar Tree's reply again vaguely and without elaboration contests that these factual recitations are sufficient. Dkt. 42 at 17. The Court finds that Plaintiffs' allegations are not mere "labels and conclusions" but are well-pleaded factual allegations and are sufficient—with the exception of the "contents" issue—to state a claim as pleaded. [10]

***17** Finally, Dollar Tree argues that Plaintiffs have failed meet the intent requirement of Section 631(a)'s aiding and abetting prong. The Parties disagree as to the level of intent required under the statute. Dollar Tree argues that Section 631(a) requires acting with the "knowledge of the conduct that will violate the statute and a purpose of aiding, agreeing with, or employing the third party to commit those acts," (Dkt. 18 at 29 (citing *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942 (N.D. Cal. 2024)), while Plaintiffs argue that a defendant need only have "intended the act which enabled the privacy violation" "regardless of whether [it] specifically intended to enable unlawful conduct," (Dkt. 37 at 24 (citing *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 954 (N.D. Cal. 2023)). [11] The Court agrees with the court in *YETI Coolers* based on statute's use of the phrase "aids, agrees with, employs, or conspires ... to unlawfully do, or permit, or cause to be done any of the acts [above]." *See YETI Coolers*, 754 F. Supp. 3d at 942. The alternative would suggest that a defendant who permitted a third party to place cookies and track information **only** for consenting consumers might be held liable if a third party, without the defendant's knowledge, also placed such cookies and tracked information for unwilling consumers. "Such a defendant has not aided, agreed with, or employed the third party *to* perform acts that violate the wiretapping statute." *Id.*

Here, as in *James v. Disney*, the Court can reasonably infer from Plaintiffs' allegations that Dollar Tree entered into agreements with the identified third parties to place cookies on the devices of consumers who visit Dollar Tree's website. *See* Compl., ¶¶ 2, 19, 23, 25; *see generally, id.*, ¶¶ 38-70; *cf.* 701 F. Supp. 3d at 954. Moreover, *YETI Coolers* dealt with a third-party payment processor and fraud prevention service such that any marketing might be unknown and unintended to the defendant. In contrast, here it can be plausibly inferred that the reason Dollar Tree "caused cookies, including the Third Parties' cookies, to be sent to Plaintiffs' and other visitors' browsers, stored on their devices, and transmitted to the Third Parties along with user data" *even for customers who opt out* of such tracking is that Dollar Tree intends to do so. At the pleading stage, the Court must draw all reasonable inferences in favor of the Plaintiffs. *Manzarek*, 519 F.3d at 1031. Accordingly, while Dollar Tree may ultimately show that it did not intend third-party cookies to be placed in cases where consumers opted to "Reject Advertising Cookies," at this stage, Plaintiffs' allegations are sufficient.

Accordingly, the Court **GRANTS** Dollar Tree's motion to dismiss the wiretapping CIPA claim on the ground that Plaintiffs have not sufficiently alleged that the "contents" of Plaintiff Walsh's communications, as opposed to mere record information, were read or learned or that "information so obtained" was used or communicated. Plaintiffs have **leave to amend**.

### ii. Plaintiffs Have Sufficiently Alleged Unlawful Use of a Pen Register Pursuant to Cal. Penal Code § 638.51

Cal. Penal Code § 638.51 generally prohibits a person from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order" or obtaining consent of the user. Cal. Penal Code §§ 638.51(a), (b)(5). A "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). Dollar Tree's main argument here is that cookies and their related code are not pen registers because the term is one that is "inextricably linked to telephone surveillance" and thus limited to telephone-related technologies. Dkt. 18 at 30.

***18** This is a relatively new issue. Until July 27, 2023, it appears that "no court ha[d] interpreted this provision of CIPA." *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023). Beginning with *Greenley*, three district courts have examined the question and concluded that, because "the California Legislature's chosen definition of pen register [ ] is specific as to the type of data collected but vague and inclusive as to the form of the collection tool (*i.e.* 'device or process')," the process of using software to places cookies to track users online may constitute a pen register. *Mirmalek v. Los Angeles Times Commc'ns*

*LLC*, No. 24-cv-01797-CRB, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024); *Greenley*, 684 F. Supp. 3d at 1050; *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 929 (N.D. Cal. 2024). Dollar Tree has brought to this Court's attention one additional, recent California trial court decision declining to find the mere "process of collecting IP addresses" to be a pen register. *Casillas v. Transitions Optical, Inc.*, No. 23STCV30742, 2024 WL 4873370, at *4 (Cal. Super. Sep. 09, 2024). Despite first appearances, however, these decisions are not in conflict: As reasoned in *Greenley, Shah* and *Mirmalek*, a process, such as the placing of cookies, that collects IP addresses (or other routing, addressing, or signaling information) can be a pen register under the plain meaning of the statute, (*see* Cal. Penal Code § 638.50(b), first sentence), and as reasoned in *Casillas*, such a process may then be carved out where it is merely "used by a provider ... for billing, ... for communications services provided by such provider, ... or other similar purposes in the ordinary course of its business," (*see* Cal. Penal Code § 638.50(b), second sentence). *Compare Greenley*, 684 F. Supp. 3d at 1050 (finding the process of placing third-party cookies could constitute a pen register); *Shah*, 754 F. Supp. 3d at 929 (same); *and Mirmalek*, 2024 WL 5102709, at *3 (same) *with Casillas*, 2024 WL 4873370, at *4 (Cal. Super. Sep. 09, 2024) (finding that first-party cookies which only "collected Plaintiff's IP address," as "occurs when *any* user accesses *any* website," were subject to the carveout (emphasis added)). The Complaint implicates not only "Essential Cookies," which may be subject to the carveout similar to the first-party, IP-address-only cookies in *Casillas*, but also "Analytics Cookies" and "Advertising Cookies," which are not used "for billing," "communication services," or similar purposes. Compl., ¶ 25. Such cookies constitute pen registers under the statute.

