**BURSOR & FISHER, P.A.**
Kaili C. Lynn (State Bar No. 334933)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: klynn@bursor.com
jwilner@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
E-mail: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (State Bar No. 363482)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: mroberts@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SONNI ECHEVERRIA-CORZAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FOX CORPORATION and FOX NEWS NETWORK, LLC,<br><br>Defendants. | Case No. 3:25-cv-04253-AMO<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(H)(3)**<br><br>Date: April 23, 2026<br>Time: 2:00 p.m.<br>Courtroom: 10<br>Judge: Hon. Araceli Martínez-Olguín |

# TABLE OF CONTENTS

PAGE

INTRODUCTION ..... 1

ARGUMENT ..... 2

I. ECHEVERRIA-CORZAN HAS ALLEGED A CONCRETE INJURY SUFFICIENT FOR ARTICLE III STANDING ..... 2

A. Defendants' Installation And Use Of The Trackers Facilitated The Profiling Of Echeverria-Corzan And The Widespread Dissemination Of That Profile To Advertisers Without Consent ..... 2

B. Defendants Were Unjustly Enriched Through Their Installation And Use Of The Trackers ..... 5

C. *Popa* Did Not Change The Law And Is Inapposite In Any Event ..... 6

D. Defendants' Factual Arguments Are Unpersuasive ..... 8

E. Defendants' Remaining Legal Authorities Are Off-Point ..... 9

II. DEFENDANTS CONCEDED STANDING BY REMOVING THIS ACTION TO FEDERAL COURT AND AVAILING THEMSELVES OF ITS JURISDICTION ..... 13

III. TO THE EXTENT THE COURT REMANDS THIS CASE (AND IT SHOULD NOT), ECHEVERRIA-CORZAN SHOULD BE AWARDED FEES AND COSTS ..... 14

CONCLUSION ..... 16

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Balestrieri v. SportsEdTV, Inc.*,
2025 WL 2776356 (N.D. Cal. Sept. 16, 2025) .......... 7

*Bradshaw v. Lowe's Cos., Inc.*,
2025 WL 3171740 (S.D. Cal. Nov. 12, 2025) .......... 9, 10

*Britton v. Cnty. Of Santa Cruz*,
2020 WL 4187609 (N.D. Cal. July 22, 2020) .......... 13

*Camplisson v. Adidas Am., Inc.*,
2025 WL 3228949 (S.D. Cal. Nov. 18, 2025) .......... passim

*Collier v. SP Plus Corp.*,
889 F.3d 894 (7th Cir. 2018) .......... 15

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) .......... 15

*Dawidzik v. Tesla, Inc.*,
2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) .......... 13

*de Ayora v. Inspire Brands, Inc.*,
2025 WL 3707561 (N.D. Cal. Dec. 22, 2025) .......... 7

*Deivaprakash v. Condé Nast Digital*,
798 F. Supp. 3d 1100 (N.D. Cal. 2025) .......... passim

*Deivaprakash v. Condé Nast Digital*,
2025 WL 2779193 (N.D. Cal. Sept. 30, 2025) .......... 2, 7, 8

*DellaSala v. Samba TV, Inc.*,
2025 WL 3034069 (N.D. Cal. Oct. 30, 2025) .......... 6

*Dep't of Justice v. Reporters Comm. For Freedom of Press*,
489 U.S. 749 (1989) .......... 3, 9

*Drummer v. Costar Grp., Inc.*,
2025 WL 3190656 (C.D. Cal. Oct. 22, 2025) .......... 5, 8, 11

*Echeverria-Corzan v. Fox Corp.*,
2025 WL 3128194 (N.D. Cal. Nov. 7, 2025) .......... 10

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) .......... 7

*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. 2025) .................... 4

*Fregosa v. Mashable, Inc.*,
2025 WL 2886399 (N.D. Cal. Oct. 9, 2025) .................... 4, 10

*Gabrielli v. Motorola Mobility LLC*,
2025 WL 1939957 (N.D. Cal. July 14, 2025) .................... 3

*Gilligan v. Experian Data Corp.*,
2026 WL 32259 (N.D. Cal. Jan. 6, 2026) .................... 3, 6

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .................... 5

*Harris v. iHeartMedia, Inc.*,
2026 WL 247875 (N.D. Cal. Jan. 29, 2026) .................... passim

*Hassid v. Alex and Ani, LLC*,
2026 WL 160535 (C.D. Cal. Jan. 20, 2026) .................... 3, 8

*In re Accellion, Inc. Data Breach Litig.*,
2025 WL 2799102 (N.D. Cal. Sept. 30, 2025) .................... 4

*In re Facebook Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .................... 7, 8, 10

*In re Google RTB Consumer Privacy Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) .................... 5

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) .................... 10

*Jones v. Ford Motor Co.*,
85 F.4th 570 (9th Cir. 2023) .................... 1, 13, 14

*Khamooshi v. Politico LLC*,
2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) .................... 12

*Khatskevich v. Shapiro*,
2025 WL 833872 (S.D.N.Y. Mar. 17, 2025) .................... 11

*Knight v. Patagonia, Inc.*,
2025 WL 346465 (C.D. Cal. Jan. 30, 2025) .................... 15

*Krzyzek v. OpenX Techs., Inc.*,
2026 WL 206855 (N.D. Cal. Jan. 27, 2026) .................... passim

*League of Women Voters of Pennsylvania v. Commonwealth of Pennsylvania*,
921 F.3d 378 (3d Cir. 2019) .................... 15

*Lesh v. Cable News Network, Inc.*,
767 F. Supp. 3d 33 (S.D.N.Y. 2025) ... 12

*McClung v. AddShopper, Inc.*,
2024 WL 189006 (N.D. Cal. Jan. 17, 2024) ... 4

*Mitchener v. CuriousityStream, Inc.*,
2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) ... 11

