**JENNER & BLOCK LLP**
Brandon D. Fox (SBN 290409)
BFox@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA 90071-2246
Telephone: +1 213 239 5100
Facsimile: +1 213 239 5199

**JENNER & BLOCK LLP**
Kate T. Spelman (SBN 269109)
KSpelman@jenner.com
Rachael A. Goldman (SBN 335138)
RGoldman@jenner.com
2029 Century Park East, Suite 1450
Los Angeles, CA 90067-2901
Telephone: +1 213 239 6900
Facsimile: +1 213 239 5199

Attorneys for Defendants
Fox Corporation and Fox News Network, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

SONNI ECHEVERRIA-CORZAN, individually and on behalf of all others similarly situated,

Plaintiff,

v.

FOX CORPORATION and FOX NEWS NETWORK, LLC,

Defendants.

Case No. 3:25-cv-04253-AMO

**REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(h)(3)**

Judge: The Honorable Araceli Martínez-Olguín

Hearing Date: April 23, 2026
Time: 2:00 PM
Courtroom: 10

# TABLE OF CONTENTS

I. INTRODUCTION ....................................................................................................1

II. ARGUMENT ..........................................................................................................2

A. Plaintiff Has Not Established a Concrete Injury Under Any Theory. ................................2

1. Plaintiff Has Not Established a Privacy Harm. ............................................................3

2. Plaintiff Has Not Established Harm Based on Unjust Enrichment...............................8

B. Fox Did Not and Cannot "Concede" Standing. ..................................................10

C. The Court Should Not Award Costs to Plaintiff. ..............................................11

III. CONCLUSION ....................................................................................................13

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ....................1, 10

*Bradshaw v. Lowe's Cos.*,
2025 WL 3171740 (S.D. Cal. Nov. 12, 2025) ....................4

*Camplisson v. Adidas Am., Inc.*,
809 F. Supp. 3d 1095 (S.D. Cal. 2025)....................8

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006)....................2

*Davis v. Facebook, Inc. (In re Facebook, Inc. Internet Tracking Litig.)*,
956 F.3d 589 (9th Cir. 2020) ....................7, 9, 12, 13

*Dawidzik v. Tesla, Inc.*,
2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) .................... *passim*

*Deivaprakash v. Conde Nast Digita*l,
2025 WL 2779193 (N.D. Cal. Sept. 30, 2025) ....................8

*Dinosaur Dev., Inc. v. White*,
216 Cal. App. 3d 1310 (1989) ....................10

*Drummer v. Costar Grp., Inc.*,
2025 WL 3190656 (C.D. Cal. Oct. 22, 2025)....................9

*Drummer v. Costar Grp., Inc.*,
2026 WL 712922 (C.D. Cal. Feb. 13, 2026)....................9

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ....................12, 13

*Gabrielli v. Motorola Mobility LLC*,
2025 WL 1939957 (N.D. Cal. July 14, 2025)....................8

*Gilligan v. Experian Data Corp*.,
2026 WL 32259 (N.D. Cal. Jan. 6, 2026) ....................8

*In re Google RTB Consumer Privacy Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) ....................9

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023)....................8

*Hassid v. Alex & Ani, LLC*,
2026 WL 160535 (C.D. Cal. Jan. 20, 2026) ....................8

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) ....................10

*Jones v. Ford Motor Co.*,
85 F.4th 570 (9th Cir. 2023) ....................12

*Khamooshi v. Politico LLC*,
2025 WL 2822879 (N.D. Cal. Oct. 2, 2025)....................4, 7, 9, 10

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) ....................6, 9, 10

*Krzyzek v. OpenX Techs., Inc.*,
2026 WL 206855 (N.D. Cal. Jan. 27, 2026)....................8

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)....................2

*Lussier v. Dollar Tree Stores, Inc.*,
518 F.3d 1062 (9th Cir. 2008) ....................11

*Maghoney v. Dotdash Meredith, Inc.*,
2026 WL 497402 (S.D. Cal. Feb. 23, 2026)....................4

*Martin v. Franklin Cap. Corp.*,
546 U.S. 132 (2005)....................11

*Nat'l TPS All. v. Noem*,
150 F.4th 1000 (9th Cir. 2025) ....................11

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .................... *passim*

*Price v. Converse, Inc.*,
805 F. Supp. 3d 1102 (C.D. Cal. 2025) ....................4, 6, 7, 13

*Proctor v. Vishay Intertechnology Inc.*,
584 F.3d 1208 (9th Cir. 2009) ....................11