Dollar Tree's counterarguments are unpersuasive.

First, Dollar Tree and the RLC argue that the legislative history supports that the California Legislature originally enacted the statute with telephonic communications in mind. *See* Dkt. 18 at 30; *see, generally*, Dkt. 29. To the contrary, however, "[g]iving effect to CIPA's broad statutory language is consistent with the California Legislature's stated intent to protect privacy interests, as well as the California courts' approach when applying statutes to new technologies." *Shah v. Fandom*, 754 F. Supp. 3d at 930. Moreover, "the Court cannot ignore the expansive language in the California Legislature's chosen definition." *Greenley*, 684 F. Supp. 3d at 1050. Second, Dollar Tree argues that other sections of CIPA relating to pen registers assume a telephone line is at issue. *E.g.*, Cal. Penal Code § 638.52(d) (requiring that, in approving a pen register via a court order, a magistrate "shall specify all of the following: (1) The identity, if known, of the person to whom is leased or in whose name is listed the telephone line to which the pen register ... is to be attached."). However, this, too, is insufficient to override the clear definition in Section 38.50(b) and the Court agrees with the *Shah* court's opinion reconciling these sections. *Shah v. Fandom*, 754 F. Supp. 3d at 930. Finally, Dollar Tree contends that Plaintiffs' assertion of Section 638.51 is incompatible with their assertion of Section 631(a), because the latter requires "contents" while the former requires "routing, addressing, or signaling information" and expressly prohibits application to contents. Dkt. 18 at 30. But Plaintiffs' claims encompass "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data." Compl., ¶ 30. Some of these data may be contents, while others may not be. Plaintiffs are permitted to plead both causes of action and rely on different cookies— transmitting different data —to support each cause of action.

Accordingly, Dollar Tree's motion to dismiss the pen-register CIPA claim is **DENIED**.

### c. Plaintiffs' Contract Claims and Unjust Enrichment Claim

The Court next turns the contract claims (Counts VII and VIII) and to Dollar Tree's related argument as to Plaintiff's unjust enrichment claim (Count VI).

#### i. Plaintiffs Have Not Sufficiently Pleaded Actual Damages

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

***19** Claims for breach of contract or for breach of the implied covenant of good faith and fair dealing require allegation of actual damages. *Ruiz v. Gap, Inc.*, 380 F. App'x 689, 692 (9th Cir. 2010) ("Under California law, a breach of contract claim requires a showing of appreciable and actual damage." (quoting *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir.2000)); *Bennett v. Ohio Nat'l Life Assurance Corp.*, 92 Cal. App. 5th 723, 729 (2023) ("Both breach of contract and breach of the implied covenant of good faith and fair dealing, *i.e.*, bad faith, include a damages element."). [12] Dollar Tree argues that Plaintiffs have failed to sufficiently allege actual damages. Dkt. 18 at 32-33.

The Court agrees. Of the four injuries alleged by Plaintiffs (*see, supra*, § III.B.1. (loss of privacy, loss of value of communications, loss of value of devices, and loss of the benefit of the bargain)), only loss of the benefit of the bargain and loss of value of their private communications relate to the contract claims. *See* Dkt. 18 at 33; Dkt. 37 at 30. As to the former, Dollar Tree argues that because Plaintiffs do not allege they paid anything to browse the website, while they may be injured by Dollar Tree's breach, there are no damages flowing from a loss of the benefit of the bargain. *See* Dkt. 18 at 33. As to the latter, Dollar Tree argues that they do not plausibly allege actual damages via the diminution of value of Plaintiffs' private communications. *Id.*

Plaintiffs only counter that, even though they did not pay to use the websites, "being caused to surrender more data without consent supports a breach of contract claim." Dkt. 37 at 30. Plaintiffs rely on *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064 (N.D. Cal. 2023) and *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935 (N.D. Cal. 2022), but neither case is persuasive. *Doe v. Meta* did not undertake an analysis of actual damages, deciding only that Facebook's "limitation of liability clause" did not warrant dismissal and noting that restitution damages were pleaded. 690 F. Supp. 3d at 1084-85. Meanwhile, *In re Google RTB*, although acknowledging that actual damages were an element, does not reveal or discuss what the plaintiffs' damages claims were – presumably because the argument was not raised by the litigants. 606 F. Supp. 3d at 944. Here, as discussed in relation to Article III standing, while "Plaintiffs' theory [as to the loss of value of their personal communications] may be generally acceptable, there are no allegations as to whether [Plaintiff Walsh] would either sell their data *or* pay anything to protect their data." *Supra*, § III.B.1. In the absence of such allegations, Plaintiffs have not sufficiently alleged actual damages resulting from breach of the Privacy Policy.