*Nuri v. True Religion Apparel*,
2026 WL 319198 (W.D. Wash. Feb. 4, 2026) ... 16

*Penning v. MedicineNet, Inc.*,
2025 WL 2814586 (N.D. Cal. Oct. 3, 2025) ... 11

*Pileggi v. Washington Newspaper Publishing Co.*,
146 F.4th 1219 (D.C. Cir. 2025) ... 13

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ... 6, 7, 14

*Price v. Converse, Inc.*,
805 F. Supp. 3d 1102 (C.D. Cal. 2025) ... 11

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ... 9

*Rodriguez v. Autotrader.com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025) ... 10

*Rodriguez v. Autotrader.com, Inc.*,
2025 WL 1085787 (C.D. Cal. Apr. 4, 2025) ... 10

*Rodriguez v. Brushfire Records*,
2025 WL 3692144 (C.D. Cal. Dec. 15, 2025) ... 10, 11

*Rodriguez v. Culligan Int'l Co.*,
2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) ... 10

*Roney v. Miller*,
705 F. App'x 670 (9th Cir. 2017) ... 16

*Scarlett v. Future US, LLC*,
2025 WL 2614587 (San Francisco Super. Ct. Sept. 5, 2025) ... 11

*Semien v. PubMatic, Inc.*,
2026 WL 216333 (N.D. Cal. Jan. 27, 2026) ... 3

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) ... 4

*Six v. IQ Data Int'l, Inc.*,
129 F.4th 630 (9th Cir. 2025) .......... 9

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 7, 13

*United States ex rel. Godecke v. Kinetic Concepts, Inc.*,
2016 WL 11673222 (C.D. Cal. Nov. 16, 2016) .......... 14

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .......... 12

*Wooten v. Biolife Plasma Servs. L.P.*,
2025 WL 2979619 (E.D. Cal. Oct. 22, 2025) .......... 12

*Wright v. TrueCare Property Holdings, LLC*,
2025 WL 3248749 (S.D. Cal. Nov. 21, 2025) .......... 10

*Xu v. Reuters News & Media Inc.*,
2025 WL 488501 (S.D.N.Y. Feb. 13, 2025) .......... 11

*Xu v. Reuters News & Media, Inc.*,
2025 WL 3035016 (Santa Clara Super. Ct. Oct. 24, 2025) .......... 4, 12

**STATUTES**

28 U.S.C. § 1447(c) .......... 2, 15

**RULES**

Fed. R. Civ. P. 11(b) .......... 16

Fed. R. Civ. P. 12(b) .......... 1, 13, 15

Fed. R. Civ. P. 12(h)(3) .......... 1, 14, 15

Plaintiff Sonni Echeverria-Corzan ("Echeverria-Corzan") respectfully submits this opposition to Defendant Fox Corporation and Fox News Network, LLC's ("Defendants" or "Fox") Motion to Dismiss the First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(h)(3) (ECF No. 45) (the "Motion" or "MTD").

## INTRODUCTION

Echeverria-Corzan's claim is not simply that "a third party recorded my IP address." Instead, Echeverria-Corzan alleges that, through Defendants' installation and use of Trackers,[1] the Third Parties collected various identifiers from Website users (*e.g.*, IP addresses, Device Metadata, unique user identifiers), used those to match consumers to comprehensive, non-anonymous profiles, and sold those profiles for Defendants' benefit to advertisers in the span of milliseconds. *See*, *e.g.*, FAC ¶¶ 4, 7, 56-57, 63-65, 70-73, 76-82, 84-89, 96-97, 99-103, 106, 114-115, 117, 124, 134-139, 144-150, 153, 158-161, 166, 169-170, 174-177, 179-188, 190-192. Courts have regularly concluded such conduct gives rise to Article III standing. *See*, *e.g.*, *Deivaprakash v. Condé Nast Digital*, 798 F. Supp. 3d 1100, 1107, 1107 n.4 (N.D. Cal. 2025); *Krzyzek v. OpenX Techs., Inc.*, --- F. Supp. 3d ---, 2026 WL 206855, at *3 (N.D. Cal. Jan. 27, 2026); *Harris v. iHeartMedia, Inc.*, 2026 WL 247875, at *1-2 (N.D. Cal. Jan. 29, 2026).

It is presumably because of this significant privacy harm that Defendants believed there was Article III standing supporting their removal to federal court. ECF No. 1; *see also*, *e.g.*, *Jones v. Ford Motor Co.*, 85 F.4th 570, 573 (9th Cir. 2023) ("Upon removal, the burden to demonstrate Article III jurisdiction shifts to the Defendant as the party invoking federal jurisdiction.") (cleaned up). Indeed, Defendants clearly believed there was federal jurisdiction because Defendants then availed themselves of this Court's jurisdiction to move to dismiss this case on Fed. R. Civ. P. 12(b)(6) (but not 12(b)(1)) grounds. ECF No. 11. Defendants cannot disclaim those decisions now. As Echeverria-Corzan lays out below, Defendants' change of heart on the issue has nothing to do with a change in the law. No such change has occurred. And if Defendants genuinely believed that this

[1] All terms not defined herein shall have the same meaning as in the First Amended Complaint.

case had to be litigated in state court, it is mystifying why Defendants would not simply stipulate to that fact as Echeverria-Corzan suggested months ago. ECF No. 31 at 2.

Simply put, the Court should not countenance Defendants' about-face. Defendants chose to be in this forum because they believed there was Article III standing, and they cannot disclaim that decision where no change in the law has occurred. And if the Court decides to remand this case to Alameda Superior Court (and it should not), Echeverria-Corzan should be awarded attorney's fees and costs. 28 U.S.C. § 1447(c).

For the following reasons, Defendants' Motion should be denied.