*Renne v. Geary*,
501 U.S. 312 (1991)....................2

*Richardson v. United States*,
943 F.2d 1107 (9th Cir. 1991) ....................11

*Rodriguez v. Brushfire Recs.*,
2025 WL 3692144 (C.D. Cal. Dec. 15, 2025) ....................4

*Rodriguez v. Culligan Int'l Co.*,
2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) ....................4, 7

*Semien v. PubMatic, Inc.*,
2026 WL 216333 (N.D. Cal. Jan. 27, 2026) .......... 8

*Six v. IQ Data Int'l, Inc.*,
129 F.4th 630 (9th Cir. 2025) .......... 6

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 2

*Stock W., Inc. v. Confederated Tribes of the Colville Rsrv.*,
873 F.2d 1221 (9th Cir. 1989) .......... 11

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 1, 2, 7, 12

*U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*,
489 U.S. 749 (1989) .......... 3

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .......... 6

*Wooten v. BioLife Plasma Servs. L.P.*,
807 F. Supp. 3d 1139 (E.D. Cal. 2025) .......... 4

*Xu v. Reuters News & Media Inc.*,
2025 WL 488501 (S.D.N.Y. Feb. 13, 2025) .......... 6

*Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health*,
654 F.3d 919 (9th Cir. 2011) .......... 2

**Statutes**

28 U.S.C. § 1447(c) .......... 11

**Court Rules**

Fed. R. Civ. P. 12(h)(3) .......... 1, 10

## I. INTRODUCTION

For Plaintiff's[1] CIPA action to proceed in federal court, she must establish a concrete injury sufficient to confer standing under Article III of the United States Constitution. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Bearing that burden requires Plaintiff to explain "in detail" how "the *specific* underlying harm" she allegedly experienced is closely analogous to "a *specific* common-law tort." *See Popa v. Microsoft Corp.*, 153 F.4th 784, 790–91 (9th Cir. 2025). Instead of doing so, Plaintiff asserts solely in a conclusory fashion that the data collection Fox allegedly facilitated "is at least analogous to the tort of intrusion upon seclusion," and that Fox was "unjustly enriched." Fox Opp'n to Mot. to Dismiss ("Opp'n") at 9–10. That is not enough to meet her burden.

In fact, Plaintiff's allegations do not support either theory. Plaintiff does not allege any conduct that would be "highly offensive to a reasonable person," as required for an intrusion upon seclusion claim. *Popa*, 153 F.4th at 791. And she similarly does not allege the collection or disclosure of sensitive information through "mistake, fraud, coercion, or request," as would be required to establish that Fox was "unjustly" enriched. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). Plaintiff has thus failed to establish standing under any theory.

Rather than adequately address these issues, Plaintiff devotes much of her opposition to chiding Fox for allegedly having a "change of heart" by seeking dismissal for lack of subject matter jurisdiction after removing the case to federal court ten months ago. *See* Opp'n at 7–8, 17, 19–20. In doing so, Plaintiff downplays the impact of the Ninth Circuit's intervening decision in *Popa*, which marked a shift in the standing analysis for statutory privacy claims, and which was published three months *after* Fox removed to this Court and one month after Fox's Rule 12(b)(6) motion to dismiss was fully briefed. Worse, Plaintiff argues that Fox somehow "conceded standing," despite recognizing that "a party never waives subject matter jurisdiction as a defense." *Id.* at 20 (citing Fed. R. Civ. P. 12(h)(3)). No concession or agreement by the parties can confer subject matter jurisdiction, and the Court must always analyze that issue for itself and dismiss where jurisdiction is lacking. *Popa*, 153 F.4th at 787 n.2 ("Because Article III standing is 'jurisdictional and can

[1] Capitalized terms have the same definitions as in Fox's Motion to Dismiss, ECF No. 45.

neither be waived by the parties nor ignored by the court,' the district court's dismissal applied to Popa's claims against both defendants despite Microsoft's failure to raise the issue in its own motion to dismiss.") (citing *Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health*, 654 F.3d 919, 932 n.17 (9th Cir. 2011)).

Because Plaintiff lacks a concrete injury, she cannot establish Article III standing, and the Court should either remand the case to state court or dismiss it altogether.

## II. ARGUMENT

### A. Plaintiff Has Not Established a Concrete Injury Under Any Theory.

Federal courts must "presume [they] lack jurisdiction unless the contrary appears affirmatively from the record." *Renne v. Geary*, 501 U.S. 312, 316 (1991) (quotation omitted). As a result, "the party asserting federal jurisdiction when it is challenged has the burden of establishing it." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006). That is true even where a defendant removed the case. "Whatever the parties' previous positions on the propriety of a federal forum, plaintiffs, as the parties seeking to establish federal jurisdiction, must make the showings required for standing." *Id.* (finding plaintiffs failed to establish standing in federal court, regardless of defendant's previous removal).