Separately, Dollar Tree argues that the breach of the implied covenant of good faith and fair dealing should be dismissed as duplicative of Plaintiff's breach of contract claim. Dkt. 18 at 33. Under California law, such claims may be dismissed when they "do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (Cal. Ct. App. 1990). Both Parties agree that allegations of bad faith beyond violation of a contract term may support a claim for breach of the implied covenant, citing *Calhoun v. Google LLC*. 526 F. Supp. 3d 605, 634 (N.D. Cal. 2021) (wherein the court permitted the claim to move forward where there was an allegation that "Google violated the contract between the parties, but also that Google acted in bad faith, such as by circumventing cookie blockers."). Plaintiffs argue that they have alleged bad-faith behavior beyond mere breach of contract by placing cookies on Plaintiffs' devices and "tracking them despite their express rejection." Dkt. 37 at 30. Based on the Complaint in this case, the Court agrees with Plaintiffs: They allege that Dollar Tree violated its own Privacy Policy, but they *additionally* allege that Dollar Tree made false representations by leading them to believe that they could "Reject Advertising Cookies" with the Cookie Banner. Compl., ¶¶ 26-30.

***20** Accordingly, the Court **GRANTS** Dollar Tree's motion to dismiss these claims as lacking sufficient allegations of actual damages but will not dismiss Plaintiffs' breach of implied covenant claim as duplicative. Plaintiffs have **leave to amend**.

#### ii. Plaintiffs Permissibly Plead Unjust Enrichment in the Alternative

As to Plaintiffs' unjust enrichment claim (Count VI), Dollar Tree challenges that it is inconsistent with their allegation that the Privacy Policy is a contract and assertion of a breach of contract claim. Dkt. 18 at 33-34. Plaintiffs counter that they plead this claim only in the alternative. Dkt. 37 at 31.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

Rule 8 permits pleading in the alternative. Fed. R. Civ. P. 8(a)(3). However, "where the unjust enrichment claim relies upon the same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those legal causes of action." *Hubbard*, 2024 WL 3302066, at *6. In *Hubbard*, however, plaintiffs merely sought two different remedies (disgorgement of profits and economic injuries) arising from the same facts. *Id*. That is a key distinction from this case. Here, looking to the facts underpinning the unjust enrichment claim, Plaintiffs claim unjust enrichment "as a result of [Dollar Tree's] wrongful conduct" relating to its misrepresentations via the "Reject Advertising Cookies" option of the Cookie Banner, with no mention of the Privacy Policy. Compl., ¶ 172. Plaintiffs further explain that this claim is pleaded "separately" and "in the alternative[ ] to other claims, as without such claims Plaintiffs would have no adequate legal remedy." Compl., ¶ 182. In other words, drawing all reasonable inferences in Plaintiffs' favor at the pleading stage, they appear to allege that to the extent the Privacy Policy is not an enforceable contract, they are entitled to recover under a quasi-contract theory via the Cookie Banner. *See* Compl., ¶¶ 172, 182.

This is sufficient at the pleading stage to invoke the alternative pleading permissions of Rule 8. Accordingly, Dollar Tree's motion to dismiss this claim is **DENIED**.

### d. Plaintiffs Have Not Sufficiently Pleaded Damages for Their Common Law Fraud Claim

As to Plaintiffs' common law fraud, deceit and misrepresentation claim (Count V), Dollar Tree contends that Plaintiffs fail to satisfy the Rule 9(b) heightened pleading standard as well as the requirement to plead damages. Dkt. 18 at 31-32. Rule 9(b) requires that the elements of a claim for fraud be pleaded "with particularity," *i.e.*, a plaintiff must allege the "who, what, when, where, and how" of the alleged deceit. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009). The elements of a cause of action for fraud in California are: "(a) misrepresentation (false representation, concealment, or *nondisclosure*); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009).

The Court addresses the damages issue first. The Parties' arguments are broadly a re-statement of their damages arguments in other sections, with Dollar Tree principally relying on *Hubbard* and Plaintiffs seeking to distinguish it. Dkt. 18 at 32; Dkt. 37 at 28-29. For the reasons explained above, (*see, supra*, §§ III.B.1 (standing) and B.3.c. (contract claims)), the Court agrees with Dollar Tree and finds that Plaintiffs have not plausibly alleged that they would either sell their data or pay anything to protect their data.

***21** Turning to the Rule 9(b) challenge, Plaintiffs proffer the who, what, when, where and how in their Opposition, citing to portions of the Complaint. Dkt. 37 at 27-28 (citing numerous paragraphs of the Complaint). In addition to the basic facts, they have alleged with particularity customers' reliance on Dollar Tree's Cookie Banner's option to "Reject Advertising Cookies." *Id.* The remaining issue and the crux of the Parties' dispute is whether Plaintiffs have alleged intent (*i.e.*, intend to induce reliance) and knowledge of falsity with particularity. *See* Dkt. 18 at 31; Dkt. 42 at 19.