## ARGUMENT

### I. ECHEVERRIA-CORZAN HAS ALLEGED A CONCRETE INJURY SUFFICIENT FOR ARTICLE III STANDING

#### A. Defendants' Installation And Use Of The Trackers Facilitated The Profiling Of Echeverria-Corzan And The Widespread Dissemination Of That Profile To Advertisers Without Consent

As noted above, the harm Echeverria-Corzan alleges "extends beyond the collection of just [her] IP address and metadata." *Deivaprakash*, 798 F. Supp. 3d at 1107. Instead, through the information the Third Parties collected from her on the Website, Echeverria-Corzan alleges: (i) she and Class Members were identified by being linked to comprehensive, non-anonymous profiles maintained by data brokers using the IP addresses, Device Metadata, and unique identifiers collected directly from users on the Website, allowing them to be tracked across the Internet; (ii) that such linkage occurs by bypassing the normal "restriction that sites can't read each other[s'] cookies"; and (iii) that those profiles are offered up for sale to a near endless supply of advertisers without knowledge or consent. *See*, *e.g.*, FAC ¶¶ 4, 7, 56-57, 63-65, 70-73, 76-82, 84-89, 96-97, 99-103, 106, 114-115, 117, 124, 134-139, 144-150, 153, 158-161, 166, 169-170, 174-177, 179-188, 190-192.

Courts have found that these allegations satisfy Article III because "the privacy violation … encompasses how that collection allegedly allowed the third parties to: (1) build a profile reflecting [users'] personal information; and (2) interfere with [users'] ability to remain anonymous." *Deivaprakash*, 798 F. Supp. 3d at 1107; *see also*, *e.g.*, *Deivaprakash v. Condé Nast Digital*, 2025 WL 2779193, at *2 (N.D. Cal. Sept. 30, 2025) ("Deivaprakash alleges that internet trackers allowed third parties to generate profiles reflecting his personal information. That privacy injury finds

historical analogues in injuries redressable under the common law."); *Harris*, 2026 WL 247875, at *1-2 (finding Article III standing where "[p]laintiff asserts that he and other website users are harmed not just by the collection of data, but by being identified and linked to comprehensive, non-anonymous profiles that are offered up for sale to a near endless supply of advertisers without knowledge or consent") (cleaned up); *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *6 (N.D. Cal. July 14, 2025) ("Gabrielli's allegations that Motorola deprived him control of personal information regarding his digital activity and profile are sufficient to establish a concrete injury to his right to privacy and confer standing."); *Camplisson v. Adidas Am., Inc.*, --- F. Supp. 3d ---, 2025 WL 3228949, at *6 (S.D. Cal. Nov. 18, 2025) (finding Article III standing because "Plaintiffs have alleged that the Trackers on Defendant's website have collected a broad set of their personal identifying and addressing information without their consent and in violation of CIPA. This claim maintains a violation of privacy, particularly in the control of their own information."); *Hassid v. Alex and Ani, LLC*, --- F. Supp. 3d ---, 2026 WL 160535, at *3 (C.D. Cal. Jan. 20, 2026) (same where the plaintiff alleged "defendant's tracking practices enable it to regularly collect personalized information when someone, like plaintiff, visits defendant's Website"); *Semien v. PubMatic, Inc.*, 2026 WL 216333, at *5 (N.D. Cal. Jan. 27, 2026) (same where "plaintiffs allege that PubMatic created or added to detailed user profiles by tracking their interactions across the internet"); *Krzyzek,*, 2026 WL 206855, at *3 (same as to OpenX); *Gilligan v. Experian Data Corp.*, 2026 WL 32259, at *2 (N.D. Cal. Jan. 6, 2026) (same where "Plaintiffs allege that Experian engages in unauthorized widespread tracking and data collection, allowing it to compile detailed profiles of each Plaintiff's online web browsing activity tied to their email address and other personal identifiers").

In this way, Echeverria-Corzan and others lost their right to "control [] information concerning his or her person," which is encompassed within "both the common law and the literal understandings of privacy." *Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 763 (1989); *Harris*, 2026 WL 247875, at *2 ("The Court finds that Plaintiff has alleged the violation of a privacy interest that bears a 'close relationship' to traditional harms – *i.e.*, the loss of the ability to control information about himself and to avoid the broad dissemination of that information."). This is at least analogous to the tort of intrusion upon seclusion, although an exact

match is not required. *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 580 (N.D. Cal. 2025) ("[T]he harm made actionable at common law was an individual's loss of control over her private affairs or concerns by an interloper's tortious intentional interference.") (cleaned up); *In re Accellion, Inc. Data Breach Litig.*, 2025 WL 2799102, at *13 (N.D. Cal. Sept. 30, 2025) ("[T]he Court concludes the better reading of *TransUnion* is that harms need only be similar in kind to those redressed by common law torts. That is because *TransUnion* expressly rejected the notion that an 'exact duplicate' is required….").

Moreover, Echeverria-Corzan's harm is traceable to Defendants' conduct. Defendants are alleged to have "enabled the third parties to amass information about [Echeverria-Corzan] by embedding the code in its [W]ebsite[] that surreptitiously installed the trackers on [Echeverria-Corzan's] browser in the first place." *Deivaprakash*, 798 F. Supp. 3d at 1107; *Xu v. Reuters News & Media, Inc.*, 2025 WL 3035016, at *3 (Santa Clara Super. Ct. Oct. 24, 2025) ("Defendant does not account for Plaintiff's allegation that it was responsible for the installation of the Trackers."); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 931 (N.D. Cal. 2024) ("Even if third parties developed and used the Tracker software, it is alleged that Fandom was responsible for integrating the third-party script into its own website.") (cleaned up); *see also*, *e.g.*, FAC ¶¶ 2, 62-63, 70, 96, 114, 138, 190.