To bear her burden to establish standing, Plaintiff must show "(i) that [s]he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC*, 594 U.S. at 423 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). "Article III standing requires a concrete injury even in the context of a statutory violation," and a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). Thus, even a plaintiff bringing a statutory claim must establish a "match between the injury that [the plaintiff] allegedly experienced and the kinds of harms that were actionable at common law." *Popa*, 153 F.4th at 790.

As bases for standing, Plaintiff asserts that her CIPA claim is analogous to the common law claims of intrusion upon seclusion and unjust enrichment. Both arguments fail.

**1. Plaintiff Has Not Established a Privacy Harm.**

Plaintiff fails to establish standing based on supposed "privacy harms," and her attempts to do so only underscore how Plaintiff is ignoring *Popa*'s holding and its standing-determinative effect in this case. Plaintiff first argues that she was harmed by the loss of her "right to 'control [] information concerning [] her person,' which is encompassed within 'both the common law and the literal understandings of privacy.'" Opp'n at 9 (quoting *U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 763 (1989)). But that argument is expressly foreclosed by *Popa*, which held that such alleged loss was not a privacy harm traditionally actionable at common law. *See Popa*, 153 F.4th at 792 (finding that "there existed no free-roaming privacy right at common law but rather four discrete torts that protected specific kinds of privacy-related harms": "intrusion upon seclusion, appropriation of another person's name or likeness, publicity given to another person's private life, and publicity that places one in a false light").

Plaintiff also argues that the supposed harm she experienced "is at least analogous to the tort of intrusion upon seclusion, although an exact match is not required." Opp'n at 9–10. But while an "exact match" is not required, determining whether a plaintiff's injury is concrete does require "look[ing] to the *specific* underlying harm experienced by the plaintiff and compar[ing] it, in detail, to a *specific* common-law tort." *Popa*, 153 F.4th at 790–91. Plaintiff fails to do that here. Instead, Plaintiff references intrusion upon seclusion and summarily asserts her allegations are analogous. Once again, *Popa* makes clear that approach is insufficient. In *Popa*, the Court criticized the plaintiff for "briefly point[ing] to the common-law privacy torts of intrusion upon seclusion and public disclosure of private facts" without "explain[ing] how the tracking of her interactions with the PSP website caused her to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." *Id.* at 791.

Courts considering CIPA claims after *Popa* have similarly held that a plaintiff seeking to establish standing must show how a specific tort applies to the facts alleged and cannot rely on summary assertions. *See Dawidzik v. Tesla, Inc.*, 2025 WL 3786963, at *5 (C.D. Cal. Dec. 29, 2025) (dismissing CIPA action plaintiff analogized to unjust enrichment claim and stating

"[p]laintiff does not spell out the elements for unjust enrichment, let alone apply them to his alleged facts"); *Rodriguez v. Culligan Int'l Co.*, 2025 WL 3064113, at *3 (S.D. Cal. Nov. 3, 2025) (dismissing CIPA action because plaintiff "ma[de] no effort to establish a close relationship between her purported injury and a traditional harm"). That makes sense because, as discussed above, it is Plaintiff's burden to establish standing, not Fox's burden to negate it. Yet Plaintiff makes no effort to meet that burden.

Even if Plaintiff had tried to explain how the CIPA violation she alleges here is actually analogous to intrusion upon seclusion, she could not succeed in establishing as much. A plaintiff alleging intrusion upon seclusion must show that the alleged conduct would be "*highly offensive*" to a reasonable person. *Popa*, 153 F.4th at 791 (citations omitted). Plaintiff's CIPA claim is based on Fox's alleged use of the Tools to disclose Website visitors' "internet protocol ('IP') addresses," "[d]evice [m]etadata," and "unique user identifier[s]" to third parties for purposes of "hyper-target[ed] advertisements." First Amended Class Action Complaint ("Am. Compl.") ¶¶ 3–4. Considering factually analogous contentions, the *Popa* court found the data Microsoft allegedly collected was not "embarrassing, invasive, or otherwise private," and thus such collection did not "cause[] [Popa] to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." *Id*. Numerous courts considering factually analogous CIPA cases since *Popa* have followed suit. *See Price v. Converse, Inc*., 805 F. Supp. 3d 1102, 1104 (C.D. Cal. 2025); *Wooten v. BioLife Plasma Servs. L.P.*, 807 F. Supp. 3d 1139, 1146 (E.D. Cal. 2025); *Dawidzik*, 2025 WL 3786963, at *6; *Culligan*, 2025 WL 3064113, at *3; *Maghoney v. Dotdash Meredith, Inc.*, 2026 WL 497402, at *7 (S.D. Cal. Feb. 23, 2026); *Rodriguez v. Brushfire Recs.*, 2025 WL 3692144, at *7 (C.D. Cal. Dec. 15, 2025); *Bradshaw v. Lowe's Cos.*, 2025 WL 3171740, at *5–6 (S.D. Cal. Nov. 12, 2025); *Khamooshi v. Politico LLC*, 2025 WL 2822879, at *3–4 (N.D. Cal. Oct. 2, 2025).