Here, Dollar Tree's argument misses the mark. "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Plaintiffs' general allegations that Dollar Tree intended for customers (such as Plaintiff Walsh) to rely on the ability to "Reject Advertising Cookies" and that they knew or should have known how their third-party cookie placement operated is sufficient. *See* Compl., ¶ 164; *Gabrielli v. Haleon US Inc.*, No. 25-cv-02555-WHO, 2025 WL 2494368, at *13 (N.D. Cal. Aug. 29, 2025) (explaining that "intent may be alleged generally" and permitting the plaintiff's fraud claim to proceed based on his general intent allegations).

Accordingly, the Court **GRANTS** Dollar Tree's motion to dismiss this claim as lacking sufficient allegations of actual damages but finds that it otherwise satisfies the Rule 9(b) pleading standard. Plaintiffs have **leave to amend**.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

### e. Plaintiffs Have Not Sufficiently Pleaded Damages for Trespass to Chattels Claim

Finally, Dollar Tree challenges Plaintiffs' trespass claim (Count IX) arguing that Plaintiffs have not plausibly alleged: (a) intent, (b) interference or (c) significant reduction in value. Dkt. 18 at 34-35.

"Under California law, trespass to chattels lies where an intentional interference with the possession of personal property causes injury." *Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th 962, 968 (9th Cir. 2024) (internal quotation marks and citations omitted) (emphasis omitted). "In order to prevail on a claim for trespass based on accessing a computer system," plaintiffs must show: "(1) [the] defendant intentionally and without authorization interfered with plaintiff's possessory interest in the computer system; and (2) defendant's unauthorized use proximately resulted in damage to plaintiff." *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1069-70 (N.D. Cal. 2000).

As to intent, for the same reasons as explained with regard to Plaintiffs' wiretapping claims, the Court agrees that Plaintiffs have sufficiently alleged intent. *See, supra*, § III.B.3.b.i. (citing *cf. James v. Disney*, 701 F. Supp. 3d at 954 (agreeing with Plaintiffs' argument that "given the third-party tracking] software did not appear on Defendant's website out of nowhere, and that Defendant benefits greatly from [these] services, it [can be reasonably inferred] Defendant 'intended' for [the third party] to eavesdrop on website visitors."); *see also* Compl., ¶¶ 24-25 (*e.g.*, "When you visit our website, we store cookies on your browser to collect information.").

As to interference, "decisions finding electronic contact to be a trespass to computer systems have generally involved some actual or threatened interference with the computers' functioning." *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 846 (N.D. Cal. 2024). In response to Dollar Tree's challenge, Plaintiffs point to (1) loss of security of their systems and (2) the previously discussed loss of value of their devices due to lost storage space and performance. *See* Dkt. 37 at 31-32. As to the first argument, whatever the potential merits of a loss-of-security argument, such allegations are not present in Plaintiffs' Complaint. The Court generally declines to allow amendment-by-opposition and will not consider hypothetical allegations at this time.

***22** As to the second argument, loss of value due to lost storage space and performance, this "interference" allegation blends into the "damages" issue. As to both issues, it is not necessarily implausible, as discussed with regard to Article III Standing, above, that "reduction of storage, disk space, and performance of Plaintiffs' ... computing devices" may be both a sufficient interference and lead to appreciable damages. *See, supra*, § III.B.1. (citing *In re Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d at 658 (cookies that are not temporary "stay[ ] until [they] is discovered or removed[ ] and create[ ] a measurable impact on the functioning of the systems' memory sufficient to satisfy damage for the trespass.")). However, as Dollar Tree persuasively argues, there are no allegations explaining how the cookies at issue in this case have actually impaired Plaintiffs' devices – *e.g.*, how much storage space is taken up or whether any slowdown in performance has been measured. Without such detail, Plaintiff's allegations as to how Dollar Tree's unauthorized interference "proximately resulted in damage to [Plaintiffs]" are merely conclusory and insufficient.

Accordingly, the Court **GRANTS** Dollar Tree's motion to dismiss the trespass claim **with leave to amend**.

## V. CONCLUSION

For the forgoing reasons, the Court finds that Dollar Tree has not met its burden to show that the T&C are incorporated into the Privacy Policy or otherwise agreed to by Plaintiffs and has failed to carry its burden to show that the convenience to the Parties and interest of justice factors weight toward transfer. Accordingly, its motion to transfer is **DENIED without prejudice to a showing re actual notice.**

Furthermore, the Court **GRANTS IN PART** and **DENIES IN PART** Dollar Tree's motion to dismiss. The following claims are dismissed:

- Plaintiffs Yosha and Maldonado's claims are **DISMISSED** for improper venue;
- Plaintiffs' wiretapping claim (Count III) is **DISMISSED with leave to amend**;
- Plaintiffs' contract claims (Counts VII-VIII) are **DISMISSED with leave to amend**;
- Plaintiffs' fraud claim (Count V) is **DISMISSED with leave to amend**; and
- Plaintiffs' trespass claim (Count IX) is **DISMISSED with leave to amend**.

Plaintiffs' amended complaint, if any, is due **no later than November 6, 2025**. No new claims or parties may be added in any such amended complaint.

Finally, the Court hereby re-sets the initial case management conference in this case for **January 13, 2026 at 9:30am** via videoconference. A Clerk's Notice shall follow.

**SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 2939229

## Footnotes

1 Plaintiffs' counsel appeared to indicate that some of the Named Plaintiffs' did not get to the Privacy Policy in the same way. There may be some fine lines to be drawn at class certification, but as long as at least one Named Plaintiff remains to represent an alleged class, this is not grounds for transfer of the entire case. *See Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) ("adequacy-of-representation ... is satisfied as long as one of the class representatives is an adequate class representative.").

2 *See Oberstein*, 60 F.4th at 518 ("[W]here the authenticity of screenshots is not subject to factual dispute, courts may decide the issue [of constructive notice provided by a webpage] as 'a pure question of law.' ").

3 If, during or after discovery, Dollar Tree can show that all Named Plaintiffs had actual notice of the T&C, it may renew its motion to transfer on the grounds of the forum-selection clause only.

4 Dollar Tree points this Court to another case of a similar posture, *Gabrielli v. v. Insider, Inc.*, wherein the court found the plaintiff *lacked* Article III standing because "[s]tatutory violations alone typically do not satisfy the concrete harm requirement" and CIPA "does not codify a substantive privacy right that bears a close relationship to a traditionally recognized harm." No. 24-cv-01566-ER, 2025 WL 522515, at *3 (S.D.N.Y. Feb. 18, 2025). *Insider* and *Motorola* appear directly at odds. This Court finds *Motorola* to be more persuasive, as a case arising from this District and thus a court more familiar with substantive California law.

5 However, none of Plaintiffs' claims rely solely on the diminution of value of their personal information. Accordingly, although Plaintiffs may amend to add details as to their "diminution of value" theory in order to pursue such damages, the absence of such allegations does not inhibit their ability to bring any claims at this stage.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

6 Dollar Tree's motion also analyzes subsections (b)(1) and (b)(3). It argues that, as to (b)(1), California does not have general jurisdiction over Dollar Tree and does not have specific jurisdiction over Dollar Tree *as to* Yosha or Moldonado's claims (as opposed to Walsh's claims). Dkt. 18 at 24-25. As to (b)(3), Dollar Tree notes that this action could have been brought in the Eastern District of Virginia. *Id.* at 25-26. Plaintiffs do not address the subsections separately, but do not contest that general jurisdiction is unavailable or that (b)(3) is inapplicable. *See* Dkt. 37 at 16-17. The remaining issue —of specific jurisdiction—is addressed in this Order.

7 Even if Plaintiffs Yosha and Maldonado opted-out of any future class and pursued their claims individually, for the reasons already explained in Section III.A. of this Order, the Court is not convinced that the Eastern District of Virginia —rather than the Central and Southern Districts of California—is the more convenient forum.

8 Although the Court has dismissed Yosha and Maldonado as named plaintiffs, the Court continues to refer to "Plaintiffs" in the plural as Walsh represents a putative class of plaintiffs.

9 "The existence of a reasonable expectation of privacy, given the circumstances of each case, is a mixed question of law and fact." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 601. The Court credits Plaintiffs' well-pleaded factual allegations relating to their expectation of privacy as true (*e.g.*, the data at issue and details of the Cookie Banner) but does not impart any weight to Plaintiffs' conclusory allegations that their expectations were reasonable.

10 At this juncture, the Court briefly addresses the RLC's submission that, based on its legislative history, CIPA was enacted for phone-based (not internet-based) taps and communications and that Plaintiffs "manipulate a decades-old law for purposes which it was never intended." *See* Dkt. 29 at 7-10, 12-14. The Court appreciates the context provided by the RLC and the troubling picture it paints of potentially abusive litigation. Nonetheless, the plain text of Section 631(a) is broad, extending to "any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any ... line, cable, or instrument." Cal. Penal Code § 631(a). In light of the numerous other cases having applied Section 631(a) to internet communications, (*see, e.g., Mikulsky*, 713 F. Supp. 3d 833 (S.D. Cal. 2024); *Katz-Lacabe*, 668 F. Supp. 3d 928 (N.D. Cal. 2023)), and noting that Defendant Dollar Tree has not sought to dismiss the Section 631(a) claim on the basis that CIPA is categorically inapplicable, the Court will not *sua sponte* dismiss Count III on this basis.

11 Plaintiffs also rely on the principle that the Ninth Circuit's analysis of the Wiretap Act is instructive and that in *United States v. Christensen*, 828 F.3d 763, 744 (9th Cir. 2015), the Ninth Circuit rejected the more stringent requirement in the federal act. *See* Dkt. 37 at 25-28. But "[c]ourts analyzing CIPA claims apply the same definitions for the federal Wiretap Act" only "where appropriate." *Mikulsky*, 713 F. Supp. 3d at 845. CIPA and the federal Wiretap Act are ultimately different statutes and, as the Ninth Circuit explained, the latter was specifically amended by Congress in "1986[ ] as part of the electronic Communications Privacy Act[ to] substitute[ ] the word 'intentionally' for the word 'willfully.' " *United States v. Christensen*, 828 F.3d at 774. Accordingly, as to the *mens rea* required, interpretations of the federal Wiretap Act are less helpful than the plain language of Section 631(a).