Indeed, the Third Parties' tracking was not only done at Defendants' direction, but for Defendants' benefit (*i.e.*, advertising revenue). *See*, *e.g.*, FAC ¶¶ 3, 81, 93, 117, 126, 138, 153, 169, 177, 186. And the harm that befell Echeverria-Corzan here—the linkage to non-anonymous profiles and the continued building of the same, which were then sold to unlimited numbers of advertisers—occurred directly on Defendants' Website. *See*, *e.g.*, *id.* ¶¶ 4, 6, 146, 159-161, 170, 177, 188, 192. Defendants' "knowing participation in this scheme … is enough to confer standing for a victim of the scheme to sue [Defendants] in federal court." *McClung v. AddShopper, Inc.*, 2024 WL 189006, at *2 (N.D. Cal. Jan. 17, 2024); *Fregosa v. Mashable, Inc.*, 2025 WL 2886399, at *8 (N.D. Cal. Oct. 9, 2025) ("Mashable deliberately embedded third-party trackers on its website, knew that those trackers would capture visitors' IP addresses and device metadata, and used the resulting data in concert with [the third parties] to facilitate targeted advertising. That active role is enough to plead

"use" under § 638.51…") (cleaned up).

Thus, by facilitating the creation and widespread sale of profiles through their installation and use of the Trackers, Defendants caused Echeverria-Corzan to suffer a concrete harm sufficient for Article III standing.

**B. Defendants Were Unjustly Enriched Through Their Installation And Use Of The Trackers**

As another basis for standing, Echeverria-Corzan alleges that Defendants derived an unlawful economic benefit through their installation and use of the Trackers. "Because California law recognizes an entitlement to unjustly earned profits, to establish standing, plaintiffs must only establish a stake in the profits garnered from their personal data and that it is unjust for the defendant to retain those profits." *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1038 (S.D. Cal. 2023) (cleaned up).

Here, Echeverria-Corzan alleges that, by installing and using the Trackers, Defendants enriched the value their users commanded when their information was shared with advertisers as a result of the replete information the Third Parties are able to provide about users (on their own and/or through the data brokers they sync with on the Website). FAC ¶ 139 ("Defendants' users become more valuable as a result of having their IP addresses and Device [Metadata] linked to these data broker profiles."), ¶ 146 ("All of this naturally enriches Defendant[s], as its users have now become more valuable."); *see also*, *e.g.*, *id.* ¶¶ 6, 65, 113, 159-161, 170, 175, 188. This also suffices for injury. *See*, *e.g.*, *Greenley*, 684 F. Supp. 3d at 1038 (Article III standing alleged where "Plaintiff … conferred a benefit on Defendant through the use and dissemination of Plaintiff's … personal information … which Defendant used and disseminated for its own monetary benefit.") (cleaned up); *Drummer v. Costar Grp., Inc.*, 2025 WL 3190656, at *3 (C.D. Cal. Oct. 22, 2025) ("Plaintiffs also allege that this collection and transmission economically harms Plaintiffs, because such data underpinning targeted advertising is economically valuable."); *In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d 935, 941, 943 (N.D. Cal. 2022) (finding Article III standing where "[t]hrough RTB, Google solicits participants to bid on sending an ad to a specific individual" and "Google provides highly specific information about the target in the bid request … including data that

identifies the individual being targeted through unique identifiers, device identifiers, geolocation, IP address, cookie match, and other information").

**C. *Popa* Did Not Change The Law And Is Inapposite In Any Event**

Despite removing this case to federal court, Defendants claim that its newfound standing argument is based on *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025), which allegedly "eschew[ed] earlier Ninth Circuit jurisprudence." MTD at 4:6-7. Not so. "Lower courts have recognized that *Popa* did not set out a new rule of law for Article III standing, but rather applied the same common law rules to the individual circumstances of that case." *Krzyzek*, 2026 WL 206855, at *3 n.5; *see also*, *e.g.*, *DellaSala v. Samba TV, Inc.*, 2025 WL 3034069, at *2 (N.D. Cal. Oct. 30, 2025) ("*Popa* did not set forth a new rule of law—the issue of whether a privacy violation gives rise to an injury-in-fact for purposes of Article III standing is a frequent feature in these cases."); *Camplisson*, 2025 WL 3228949, at *6 ("Rather than introducing new case law … *Popa* uses the same common law rules … and evaluates the specific facts of that case.").

Regardless, "[t]he scope of the alleged tracking in this case is materially more invasive than the limited tracking at issue in" *Popa*. *Gilligan*, 2026 WL 32259, at *2; *Harris*, 2026 WL 247875, at *2 ("[T]he extent of tracking in *Popa* was significantly less intrusive than the tracking at issue in this case."). *Popa* involved "the tracking of plaintiff's non-sensitive interactions with a single website." *Gilligan*, 2026 WL 32259, at *2. Moreover, the information recorded in *Popa* was anonymous because the website had configured the third-party software to exclude the user's "street number and zip code." *Popa*, 153 F.4th at 787, 787 n.1. Thus, the information tracked in *Popa* concerned only "how the plaintiff interacted with the site rather than her personal, private information." *Camplisson*, 2025 WL 3228949, at *6. In addition, the only use of the information in *Popa* was to tell websites "which elements … have high user engagement, how far website users scrolled on the website, and the total clicks within a given area on the website." *Popa*, 153 F.4th at 786 (cleaned up).