Plaintiff argues the conduct alleged in *Popa* is distinguishable because it "involved 'the tracking of plaintiff's non-sensitive interactions with a single website,'" and "there was no linkage of information to non-anonymous profiles, no sale of that information to advertisers, and no loss of control of personal information because personal information was not captured in *Popa*." Opp'n

at 12–13 (citations omitted). But that is wrong. Contrary to Plaintiff's characterization, the *Popa* complaint alleged, like Plaintiff's complaint here, that the website at issue used technologies to collect information to build and obtain economic value from profiles of website visitors:

- "Session Replay Providers [like Microsoft] often create 'fingerprints' that are unique to a particular user's combination of computer and browser settings, screen configuration, and other detectable information. *The resulting fingerprint, which is often unique to a user and rarely changes, are (sic) collected across all sites that the Session Replay Provider monitors*." Request for Judicial Notice ("RJN"), Ex. 1 ("*Popa* Am. Compl.") ¶ 40.
- "When a user eventually identifies themselves to one of these websites (such as by filling in a form), *the provider can then associate the fingerprint with the user identity and can then back-reference all of that user's other web browsing across other websites previously visited . . . even if the user explicitly indicated that they would like to remain anonymous by enabling private browsing*." *Id.* ¶ 41.
- The session replay technology at issue, Microsoft Clarity, "*organizes the information it captures into over 30 different categories*," including the date of the visit, the user's device, browser, and operating system, "the country where the user accessed the website from, a user's mouse movements, a user's screen swipes, text inputted by the user on the website, and how far down a webpage a user scrolls." *Id.* ¶ 53.
- "*Microsoft has improperly profited* from its invasion of Plaintiff's and Microsoft Class members' privacy in its use of their data for its economic value." *Id.* ¶ 143.

To the extent Plaintiff attempts to distinguish *Popa* because "the information recorded in *Popa* was anonymous because the website had configured the third-party software to exclude the user's 'street number and zip code,'" Opp'n at 12 (citing *Popa*, 153 F.4th at 787, 787 n.1), that argument also fails. Plaintiff does not allege that the Tools collected her street number, either. And although she alleges that zip codes "can be determined" based on public IP addresses, numerous courts—including the Ninth Circuit—have held that there is no privacy interest in an IP address, so the collection of her IP address cannot be the basis for her privacy claim. *See, e.g.*, *United States*

*v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) (holding that internet users have no expectation of privacy in their IP addresses "because they should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information"); *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1179 (N.D. Cal. 2025) (recognizing that "many courts have explained" that "there is no legally protected privacy interest in IP addresses" (internal quotation marks omitted)).

Thus, despite Plaintiff's attempts to distance her claim from *Popa*, the conduct alleged in *Popa* was at least equivalent to the conduct Plaintiff alleges here. Both Plaintiff and Popa alleged the defendants collected and profited from tracking individualized "fingerprints" across multiple websites. The Ninth Circuit squarely rejected Article III standing based on those allegations. *See, e.g.*, *Popa*, 153 F.4th at 786 (quoting *Popa* Am. Compl. ¶ 53); Opening Br. at 18, *Popa v. Microsoft*, Case No. 24-14 (9th Cir. Mar. 15, 2024), ECF No. 15.1 (arguing that Popa established Article III standing because, in part, Microsoft "create[s] a digital 'fingerprint' that could be used by Microsoft to connect her activities across multiple websites").