12 Plaintiffs resist this requirement, arguing that "California Courts have rejected *Ruiz*," and citing cases from both state courts and courts in this District declining to require actual damages. Dkt. 37 at 29-30. But the unpublished *Ruiz* decision relied on *Aguilera*, a binding decision of the Ninth Circuit. *Ruiz*, 380 F. App'x at 692. As the *Ruiz* Court made clear, "*Aguilera* binds us, as it did the district court." *Id.*; *see also Cabrera v. Google LLC*, No. 11-cv-01263-EJD, 2023 WL 5279463, at *6 (N.D. Cal. Aug. 15, 2023) (despite California authority arguably to the contrary, "this Court is bound to follow *Aguilera* as Ninth Circuit precedent.").

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**EXHIBIT 2**

**2025 WL 3035016 (Cal.Super.) (Trial Order)**
Superior Court of California.
Santa Clara County

Zhizhi XU, individually and on behalf of all other persons similarly situated, Plaintiff,
v.
REUTERS NEWS & MEDIA, INC., Defendant.

No. 25CV459918.
October 24, 2025.

**Order Overruling Defendant's Demurrer**

Charles F. Adams, Judge.

***1** This is a putative class action in which Plaintiff Zhizhi alleges Defendant Reuters News & Media Inc. violation the California Invasion of Privacy Act ("OPA").

Before the Court is Defendant's demurrer to the operative first amended complaint ("FAC"), which is opposed by Plaintiff.

As discussed below, the Court OVERRULES Defendant's demurrer.

## I. BACKGROUND

According to the allegations of the FAC, Defendant operates https://Reuters.com (the "Website") and when users visit it, Defendant causes at least three Trackers—the ADNXS Tracker, PubMatic Tracker, and Sharethrough Trackers (collectively, "Trackers")—to be installed on their internet browsers. (FAC, ¶¶ 1-2.) Through the Trackers, third parties collect users' internet protocol ("IP") addresses and other device identifier information such as device type, browser type, and unique and persistent identifiers. (FAC, ¶ 3.) Plaintiff alleges the Trackers constitute "pen registers" because they capture visitor information and Defendant violated the CIPA by installing and using them without prior consent or a court order. (FAC, ¶¶ 4-5.) The Trackers collect Plaintiffs' and Class Members' IP addresses and device metadata. (FAC, ¶ 6.) By installing the Trackers on Website users' browsers, Defendant allows Third Parties to collect the "keys" to users' homes. (FAC, ¶ 7.) Using these keys, the Third Parties can access a whole repository of personal information about a user, which is then compiled into a comprehensive profile. (*Ibid*.) The profiles are then sold to advertisers, with Defendant deriving the profit and the Third Parties amassing greater troves of data in the interim. (*Ibid*.) Users have their privacy invaded without consent and are exposed to significant harms stemming Defendant's installation and use of the Trackers—specifically, having their information collected by data brokers and sold in the real-time bidding ecosystem on Defendant's website. (*Ibid*.)

To make Defendant's Website load on a user's internet browser, the browser sends an "HTTP request" or "GET" request to Defendant's server where the relevant Website data is stored. (FAC, ¶ 26.) In response to the request, Defendant's server sends an "HTTP response" back to the browser with a set of instructions, which includes how to properly display the Website. (FAC, ¶¶ 26-27.) The server's instructions cause the Tracker's to be installed on a user's browser and the browser sends identifying information-including the user's IP address and device meta data to the Third Parties. (FAC, ¶ 28.) Third Parties also send a user ID unique to their Tracer that also allows the user to be tracked across the internet. (*Ibid*.) The Third Parties sync their trackers with those of data brokers to de-anonymize and identify users. (*Ibid*.)

Based on the foregoing, Plaintiff initiated this action on February 26, 2025 and on June 18, 2025, he filed the operative FAC, which asserts a cause of action for violation of the CIPA.

## II. DEMURRER

### A. Legal Standard

The function of a demurrer is to test the legal sufficiency of a pleading. (*Trs. Of Capital Wholesale Elec. Etc. Fund v. Shearson Lehman Bros.* (1990) 221 Cal.App.3d 617, 621.) Consequently, "[a] demurrer reaches only to the contents of the pleading and such matters as may be considered under the doctrine of judicial notice." (*South Shore Land Co. v. Petersen* (1964) 226 Cal.App.2d 725, 732, internal citations and quotations omitted; see also Code Civ. Proc., § 430.30, subd. (a).) "It is not the ordinary function of a demurrer to test the truth of the plaintiff's allegations or the accuracy with which he describes the defendant's conduct.... Thus, … the facts alleged in the pleading are deemed to be true, however improbable they may be." (*Align Technology, Inc. v. Tran* (2009) 179 Cal.App.4th 949, 958, internal citations and quotations omitted.)

***2** In ruling on a demurrer, the allegations of the complaint must be liberally construed, with a view to substantial justice between the parties. (*Glennen v. Allergan, Inc.* (2016) 247 Cal.App.4th 1, 6.) Nevertheless, while "[a] demurrer admits all facts properly pleaded, [it does] not [admit] contentions, deductions or conclusions of law or fact." (*George v. Automobile Club of Southern California* (2011) 201 Cal.App.4th 1112, 1120.)

### B. Discussion

Defendant demurs to Plaintiff's FAC on the ground of failure to state facts sufficient to constitute a cause of action. (Code Civ. Proc., § 430.10, subd. (e).)