*Popa* thus boiled down to a third party collecting anonymous information that was used in a manner akin to "a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems." *Id.* at 791. Unlike here, there was no linkage of information to non-

anonymous profiles, no sale of that information to advertisers, and no loss of control of personal information because personal information was not captured in *Popa*. *Camplisson*, 2025 WL 3228949, at *6 ("[*Popa*] is distinguishable from the facts presented in this case, where the collection of Plaintiffs' information concerns their person, is much broader in scope, and has been found to be a privacy harm in a wide variety of cases."); *see also Harris*, 2026 WL 247875, at *2 ("The scope of tracking at issue here is less like a store clerk observing shoppers [in *Popa*], and more like the cradle-to-grave profile discussed in *In re Facebook*.") (cleaned up); *de Ayora v. Inspire Brands, Inc.*, 2025 WL 3707561, at *2 (N.D. Cal. Dec. 22, 2025) ("[T]he alleged information at issue here is beyond what would be observable to a store clerk tasked with monitoring shoppers.").

Defendants also seem to insinuate that *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), cast doubt on the Ninth Circuit's holdings in *Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017), and *In re Facebook Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020). *See generally* MTD at 4, 6 ("That was the state of the law in the Ninth Circuit when Fox removed this case to this Court and completed briefing its 12(b)(6) motion to dismiss."). *Popa* itself and district courts have disagreed with Defendants—nor could *Popa* overrule either decision given it was not an *en banc* panel. *See Popa*, 153 F.4th at 794 ("[W]e need not revisit *Eichenberger* and *In re Facebook* in reaching our decision today."); *see also Deivaprakash*, 2025 WL 2779193, at *1 ("*Popa* confirmed that *Facebook* remains good law."); *Krzyzek*, 2026 WL 206855, at *3 n.5 (same); *Balestrieri v. SportsEdTV, Inc.*, 2025 WL 2776356, at *7 (N.D. Cal. Sept. 16, 2025) (noting *Popa* "did not explicitly or implicitly overturn *Eichenberger*"). Indeed, neither *Eichenberger* nor *In re Facebook* couched their standing analysis solely on the codification of any statute, instead drawing analogies between the plaintiffs' harms and historical privacy rights. *See Eichenberger*, 876 F.3d at 984 (predicating standing in part on "the individual's control of information concerning his or her person," as encompassed by "both the common law and the literal understanding of privacy") (cleaned up); *In re Facebook*, 956 F.3d at 599 ("Plaintiffs have sufficiently alleged a clear invasion of the historically recognized right to privacy.").

Relatedly, to the extent Defendants claim that several of Echeverria-Corzan's authorities relied on *In re Facebook* to find that "CIPA codifies a substantive privacy right" (MTD at 8:17

(cleaned up)), that is mistaken. Each of Echeverria-Corzan's authorities discussed analogs between "the individual circumstances giving rise to the plaintiffs' alleged injuries" (MTD at 8:27-9:1 (cleaned up)) and traditional privacy harms, as did *In re Facebook*, and did not couch standing solely on the statutory violation. *Deivaprakash*, 2025 WL 2779193, at *2 (noting the plaintiff's privacy injury "satisfies the requirements of *Popa*" because the "injury finds historical analogues in injuries redressable under the common law"); *Camplisson*, 2025 WL 3228949, at *6 ("[T]he injury-in-fact is in accordance with traditional privacy harms and is concrete.").

**D. Defendants' Factual Arguments Are Unpersuasive**

Defendants argue that "the categories of data that Plaintiff here alleges have been collected" are "insufficient to establish a concrete injury under Article III." MTD at 9:12-13. Courts have disagreed with that argument. *See*, *e.g.*, *Hassid*, 2026 WL 160535, at *1, *3 (finding Article III standing where third party software "collect[ed] data about Website visitors such as their device and browser information, geographic information, referral tracking, and URL tracking") (cleaned up); *Drummer*, 2025 WL 3190656, at *4 ("District courts throughout the Ninth Circuit have repeatedly found—subsequent to *TransUnion*—that CIPA claims for IP address collection similar to Plaintiffs' establish standing.").

Regardless, Defendants' argument misses the forest through the trees. As noted above, Echeverria-Corzan's claim is not just that the Third Parties recorded her various identifiers. Instead, her claim is that:

> *[u]sing IP addresses, device metadata, and unique identifiers*, the [T]hird [P]arties allegedly track users across the internet and build comprehensive user profiles that include an assortment of information, interests, and inferences. The [T]hird [P]arties then sync the user's information with data held by other data brokers to build the most comprehensive user profiles possible. Finally, through a complex bidding process known as Real Time Bidding, the de-anonymized user profiles are auctioned to potential advertisers, with the highest bidder securing the right to deliver an ad to a particular user.

*Harris*, 2026 WL 247875, at *1 (emphasis added; otherwise cleaned up). "Accordingly, it does not matter whether [Echeverria-Corzan] had a reasonable expectation of privacy in the information collected because the privacy violation extends beyond the collection of just [her] IP address and metadata." *Deivaprakash*, 798 F. Supp. 3d at 1106-07 (cleaned up).

Defendants then argue "the use of similar data to facilitate targeted advertising" is insufficient for standing. MTD at 10:15-16. To be sure, "[c]ourts have consistently found that the harm caused by unwanted communications bears a close relationship to intrusion upon seclusion." *Six v. IQ Data Int'l, Inc.*, 129 F.4th 630, 634 (9th Cir. 2025). Thus, receiving targeted advertising as a result of unconsented to data collection (*i.e.*, receiving unwanted communications) suffices for Article III standing. *See* FAC ¶ 192 (alleging Echeverria-Corzan was "actually target[ed] … with advertisements" and that her information was sold "to advertisers for hyper-targeted advertising").

But again, this does not fully capture the privacy injury that Echeverria-Corzan alleges here. As noted above, Echeverria-Corzan alleges that the information collected from her on the Website was used to match her to comprehensive and non-anonymous profiles held by data brokers, and that those profiles were disseminated to further data sellers, data brokers, *and* advertisers. FAC ¶ 158 ("The result of this process is not only that a single user is identified as one person by these multiple third parties, but they share all of the information about that user with one another … This prevents users from actually being anonymous when they visit the Website."); *id.* ¶¶ 138-139, 159.