While *Popa* did not address sharing and use of the information allegedly collected for targeted advertising, Plaintiff does not and cannot establish that such use is "highly offensive," as Fox explained in its Motion. *See* Mot. at 15–16 (citing *Price*, 805 F. Supp. 3d at 1105 (finding lack of Article III standing because alleged targeted advertising was not "'remotely similar'" to any kind of concrete injury); *Xu v. Reuters News & Media Inc.*, 2025 WL 488501, at *3 (S.D.N.Y. Feb. 13, 2025) (finding lack of Article III standing because alleged targeted advertising was "entirely 'divorced from any concrete harm'")). The single case Plaintiff relies on to support her assertion that "communications" such as targeted advertising constitute an intrusion upon seclusion involved communications from *debt collectors*, which cannot reasonably be equated with targeted advertising. *See* Opp'n at 15 (citing *Six v. IQ Data Int'l, Inc.*, 129 F.4th 630, 634 (9th Cir. 2025)).

Plaintiff's attempts to distinguish the numerous post-*Popa* district court cases rejecting plaintiffs' standing to pursue CIPA claims similarly fail. The gist of Plaintiff's primary argument is that the plaintiffs in those cases alleged less intrusive conduct than Plaintiff does here. *See* Opp'n

at 15–19. For several of the cases Plaintiff attempts to distinguish, that is simply untrue. Indeed, in *Price*, 805 F. Supp. 3d at 1105, the court dismissed the plaintiff's Section 638.51 claim for lack of standing even where plaintiff alleged that "'the TikTok Software gathers data including device and browser information, geographic information, and referral tracking,'" and that "[d]efendant used this information to fingerprint the data and deanonymize [p]laintiff by matching it 'with existing data TikTok has acquired and accumulated about hundreds of millions of Americans.'" And in *Khamooshi*, 2025 WL 2822879, at *3–4, the court granted defendant's motion to dismiss plaintiff's Section 638.51 claim for lack of Article III standing following defendant's removal from state court, holding that "[a]s in *Popa*, Plaintiff identifies 'no embarrassing, invasive, or otherwise private information collected'" where, as here, the defendant allegedly transmitted IP addresses, browser and device type data, and geolocation data via third-party trackers. Plaintiff's secondary argument—that some other supposed irregularity led the courts in those cases to dismiss—is a distraction and irrelevant to the standing analysis. *See, e.g.*, Opp'n at 19 (distinguishing *Dawidzik*, 2025 WL 3786963 at *1, because the court purportedly "overlooked plaintiff's allegations that his information was used to de-anonymize users and facilitate profiling and advertising," even though the court specifically quoted the plaintiff's allegations that "third-party servers use the transmitted data 'to profile users and facilitate targeted advertising'"); *id.* at 16 (stating *Culligan*, 2025 WL 3064113, "is a procedural mess"); *id.* at 18 (distinguishing *Khamooshi*, 2025 WL 2822879, because the plaintiff "did not call the defendant out on removing the action to federal court and then moving to dismiss for lack of standing").

To be sure, some district courts have found that plaintiffs have standing to pursue CIPA claims in federal court. *See id.* at 8. The courts in those cases, however, failed to consider the allegations in *Popa* or the impact of *Popa* on the standing analysis for statutory claims. The cases Plaintiff cites fall into at least one of three categories, and none overcomes *Popa* or otherwise demonstrates standing here.

First, some cases erroneously continue to rely on the Ninth Circuit's pre-*TransUnion* holding in *Davis v. Facebook, Inc. (In re Facebook, Inc. Internet Tracking Litig.)*, 956 F.3d 589 (9th Cir. 2020), that CIPA "codifi[es] a substantive right to privacy," which gives rise to Article

III standing—a proposition that *Popa* affirmatively rejected. *See Camplisson v. Adidas Am., Inc.*, 809 F. Supp. 3d 1095, 1106 (S.D. Cal. 2025); *Hassid v. Alex & Ani, LLC*, 2026 WL 160535, at *3 (C.D. Cal. Jan. 20, 2026); *Deivaprakash v. Conde Nast Digita*l, 2025 WL 2779193, at *1 (N.D. Cal. Sept. 30, 2025). Second, some do not address *Popa* at all. *See Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957 (N.D. Cal. July 14, 2025) (decided before *Popa*); *Hassid*, 2026 WL 160535 (failing to address *Popa*). Third, some rely on the mistaken view that *Popa* did not allege Microsoft tracked users across multiple sites. *See Krzyzek v. OpenX Techs., Inc.*, 2026 WL 206855, at *3 (N.D. Cal. Jan. 27, 2026) (distinguishing *Popa* because it "involved non-sensitive browsing activity on a single pet supply website"); *Gilligan v. Experian Data Corp*., 2026 WL 32259, at *2 (N.D. Cal. Jan. 6, 2026) (distinguishing *Popa* because "[i]n *Popa*, the tracking of plaintiff's non-sensitive interactions with a single website . . . did not give rise to a cognizable Article III injury"); *Semien v. PubMatic, Inc.*, 2026 WL 216333, at *5 (N.D. Cal. Jan. 27, 2026) (distinguishing *Popa* because it "involved non-sensitive browsing activity on a single pet supply website"); *but see Popa* Am. Compl. ¶¶ 40–41, 53, 143 (alleging that the website at issue used technologies to collect information to build and obtain economic value from profiles of website visitors). The numerous cases rejecting standing in CIPA cases post-*Popa* follow the Ninth Circuit's current standing requirements articulated in that decision and properly account for the allegations underlying it.