#### 1. Violation of CIPA

Plaintiff alleges that Defendant violated the CIPA, particularly subdivision (a) of Penal Code section 638.51 ("Section 638.51"), which provides, "except as provided in subdivision (b), a person may not install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53." (FAC, ¶¶ 240-250.)

Defendant argues Plaintiff lacks statutory standing, that the Trackers are not "pen registers," and that Defendant is a party to the communication.

#### i. *Statutory Standing*

Defendant argues Plaintiff lacks standing because he does not have a privacy interest in his device's IP address and basic identifying information; and his allegations regarding conduct by nonparty data brokers are irrelevant to Plaintiff's claims against Defendant. (Defendant's Memorandum of Points and Authorities ("MPA"), pp. 11:26-12:1.)

"[T]o assess a plaintiffs standing to pursue claims in California courts, one must consider whether the plaintiff suffered an injury – i.e., 'invasion of [their] legally protected interests' and whether it is 'sufficient to afford them an interest in pursuing their action vigorously.' The latter consideration is met whether the injury is '(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.' " (*Limon v. Circle K Stores, Inc.* (2022) 84 Cal.App.5th 671, 704.)

California courts are not bound by the requirements of Article III standing, and instead "are guided by 'prudential considerations.' " (*Bilafer v. Bilafer* (2008) 161 Cal.App.4th 363, 370.) In California courts, the term standing is more broadly defined as "the right to relief in court." (*The Rossdale Group, LLC v. Walton* (2017) 12 Cal.App.5th 936, 944-945 [internal

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

quotation marks and citation omitted].) This right typically belongs to the "real party in interest." (See *Jasmine Networks, Inc. v. Superior Court* (2009) 180 Cal.App.4th 980, 991, citing Code Civ. Proc., § 367.) It has also been stated that to have standing in California courts, "the plaintiff must be able to allege injury — that is, some 'invasion of the plaintiff's legally protected interests.'" (*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 175.)

Defendant argues that Plaintiff has no objective reasonable expectation of privacy in his IP address and device information. (MPA, p. 12: 11-15.) In opposition, Plaintiff argues he has standing because he has lost the right to control his personal information. He states further that "through the information the Third Parties collect, website users are identified by being linked to comprehensive, non-anonymous profiles maintained by data brokers; that such linkage occurs by bypassing the normal site restrictions. (Opp., 9:13-18.)

***3** Penal Code section 637.2, provides, "it is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages." (Pen. Code. § 637.2.) It is well established that there is "no legally protect privacy interest in IP addresses." (See *Heeger v. Facebook, Inc.* (N.D. Cal. 2020) 509 F.Supp.3d 1182, 1189.) However, Plaintiff's allegations go beyond the collection of that information as Plaintiff alleges that Defendant (and Third Parties) use the public IP addresses, device metadata, and other information to deanonymize users, serve hyper-targeted advertisements, and unjustly enrich themselves through the information. (See FAC, ¶ 60; see also FAC, ¶ 77 [Defendant installed the Trackers on visitors' browsers "in order to identify the user by matching that user with any profiles Microsoft and/or these data brokers may have on the user, which are then provided by Microsoft for sale to advertisers."].) Moreover, Plaintiff alleges that the collected information was used to build a profile for users based on their information, interests, and interferences. (See FAC, ¶ 171.) Therefore, whether Plaintiff has a reasonable expectation of privacy to the collected information does not preclude him from alleging an invasion of privacy injury.

Next, Defendant argues that the conduct of Third Parties is not relevant to Plaintiff's claim against it. (MPA, p. 16:2-8.) However, it appears Defendant does not account for Plaintiff's allegation that it was responsible for the installation of the Trackers. (FAC, ¶ 97.) Additionally, Plaintiff alleges that "when companies build their websites, they install or integrate various third-party scripts into the code of the website in order to collect data from users or perform other functions." (FAC, ¶ 54.) Plaintiff further alleges, "Defendant has long incorporated the Trackers' code into the code of its Website, including when Plaintiff and Class Members visited the Website. Thus, when Plaintiff visited the Website, the Website caused the Trackers to be installed on Plaintiff's ad other users' browsers." (FAC, ¶ 57.) It is a fundamental rule of procedure that a demurrer "admits the truth of all material factual allegations in the complaint," and so the Court must accept Plaintiff's allegations as true at this stage. (See *Align, supra*, 179 Cal.App.4th at p. 958.) In doing so, the Court finds that Plaintiff sufficiently alleges Defendant's conduct relevant to his claim. As a result, the demurrer cannot be sustained on this basis.

**ii. *Whether the Trackers are "Pen Registers"***

Defendant argues that websites collecting IP addresses and device identifying information do no constitute pen registers. (MPA, p. 17:16-18.) Penal Code section 638.50, defines "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of the communication." (Pen. Code § 638.50, subd. (b).)

Defendant argues that the California Senate is currently working towards passing "a bill [("SB 690")] that would amend the CIPA to clarify that the Act does not, and was never intended to, criminalize or penalize the use of common commercial web tracking software." (MPA, p. 18:15-17.) However, at the same time, Defendant concedes that SB 690 has not become law. Thus, the Court cannot rely on it when interpreting the CIPA as the current language of the statute and interpretations of it presently control. Defendant provides no authority that permits the Court to rely on an unenacted law or amendments thereto, or to rely on the statements of individual politicians regarding unenacted laws. Moreover, as noted by Plaintiff, the retroactive language was removed from SB 690; therefore, even if it is eventually enacted, it will not impact the instant case.