Accordingly, the privacy harm is not just that Echeverria-Corzan's information was used to facilitate targeted advertising. Instead, "the violation of a privacy interest that bears a close relationship to traditional harms" is Echeverria-Corzan's "loss of the ability to control information about [herself] and to avoid the broad dissemination of that information." *Harris*, 2026 WL 247875, at *2; *Dep't of Justice*, 489 U.S. at 763 ("[B]oth the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person."); *Krzyzek*, 2026 WL 206855, at *2 (quoting *Reports Committee* for same proposition); *Ribas v. Clark*, 38 Cal. 3d 355, 361 (1985) ("[S]uch secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements.").

**E. Defendants' Remaining Legal Authorities Are Off-Point**

Defendants also cite a handful of highly distinguishable cases. In *Bradshaw v. Lowe's Cos., Inc.*, 2025 WL 3171740 (S.D. Cal. Nov. 12, 2025), unlike here, the plaintiffs' claim was "limited to the capture of their IP addresses," and they did not show that "other PII, specifically, the user's

MUID, device information, and browser information, constitutes dialing, routing, addressing, or signaling information." *Id.*, at *4-5 (cleaned up). Echeverria-Corzan's claim here, by contrast, is not so limited. And although Defendants argued in their initial Motion to Dismiss that information like "device metadata, such as the device type and browser type … does not constitute dialing, routing, addressing, or signaling information" (ECF No. 11 at 13:7-9 (cleaned up)), this Court disagreed. *Echeverria-Corzan v. Fox Corp.*, 2025 WL 3128194, at *1 (N.D. Cal. Nov. 7, 2025) (Martínez-Olguín, J.) ("[T]he Court finds Plaintiff's complaint plausibly states a claim under California Invasion of Privacy Act."). Numerous courts are in accord. *See*, *e.g.*, *Fregosa*, 2025 WL 2886399, at *5 ("Device 'fingerprints' likewise serve as unique identifiers across websites and browsing sessions."); *Camplisson*, 2025 WL 3228949, at *1 ("pen register" alleged where trackers recorded "IP address … unique identifiers … device details … and browser information"); *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 930 (C.D. Cal. 2025) (same where "the software collects not just IP addresses, but also operating system information [and] browser information"); *Wright v. TrueCare Property Holdings, LLC*, 2025 WL 3248749, at *4 (S.D. Cal. Nov. 21, 2025) ("Data capable of being associated with a user's identity falls within the statutory definition of addressing information."); *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1102, 1109 (9th Cir. 2014) (noting the "referer header that provided both the user's Facebook ID" constitutes "basic identification and address information").

*Rodriguez v. Culligan Int'l Co.*, 2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) is a procedural mess and of limited persuasive value. On the one hand, the plaintiff was a "tester" (*id.*, at *1), meaning the plaintiff "visited and entered information into Defendant's website expecting the information to be accessed, recorded, and disclosed." *Rodriguez v. Autotrader.com, Inc.*, 2025 WL 1085787, at *1 (C.D. Cal. Apr. 4, 2025) (discussing same plaintiff). On the other hand, the defendant "removed the action to" federal court (*Culligan Int'l*, 2025 WL 3064113, at *1), thereby asserting there was federal jurisdiction over this case, including Article III standing. *See* Argument § II, *infra*. Thus, *Culligan* involved a plaintiff who could not have standing in a privacy case by virtue of being a "tester," and a defendant who nonetheless asserted there was standing by removing the case to federal court. *Rodriguez v. Brushfire Records*, 2025 WL 3692144, at *1 (C.D. Cal. Dec. 15, 2025),

involved the same "tester" plaintiff as *Culligan Int'l*, and the case was also removed to federal court. Thus, the standing analysis in that case is equally unavailing. In any event, unlike here, the plaintiff in *Brushfire Records* did not allege "what of plaintiff's personal information, beyond her IP address, was collected by defendant." *Id.*, at *7. And oddly, unlike here, the plaintiff appeared to not make the argument in either *Culligan Int'l* or *Brushfire Records* that it was improper for the defendant to "tr[y] to have it both ways by asserting, then immediately disavowing, federal jurisdiction." *Penning v. MedicineNet, Inc.*, 2025 WL 2814586, at *3 (N.D. Cal. Oct. 3, 2025).

The complaint at issue in *Price v. Converse, Inc.*, 805 F. Supp. 3d 1102 (C.D. Cal. 2025), made only vague allegations about profiling and identity resolution, unlike here, "at a high level of generality" and without reference to any injury that bore a "close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Id.* at 1105 (cleaned up); *see also* Roberts Decl. Ex. 1.[2] It is thus not possible "to compare the adequacy of the allegations in [*Price*] … with the detailed FAC [here]." *Scarlett v. Future US, LLC*, 2025 WL 2614587, at *1 (San Francisco Super. Ct. Sept. 5, 2025); *Drummer*, 2025 WL 3190656, at *4 n.1 ("[A]t least some of these state cases appear to be based on far less comprehensive complaints than those submitted by Plaintiffs."). Moreover, the complaint in *Price* was materially identical to the one filed (by the same law firm) in *Mitchener v. CuriousityStream, Inc.*, --- F. Supp. 3d ---, 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025). *Compare* Roberts Decl. Ex. 1 *with id.* Ex. 2. And *Price*, just like *Mitchener*, therefore did not involve "the creation of a detailed profile and [the plaintiff's] reduced capacity to remain anonymous." *Deivaprakash*, 798 F. Supp. 3d at 1107 (distinguishing *Mitchener*).