In any event, *Popa* controls over these district court cases. Because the conduct Plaintiff alleges was no more intrusive than the conduct Popa alleged, the conduct alleged here is not and cannot be considered "highly offensive to a reasonable person," and Plaintiff's argument that her alleged harm is analogous to the tort of intrusion upon seclusion fails.

**2. Plaintiff Has Not Established Harm Based on Unjust Enrichment.**

Plaintiff's unjust enrichment theory similarly cannot support Article III standing given the non-sensitive nature of the information Fox allegedly collected. Plaintiff relies on *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1038 (S.D. Cal. 2023), to assert that "plaintiffs must only establish a stake in the profits garnered from their personal data and that it is unjust for the

defendant to retain those profits" to establish injury under an unjust enrichment theory.[2] But for Fox's alleged enrichment to be "unjust," Plaintiff must show that Fox used her "sensitive" and "personal" information. *Khamooshi*, 786 F. Supp. 3d at 1182–83. Plaintiff fails to plausibly allege as much for the reasons discussed above, and thus her unjust enrichment theory fails alongside her CIPA theory of harm.

The reasoning in *Khamooshi* is instructive. There, the plaintiff alleged (as Plaintiff does here), that the defendant was unjustly enriched by third party trackers—including one of the same trackers at issue here—that allegedly collected "browser and device data, IP addresses, and other personally identifying information" from the defendant's website to "identify users uniquely across sessions and devices, allowing for cross-site tracking and behavioral profiling" to "conduct targeted advertising, and boost Defendant's revenue." RJN, Ex. 2 ("*Khamooshi* First Consolidated Compl.") ¶ 66. Relying on the Ninth Circuit's unjust enrichment analysis in *In re Facebook*, 956 F.3d at 598, the court held that whether the collection or disclosure of information is "unjust" turns on the "'sensitive' and 'personal' nature of the information at issue." *Khamooshi*, 786 F. Supp. 3d at 1183 (noting that the Ninth Circuit "found that plaintiffs adequately alleged an injury in unjustly earned profits" where they alleged that Facebook "'charges users by acquiring the users' sensitive and valuable personal information and selling it to advertisers for a profit'" (quoting *In re Facebook*, 956 F.3d at 601)).

Because the plaintiffs in *Khamooshi* "only specifically allege[d] the disclosure of IP addresses—information which is so commonly shared across the internet that it cannot reasonably be considered private," the court held that they "cannot establish an economic injury based on

[2] The other two cases Plaintiff relies on to advance her unjust enrichment theory, *In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d 935, 941, 943 (N.D. Cal. 2022) and *Drummer v. Costar Grp., Inc.*, 2025 WL 3190656, at *3 (C.D. Cal. Oct. 22, 2025), did not address unjust enrichment, let alone find Article III standing on that basis. Moreover, the district court in *Drummer* recently certified an interlocutory appeal to the Ninth Circuit, based on the decision on which Plaintiff relies, on the question: "Does the transmission to third parties of IP addresses and similar information voluntarily shared with websites constitute an injury with a close relationship to a harm traditionally recognized as a basis for a lawsuit?" *See Drummer v. Costar Grp., Inc.*, 2026 WL 712922, at *2–3 (C.D. Cal. Feb. 13, 2026). Costar's petition for permission to appeal based on the court's certification is currently being briefed in the Ninth Circuit.

unjust enrichment." *Id*. In so holding, the court found the case analogous to *Heeger v. Facebook, Inc.*, which similarly rejected Article III standing based on unjust enrichment due to "'the scarcity of facts plausibly demonstrating how [defendant's] profits were unjustly earned, given that the only factual allegations are that [defendant] collected, stored, and used [for targeted advertising] plaintiffs' IP address information, as to which [plaintiffs] had no legally protected privacy interest.'" *Id*. (citing *Heeger v. Facebook, Inc.,* 509 F. Supp. 3d 1182, 1191 (N.D. Cal. 2020)). Here, similarly, Plaintiff has not plausibly alleged that Fox used her "sensitive" and "personal" information. Instead, as in *Khamooshi*, Plaintiff alleges only the collection, disclosure, and use of "information which is so commonly shared across the internet that it cannot reasonably be considered private" for the purpose of advertising and analytics. *Khamooshi*, 786 F. Supp. 3d at 1177, 1183.