Defendant argues that the California Consumer Privacy Act ("CCPA") should define the statutory scheme for privacy law. (MPA, p. 20:10-19.) However, CCPA explicitly states that "law relating to consumers' personal information should be construed to harmonize the provisions of this title." (See Civ. Code § 1798.175.) Moreover, it states that "in the event of conflict between other laws and the provisions of this title, the provisions of the law that afford the *greatest protection for the right of privacy* for consumers shall control." (*Ibid,* [emphasis added].) Therefore, it does not appear that CCPA and CIPA are in conflict with one another. Even if there was a conflict, the explicit language of the CCPA states that the law which affords the greatest protection should control. For this case, that law is the CIPA.

***4** Furthermore, federal district courts have held that trackers that collect IP addresses and other information fall within the definition of a "pen register." (See *Mirmalek v. Los Angeles Times Communs. LLC* (N.D. Cal. Dec. 12, 2024, No. 24-cv-01797-CRB) 2024 U.S. Dist. LEXIS 227338 **8-9 (*Mirmalek*); see also *Vishal Shah v. Fandom, Inc.* (N.D.Cal. Oct. 21, 2024) 754 F.Supp.3d 924, 931; *Gabrielli v. Haleon US Inc.* (N.D. Cal. Aug. 29, 2025, No. 25-cv-02555-WHO) 2025 U.S. Dist. LEXIS 169503 **31-34.)

Here, Plaintiff alleges the Trackers are at least a process because they are "software that identifies consumers, gathers data, and correlates that data." (See FAC, ¶¶ 102, 130, 150.) He further alleges that the Trackers are a "device" because "in order for software to work, it must be run on some kind of computing device." (FAC, ¶¶ 103, 131, 151.) Thus, Plaintiff sufficiently alleges the Trackers are a "device or process" under Section 638.50. (See *Mirmalek, supra,* 2024 U.S. Dist. 22738 at * 10.)

**iii. Impact of Defendant's Status as a Party to the Communication**

Defendant argues the claim fails because it is a party to the communication. Defendant directs the Court to Penal Code section 631, subdivision (a), which provides,

(a) Any person who, by means of any machine, instrument, or contrivance, or in any other manner,

(1) intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or

(2) who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or

(3) who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or

(4) who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable [under this Section]

Defendant argues that because courts applied Section 631, subdivision (a), only as to eavesdropping by third parties, the Court should create an exception from liability under Section 638.51, if a defendant was a party to the communication. (MPA, p. 21:10-25.) The Court is not persuaded by this argument because as Plaintiff notes, some sections of the CIPA have been interpreted to apply to parties and non-parties. Therefore, the Court cannot conclude that the Legislature intended for Section 638.51 to be read the same way. As a result, the Court does not find a basis to create an exception to liability under Section 638.51.

Lastly, Defendant argues that the rule of lenity should weigh in its favor. (MPA, p. 22:19-21.)

The rule of lenity applies "when two reasonable interpretations of the same provision stand in relative equipoise." (*People v. Hernandez* (2003) 30 Cal.4th 835, 869.) Moreover, "the rule of lenity does not apply every time there are two or more reasonable interpretations of a penal statute. Rather the rule applies only if the court can do no more than guess what the legislative body intended; there must be an *egregious* ambiguity and uncertainty to justify invoking the rule." (*People v. Superior Court (Ortiz)* (2022) 81 Cal.Ap..5th 851, 885-886 [citations omitted and emphasis original].)

***5** The rule of lenity does not apply here because Defendant has not identified any "egregious ambiguity" in the express language of Section 638.51. Moreover, the Court is not persuaded by Defendant's attempt to create ambiguity based on Section 631. Additionally, at least one federal court has rejected the application of the rule of lenity in regard to a pen register. (See *Riganian v. LiveRamp Holdings, Inc.* (N.D. Cal. July 18, 2025, No. 25-cv-00824-JST) 2025 U.S. Dist. LEXIS 138122 **36-37 [holding that the rule of lenity did not apply where the defendant argues for a certain interpretation of Section 638.50, subdivision (b), but it did not establish any "grievous ambiguity" in the statute's express language].) Thus, the circumstances here do not justify invoking the rule of lenity.

Based on the foregoing, Defendant's demurrer is OVERRULED. [1]

## III. CONCLUSION

Defendant's demurrer is OVERRULED.

**IT IS SO ORDERED.**

Date: October 24, 2025

<<signature>>

CHARLES F. ADAMS

Judge of the Superior Court

## Footnotes

1 The Court acknowledges the *many*—perhaps too many—notices of supplemental authority filed by the parties, most of which are federal district court orders that, while interesting, are not binding on this state court. (See *T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 175 [although "decisions of … the lower federal courts may be instructive to the extent we find their analysis persuasive, they are neither binding nor controlling on matters of state law"]; see also Cal. Rules of Court, rule 8.254 [at least in the Court of Appeal, parties may inform the court of "*significant* new authority"].) In any event, the Court is not persuaded that any of the supplemental authorities cited by the parties would alter the outcome here.

End of Document © 2025 Thomson Reuters. No claim to original U.S. Government Works.