Echeverria-Corzan's counsel is guilty of this lack of detail in the complaint in *Xu v. Reuters News & Media Inc.*, 2025 WL 488501 (S.D.N.Y. Feb. 13, 2025). But the subsequent history of that case is instructive. In the initial complaint, the *Xu* plaintiff alleged only the collection of his IP address with less detailed allegations about how the collected information could identify users. *See*

---

[2] Publicly-filed complaints are subject to judicial notice. *Khatskevich v. Shapiro*, 2025 WL 833872, at *6 (S.D.N.Y. Mar. 17, 2025) ("A court may take judicial notice of public records such as pleadings, orders, judgments, and other documents from prior litigation, including state court cases.").

Roberts Decl. Ex. 3. But when the *Xu* plaintiff refiled his case in state court with similarly detailed allegations to those here (*id.* Ex. 4), the court had no trouble finding standing. *Xu*, 2025 WL 3035016, at *3 ("Plaintiff alleges that the collected information was used to build a profile for users based on their information, interests, and interferences. Therefore, whether Plaintiff has a reasonable expectation of privacy to the collected information does not preclude him from alleging an invasion of privacy injury.") (cleaned up).

*Khamooshi v. Politico LLC*, 2025 WL 2822879, at *2 (N.D. Cal. Oct. 2, 2025), concerned the disclosure of various types of information like "geolocation data, device type, browser type, and 'device fingerprints,'" but again without linkage to comprehensive profiles that were sold to advertisers. The *Khamooshi* plaintiff also did not call the defendant out on removing the action to federal court and then moving to dismiss for lack of standing. *Khamooshi*, 2025 WL 2822879, at *1 ("Defendant removed the case to federal court…"). And in *Wooten v. Biolife Plasma Servs. L.P.*, --- F. Supp. 3d ---, 2025 WL 2979619 (E.D. Cal. Oct. 22, 2025), the court found no standing because the plaintiffs alleged only that "the third-party trackers have the *capability* to use these pieces of information to engage in ID bridging, which could then result in targeted advertising." *Id.* at *4 (emphasis in original). By contrast, Echeverria-Corzan here alleges the Third Parties *do in fact* use the information they record from Website visitors to match users to comprehensive profiles that are disseminated to advertisers to generate revenue for Defendants, and that she was subject to those practices. *See*, *e.g.*, FAC ¶¶ 4, 7, 56-57, 63-65, 70-73, 76-82, 84-89, 96-97, 99-103, 106, 114-115, 117, 124, 134-139, 144-150, 153, 158-161, 166, 169-170, 174-177, 179-188, 190-192.

In *United States v. Forrester*, 512 F.3d 500 (9th Cir. 2008), the court held that, under the Fourth Amendment, "Internet users have no expectation of privacy in the … IP addresses *of the websites they visit*." *Id.* at 510 (emphasis added). Of course, Echeverria-Corzan's claim here is about the disclosure of *her IP address* and other information to the Third Parties—not of the websites she visited—and expands into the dissemination and use of that information for profiling and advertising. In any event, the "CIPA provides protection beyond the floor set by the Fourth Amendment." *Lesh v. Cable News Network, Inc.*, 767 F. Supp. 3d 33, 39 (S.D.N.Y. 2025). Indeed, the entire point of the pen register statute is to protect from disclosure the types of information that

were collected here. Thus, while the disclosure and use of Echeverria-Corzan's information here is analogous to common law and historical harms (Argument § I.A, *supra*), -the California Legislature may "elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *TransUnion*, 594 U.S. at 425 (cleaned up); *see also Pileggi v. Washington Newspaper Publishing Co.*, 146 F.4th 1219, 1227 (D.C. Cir. 2025) ("So long as Congress alters the degree of harm and not the kind of harm, congressional action can make an injury concrete.").

Finally, on reply, Echeverria-Corzan expects Defendants to cite to *Dawidzik v. Tesla, Inc.*, 2025 WL 3786963 (C.D. Cal. Dec. 29, 2025). That court overlooked plaintiff's allegations that his information was used to de-anonymize users and facilitate profiling and advertising. Thus, "it does not matter whether [a plaintiff] had a reasonable expectation of privacy in the information collected because the privacy violation extends beyond the collection of just his IP address and metadata." *Deivaprakash*, 798 F. Supp. 3d at 1106-07 (cleaned up). However, the plaintiff there also only gave a general overview of how real time bidding and linkage to data broker profiles works, rather than (unlike here) connecting such activities to the specific plaintiff. Roberts Decl. Ex. 5.

## II. DEFENDANTS CONCEDED STANDING BY REMOVING THIS ACTION TO FEDERAL COURT AND AVAILING THEMSELVES OF ITS JURISDICTION

Undermining the validity of Defendants' arguments is its conduct in this litigation. Echeverria-Corzan did not file this action in federal court, instead proceeding in the Alameda County Superior Court. ECF No. 1-1. It was Defendants who removed this case to federal court (ECF No. 1), thereby asserting there was federal jurisdiction over this case, including Article III standing. *See*, *e.g.*, *Jones*, 85 F.4th at 573 ("Upon removal, the burden to demonstrate Article III jurisdiction shifts to the Defendant as the party invoking federal jurisdiction.") (cleaned up); *Britton v. Cnty. Of Santa Cruz*, 2020 WL 4187609, at *3 (N.D. Cal. July 22, 2020) (Koh, J.) ("As the party invoking federal jurisdiction, Defendants bear the burden of establishing the existence of a case or controversy under Article III, including the core component of standing.") (cleaned up). And Defendants went further, availing themselves of federal jurisdiction to move to dismiss this case pursuant to Fed. R. Civ. P. 12(b)(6) (but not 12(b)(1). ECF No. 11. These actions indicate Defendants believe there is Article

III standing.