Plaintiff also fails to allege, as the law requires, that Fox was unjustly conferred a benefit "through mistake, fraud, coercion, or request." *Astiana*, 783 F.3d at 762 (citing 55 Cal. Jur. 3d Restitution § 2); *Dinosaur Dev., Inc. v. White*, 216 Cal. App. 3d 1310, 1316 (1989) (to state a claim for unjust enrichment, "[i]t must ordinarily appear that the benefits were conferred by mistake, fraud, coercion or request; otherwise, though there is enrichment, it is not unjust" (quoting 1 Witkin, *Summary of Cal. Law* § 97 (9th ed. 1987))). Other district courts have rejected Plaintiff's argument for this reason. *See Dawidzik*, 2025 WL 3786963, at *5 (dismissing CIPA claim for lack of standing and stating that plaintiff had not "alleged an injury sufficiently analogous to unjust enrichment" because plaintiff had not alleged "mistake, fraud, coercion, or request").

As a result, there is no basis to conclude that Fox's alleged conduct was "unjust," and Plaintiff cannot manufacture standing from an unjust enrichment theory.

**B. Fox Did Not and Cannot "Concede" Standing.**

Fox did not "concede[] that standing exists," as Plaintiff disingenuously asserts, and Plaintiff cannot reconcile that statement with her recognition in the very same paragraph that "a party never waives subject matter jurisdiction as a defense." Opp'n at 20 (citing Fed. R. Civ. P. 12(h)(3)); *see also Popa*, 153 F.4th at 787 n.2 ("Because Article III standing is 'jurisdictional and can neither be waived by the parties nor ignored by the court,' the district court's dismissal applied

to Popa's claims against both defendants despite Microsoft's failure to raise the issue in its own motion to dismiss."). Indeed, it is blackletter law that a party can never "concede" standing. *See, e.g.*, *Nat'l TPS All. v. Noem*, 150 F.4th 1000, 1017 (9th Cir. 2025) (stating that "'parties cannot waive a court's lack of subject matter jurisdiction,' and 'regardless of the parties' concessions, therefore, we must satisfy ourselves' of our subject matter jurisdiction" (quoting *Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1219 (9th Cir. 2009) (citations and alterations omitted))); *Richardson v. United States*, 943 F.2d 1107, 1113 (9th Cir. 1991) ("Subject matter jurisdiction cannot be conferred upon the courts by the actions of the parties and [the] principle[ ] of . . . waiver do[es] not apply."); *Stock W., Inc. v. Confederated Tribes of the Colville Rsrv.*, 873 F.2d 1221, 1228 (9th Cir. 1989). Thus, Fox's removal of the case to federal court pre-*Popa* has no impact on this Court's standing analysis, and if the Court finds that Plaintiff's allegations do not support Article III standing, it must dismiss the case or remand to state court.

### C. The Court Should Not Award Costs to Plaintiff.

If the Court remands this action, it should not award costs to Plaintiff based on Fox's removal of the case. "Absent unusual circumstances, courts may award attorney's fees under [28 U.S.C. § 1447(c)] only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). "Conversely, when an objectively reasonable basis exists, fees should be denied." *Id.*

Here, Fox had an objectively reasonable basis for removal. In the Ninth Circuit, the "objectively reasonable standard" is measured by "the clarity of the law at the time of removal." *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1066 (9th Cir. 2008). In *Lussier*, the Ninth Circuit affirmed a district court's denial of costs to the plaintiff despite Dollar Tree's removal of the action in violation of the Class Action Fairness Act ("CAFA") because "the issue of when an action is 'commenced' under CAFA"—the issue that controlled the propriety of removal in *Lussier*—"was one of first impression, and [] district courts were divided on the meaning of 'commenced' in other jurisdictional contexts." *Id.* at 1064.

Ninth Circuit law governing standing in the context of statutory privacy claims similarly lacked clarity when Fox removed this case. Though *TransUnion* had articulated the need for a

concrete injury in the context of a statutory violation, the seminal Ninth Circuit cases on the subject—*In re Facebook*, 956 F.3d at 598, and *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017)—held that statutory privacy claims "codif[ied] a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing."