Defendants protest that *Popa* "updates the standing analysis applicable to statutory privacy claims to reflect recent Supreme Court precedent." MTD at 4:4-5. Not so. As noted above, "[l]ower courts have recognized that *Popa* did not set out a new rule of law for Article III standing, but rather applied the same common law rules to the individual circumstances of that case." *Krzyzek*, 2026 WL 206855, at *3 n.5; *see also* Argument § I.C, *supra*. Nor was *Popa* an intervening change in the law because *Popa* affirmed the district court's ruling. *United States ex rel. Godecke v. Kinetic Concepts, Inc.*, 2016 WL 11673222, at *7 (C.D. Cal. Nov. 16, 2016) ("When a purportedly intervening opinion merely clarifies the law in an area, courts typically do not conclude that an intervening change in law has occurred."). Indeed, if Defendants truly believed that *Popa* represented some fundamental shift in the law, then why did Defendants wait two months after *Popa* was decided—until the dawn of the Motion to Dismiss hearing—to raise the issue, or refuse to simply stipulate to remand to avoid the issue altogether? *See* ECF No. 31 at 2.

Moreover, although Defendants claim "*Popa* is the Ninth Circuit's first application of *TransUnion* to a statutory privacy claim" (MTD at 5:14), that is a false statement. Two years before *Popa*, the Ninth Circuit evaluated whether a consumer had standing for a violation "of the Washington Privacy Act" in *Jones*, 85 F.4th at 572. Although *Popa* "decline[d] to interpret *Jones* as establishing [a] categorical rule," *Popa* did find that "*Jones* [] implicitly evaluated, as *TransUnion* mandates, whether the specific plaintiffs had suffered a concrete injury." *Popa*, 153 F.4th at 793. So, not only was *Popa* not a change in the law, but it also wasn't even the first post-*TransUnion* Ninth Circuit decision to address standing for a statutory privacy claim.

It is true that a party never waives subject matter jurisdiction as a defense. *See* Fed. R. Civ. P. 12(h)(3). But Defendants' conduct in the litigation thus far—removing this case to federal court and then availing itself of federal jurisdiction to move to dismiss on 12(b)(6) grounds—illustrates that its standing arguments lack credibility. Defendants have thus long conceded that standing exists.

## III. TO THE EXTENT THE COURT REMANDS THIS CASE (AND IT SHOULD NOT), ECHEVERRIA-CORZAN SHOULD BE AWARDED FEES AND COSTS

As set forth above, Echeverria-Corzan has alleged a concrete injury sufficient for Article III

standing, and Defendants conceded the same through its litigation conduct thus far. Argument §§ I.A-B, II, *supra*. But to the extent the Court agrees with Defendants that Echeverria-Corzan lacks Article III standing (and it should not), Echeverria-Corzan should be awarded fees and costs.

"Defendant[s'] litigation strategy smacks of forum-shopping." *Knight v. Patagonia, Inc.*, 2025 WL 346465, at *3 (C.D. Cal. Jan. 30, 2025). It was Defendants who sought to be before this Court by removing this action to federal court and moving to dismiss on Fed. R. Civ. P. 12(b)(6) (but not 12(b)(1) grounds). ECF Nos. 1, 11. Indeed, Defendants did not even challenge Article III standing until the eve of the Motion to Dismiss hearing and then refused to stipulate to remand when Echeverria-Corzan proposed it to avoid bothering the Court with the issue. ECF No. 31 at 2. Defendants now seek a fresh start in a different forum. Even if the Court agrees with Defendants that Echeverria-Corzan lacks Article III standing (and it should not), Defendants' tactics should not be without consequence.

28 U.S.C. § 1447(c) provides that when a court remands a case to state court, it "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Such an award is proper "where the removing party lacked an objectively reasonable basis for seeking removal." *League of Women Voters of Pennsylvania v. Commonwealth of Pennsylvania*, 921 F.3d 378, 383 (3d Cir. 2019). Here, based on Defendants' conduct, either the standing arguments in its Motion are without a basis, or its removal to federal court was (*i.e.*, Defendants could not have removed this case if it did not believe there was standing). If the answer is the latter, then Echeverria-Corzan (and this Court) wasted time and expense litigating this case in a forum that never had jurisdiction to begin with. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 n.6 (9th Cir. 2018) ("A 'perpetual loop' of removal … and dismissal for lack of standing should not occur.").

Thus, if Echeverria-Corzan lacks standing (she does not), then this case must be remanded to the Alameda County Superior Court rather than dismissed. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); *Collier v. SP Plus Corp.*, 889 F.3d 894, 897 (7th Cir. 2018) ("Thus, § 1447(c) required the district court to remand this case to state court, because it does not satisfy Article III's requirements."). And if this case is remanded, then Echeverria-Corzan should be awarded all fees

and costs incurred since Defendants' removal of this action to federal court. *See Nuri v. True Religion Apparel*, 2026 WL 319198, at *2 (W.D. Wash. Feb. 4, 2026) ("Despite alleging in its Notice of Removal that this Court has jurisdiction over this case, True Religion argues in its motion to dismiss that Nuri fails to allege … [she] was injured in any way … These representations—made subject to Federal Rule of Civil Procedure 11(b)—appear to demonstrate that removal was improper.") (cleaned up).

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion. If the Court grants the Motion in any respect, Echeverria-Corzan respectfully requests leave to amend to cure any such deficiencies. *See Roney v. Miller*, 705 F. App'x 670, 671 (9th Cir. 2017) (holding lower court erred in denying leave to amend after dismissing first amended complaint).

Dated: March 4, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Max S. Roberts*
Max S. Roberts

Max S. Roberts (State Bar No. 363482)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: mroberts@bursor.com

**BURSOR & FISHER, P.A.**
Kaili C. Lynn (State Bar No. 334933)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: klynn@bursor.com
jwilner@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
E-mail: pfraietta@bursor.com

*Attorneys for Plaintiff*