*Popa* was the Ninth Circuit's first application of *TransUnion* to dismiss a statutory privacy claim for failure to meet the particularized showing *TransUnion* requires.[3] In contrast to *Eichenberger* and *In re Facebook*, the *Popa* court rejected the argument that "a plaintiff *necessarily* enjoys Article III standing when suing under a statute that protects a substantive right to privacy." *Popa*, 153 F.4th at 792. Though the Ninth Circuit declined to "revisit *Eichenberger* and *In re Facebook* in reaching [its] decision," it expressly limited those decisions to "the individual circumstances giving rise to the plaintiffs' alleged injuries," rejecting the approach of "simply greenlighting a per se rule for privacy statutes." *Id.* at 794.

Plaintiff downplays *Popa*'s impact on the standing analysis adopted by *Eichenberger* and *In re Facebook* by arguing that only an *en banc* panel can "overrule" prior Ninth Circuit decisions. *See* Opp'n at 13. While it is true that *Popa* did not "overrule" *Eichenberger* and *In re Facebook*, multiple courts have recognized based on *Popa*'s clear language that the decision did in fact "cast doubt on the Ninth Circuit's [prior] holdings" based on the Supreme Court's intervening decision in *TransUnion*. *Id*. In *Dawidzik*—a case Plaintiff's counsel brought asserting nearly identical allegations—the court commented that the "[p]laintiff's reliance on [*Eichenberg[er]* and *In re Facebook*]" to establish standing "is misplaced. . . . While *Popa* did not disturb either case, the

[3] Plaintiff argues that *Popa* cannot be viewed as clarifying the law post-*TransUnion* because, contrary to Fox's contention, it was not "the first post-*TransUnion* Ninth Circuit decision to address standing for a statutory privacy claim." Opp'n at 20. According to Plaintiff, "[t]wo years before *Popa*, the Ninth Circuit evaluated whether a consumer had standing for a violation of the Washington Privacy Act in *Jones v. Ford Motor Co.*, 85 F.4th 570 (9th Cir. 2023)" and, as *Popa* recognized, "'*Jones* . . . implicitly evaluated, as *TransUnion* mandates, whether the specific plaintiffs had suffered a concrete injury.'" *Id.* (citing *Popa*, 153 F.4th at 793). Setting aside the fact that the *Jones* court did not even *cite TransUnion* and thus cannot be fairly characterized as applying that decision, *Jones* cuts against Plaintiff's argument, as the court found that the plaintiff had standing to pursue his Washington Privacy Act claim in federal court and therefore *supported* Fox's basis for removal before *Popa* clarified the law and narrowed *Jones* to its facts. *Popa*, 153 F.4th at 793.

Ninth Circuit noted neither *Eichenberger* nor *In re Facebook* 'finds [ ] support in *TransUnion*.'" 2025 WL 3786963, at *4 (quoting *Popa*, 153 F.4th at 794). And the court in *Price* explained that "[w]hile the Ninth Circuit chose not to revisit *In re Facebook* in deciding *Popa*, the court distinguished *In re Facebook* on the specific facts of that case and noted specifically that the court 'might analyze [the statute at issue] differently today, especially after the Supreme Court's decision in *TransUnion*.'" 805 F. Supp. 3d at 1105 (quoting *Popa*, 153 F.4th at 794–95).

Plaintiff attempts to impugn Fox's motivations by arguing that Fox should have stipulated to remand if it believed Plaintiff lacked Article III standing. Opp'n at 8, 20–21. But there is no improper motive. Fox had an objectively reasonable basis to remove this case given the state of the law at the time of removal. *Popa*, which Fox could not have foreseen when it removed, has since made clear that Plaintiff's claimed injury is insufficient to establish standing. Fox did not stipulate to remand because Plaintiff refused to acknowledge her lack of injury sufficient for Article III standing. Indeed, even now, Plaintiff does not appear to be proposing a stipulated remand at all, much less one resolving this key disputed issue.

Accordingly, if the Court remands this action, Plaintiff is not entitled to costs.

## III. <u>CONCLUSION</u>

Because Plaintiff has failed to identify a concrete injury under Article III, her claims should be dismissed for lack of standing or, in the alternative, remanded to Alameda Superior Court, and Plaintiff's request for costs should be denied.

Dated: March 19, 2026

JENNER & BLOCK LLP

By: <u>*/s/ Kate T. Spelman*</u>
Brandon D. Fox
Kate T. Spelman
Rachael A. Goldman

Attorneys for Defendants
Fox Corporation and Fox News Network, LLC