**JENNER & BLOCK LLP**
Brandon D. Fox (SBN 290409)
BFox@jenner.com
Rachael A. Goldman (SBN 335138)
RGoldman@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA 90071-2246
Telephone: +1 213 239 5100
Facsimile: +1 213 239 5199

Kate T. Spelman (SBN 269109)
KSpelman@jenner.com
2029 Century Park East, Suite 1450
Los Angeles, CA 90067-2901
Telephone: +1 213 239 6900
Facsimile: +1 213-239 5199

Attorneys for Defendants
Fox Corporation and Fox News Network, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SONNI ECHEVERRIA-CORZAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FOX CORPORATION and FOX NEWS NETWORK, LLC,<br><br>Defendants. | Case No. 25-cv-04253-AMO<br><br>**DEFENDANTS' STATEMENT OF RECENT DECISIONS**<br><br>Judge: Honorable Araceli Martínez-Olguín |

Defendants Fox Corporation and Fox News Network, LLC (collectively, "Fox") respectfully submit this Statement of Recent Decisions pursuant to Local Civil Rule 7-3(d)(2), to bring this Court's attention to two judicial decisions published after Fox filed its reply in support of its motion to dismiss for lack of Article III standing.

In *In re USA Today Co., Inc. Internet Tracking Litigation*, No. 24-cv-05150-MMC, 2026 WL 932655, at *2 (N.D. Cal. Apr. 6, 2026), Judge Chesney dismissed a claim under Section 638.51 of the California Invasion of Privacy Act ("CIPA") for lack of Article III standing following removal by the defendant, finding that there is no protected privacy interest in IP addresses, device type, and browser type; thus, the plaintiff had not established a concrete injury under *Popa v. Microsoft Corporation*, 153 F.4th 784 (9th Cir. 2025). *See* Ex. A.

Similarly, in *Magliocca v. United Healthcare Services, Inc.*, No. 25-cv-3388, 2026 WL 878694, at *3 (E.D. Cal. Mar. 31, 2026), Judge Shubb dismissed a CIPA Section 638.51 claim, holding that the plaintiff's allegations of data collection—including "'each page a user visits, what buttons they click, how far they scroll on a page, the length of their session . . . URLs visited, domains visited' and their IP addresses"—did not implicate a protected privacy interest as required to establish an injury under *Popa*. *See* Ex. B.

Dated: April 13, 2026

JENNER & BLOCK LLP

By: */s/ Brandon D. Fox*
Brandon D. Fox
Kate T. Spelman
Rachael A. Goldman

Attorneys for Defendants
Fox Corporation and Fox News Network, LLC

# EXHIBIT A

2026 WL 932655
Only the Westlaw citation is currently available.
United States District Court, N.D. California.

# IN RE: USA TODAY CO., INC. INTERNET TRACKING LITIGATION

Case No. 24-cv-05150-MMC
|
Filed 04/06/2026

**Attorneys and Law Firms**

David Ramraj Singh, Weil, Gotshal & Manges LLP, Redwood Shores, CA, Blake Jacob Steinberg, Pro Hac Vice, David L. Yohai, Pro Hac Vice, Weil, Gotshal & Manges LLP, New York, NY, for USA Today Co., Inc.

## ORDER GRANTING MOTION TO DISMISS; AFFORDING LEAVE TO AMEND

MAXINE M. CHESNEY United States District Judge

***1** Before the Court is defendant USA Today Co., Inc.'s ("USA Today") Motion, filed June 25, 2025, to dismiss plaintiffs' First Consolidated Class Action Complaint ("FCC"). Plaintiffs Ryan Wu, Saber Khamooshi, and John Deddeh, individually and on behalf of a putative class, have filed opposition, to which defendants have replied. The Court, having read and considered the papers filed in support of and in opposition to the motion, hereby rules as follows.[1]

## BACKGROUND[2]

USA Today "owns and publishes various brands that deliver journalism, compelling content, events, experiences and digital marketing business solutions." (See FCC ¶ 2.)[3] Its portfolio includes the website www.usatoday.com, "which provides breaking news and coverage of U.S. and national news." (See id. ¶ 3.)

Plaintiffs allege USA Today "has embedded and implemented several third-party trackers on the USA Today website." (See id. ¶ 61.) Third-party trackers "collect information about internet users as those users are browsing the web, including capturing IP addresses and other device information, such as device type [and] browser type." (See id. ¶ 38.) Plaintiffs allege USA Today never obtained their consent to install and use the trackers when they visited the company's website. (See id. ¶ 66.)

Based on the above allegations, plaintiffs assert the following five Causes of Action: (1) "Violation of the California Computer Data Access and Fraud Act (California Penal Code § 502)"; (2) "Unlawful Use of a Pen Register or Trap and Trace Device (California Penal Code § 638.51)";[4] (3) "Invasion of Privacy (Violation of Art. § 1, California Constitution)"; (4) "Unjust Enrichment (On Behalf of Plaintiffs and the Class)"; and (5) "Violations of California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*) (On Behalf of Plaintiffs and the Class)." (See id. ¶¶ 109-184.)

## DISCUSSION

At the outset, USA Today contends the Court lacks jurisdiction to decide the matter. In particular, USA Today argues plaintiffs lack Article III standing.

"[T]he irreducible constitutional minimum of standing contains three elements," see Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992), namely: (1) an "injury in fact," constituting an "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," (2) "causation," and (3) "a likelihood that a favorable decision will redress the plaintiff's alleged injury," see Lopez v. Candaele, 630 F.3d 775, 785 (9th Cir. 2010) (citing Lujan, 504 U.S. at 560-61). A concrete harm is one that has "a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." TransUnion LLC v. Ramirez, 594 U.S. 413, 424 (2021) (internal quotation and citation omitted).

### A. Invasion of Privacy

***2** Plaintiffs allege USA Today's "invasion of their privacy" constitutes a concrete and particularized injury sufficient to support Article III standing. (See FCC ¶ 32.) For purposes of a privacy claim, "a concrete injury arises only where the alleged harm involves personal information," see Khamooshi v. Politico LLC, 786 F. Supp. 3d 1174, 1180 (N.D. Cal. 2025), i.e., information the disclosure of which "would be highly offensive to a reasonable [person]," see Popa v. Microsoft


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Corp., 153 F.4th 784, 791 (9th Cir. 2025) (internal quotation, citation, and alteration omitted).

Here, plaintiffs' claimed injury centers on their allegation that the third-party trackers on USA today's website collect information, "including capturing IP addresses and other device information, such as device type [and] browser type." (See FCC ¶ 38; see also id. ¶¶ 63 (alleging "[e]ach tracker ... collect[s] ... [the] user's browser and device data ... including IP addresses"); 68 (alleging "third-party tracker ... is used to collect and share [the] user's browser and device data [and] IP address").)

According to plaintiffs, IP addresses "contain geographical location information from which the state, city, and zip code of a specific device can be determined." (See id. ¶ 53.) In the context of the Fourth Amendment, however, "[i]nternet users have no expectation of privacy in ... IP addresses," see United States v. Forrester, 512 F.3d 500, 510 (9th Cir. 2008), and, because "there is no legally protected privacy interest in IP addresses," see Heeger v. Facebook, Inc., 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020), there is no Article III injury based thereon, see id.; see also Mitchener v. CuriosityStream, Inc, 2025 WL 2272413, at *4 (N.D. Cal. Aug. 6, 2025) (dismissing CIPA claim; holding "it is well-established in the Ninth Circuit that there is no legally protected privacy interest in IP addresses" (internal quotation and citation omitted)). Similarly, it is well-established that there is no legally protected privacy interest in information such as device type and browser type. See Popa,153 F.4th at 786, 791 (affirming dismissal of privacy claim predicated on, inter alia, device type and browser type; finding plaintiff failed to show how tracking of such information "is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law").

Although plaintiffs contend the "full scope of alleged disclosure," i.e., their Article III injury, "goes far beyond" the above-discussed disclosures, namely, by their allegation of "unique and persistent identifiers" (see Opp. at 10:11-15 (citing FCC ¶¶ 38, 61-84)), "[t]o sufficiently allege an injury in fact," a plaintiff "must identify the specific personal information [he/she] disclosed that implicates a protectable privacy interest." See Mitchener, 2025 WL 2272413, at *3 (internal quotation and citation omitted). Here, plaintiffs do not elaborate as to any such "unique and persistent identifiers" beyond their allegations as to disclosures that are either unprotected (see e.g., FCC ¶ 67 (alleging tracker "collects IP addresses" and "location, time, browser type, [and] connection type")), or lack adequate specificity (see e.g., id. (alleging tracker "assists advertisers with targeting ... audience segments, and more"); ¶ 72 (alleging tracker collects "user's browsing behavior, ... other identifying information," and "browsing preferences")).

***3** Accordingly, plaintiffs fail to plead a cognizable injury predicated on the above-alleged collection and disclosure of information.

### B. Economic Harm

Plaintiffs next contend they allege "economic harm sufficient for Article III standing," namely, the financial value of "user data" (see id. ¶ 34) by which USA Today allegedly has been "unjustly enrich[ed]" (see id. ¶ 170). "California law recognizes a legal interest in unjustly earned profits." See In re Facebook, Inc. Internet Tracking Litig., 956 F.3d 589, 600 (9th Cir. 2020). As discussed above, however, plaintiffs fail to adequately allege collection by USA Today of information in which plaintiffs had a legally protected privacy interest and, consequently, fail to allege any profit earned therefrom was unjust.

Accordingly, plaintiffs fail to plead a cognizable injury predicated on alleged economic harm.

### C. Statutory Violation

Lastly, plaintiffs argue a violation of their statutory privacy rights under CIPA, as set forth in their Second Cause of Action, "constitute[s] an injury-in-fact" sufficient to support Article III standing. (See Opp. at 12:9-11.) As the Ninth Circuit has made clear, however, a plaintiff, for purposes of alleging "a concrete injury," is required to "demonstrate more than just a statutory violation." See Popa, 153 F.4th at 793-94 (holding "courts should assess whether 'plaintiffs have identified a close historical or common-law analogue for their asserted injury' " (quoting TransUnion LLC, 594 U.S. at 424)).

Accordingly, plaintiffs fail to plead a cognizable injury predicated on a statutory violation of CIPA.

## CONCLUSION

For the reasons stated above, plaintiffs have failed to plead an injury sufficient to support Article III standing. Accordingly, plaintiffs' FCC is hereby DISMISSED for lack of subject

matter jurisdiction, and plaintiffs are hereby afforded leave to amend to cure the above-noted deficiencies. Any such amended complaint shall be filed no later than April 28, 2026. If plaintiffs fail to amend, the above-titled action will be remanded for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2026 WL 932655

Footnotes

1 By prior order, the Court took the matter under submission.

2 The following facts are taken from the operative complaint, the First Consolidated Class Action Complaint, and, for purposes of the instant motion, are assumed to be true.

3 The initial Complaint named Gannett Co., Inc., as the defendant to the action. By order filed March 18, 2026, the Court issued a stipulated order amending the caption to reflect defendant's recent name change to USA Today.

4 Penal Code § 638.51 is part of the California Invasion of Privacy Act ("CIPA"), Penal Code §§ 630-638.55.

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT B

2026 WL 878694
Only the Westlaw citation is currently available.
United States District Court, E.D. California.

JOANNE MAGLIOCCA, individually and on behalf of all others similarly situated, Plaintiffs,
v.
UNITED HEALTHCARE SERVICES, INC., and DOES 1-100, inclusive, Defendants.

No. 2:25-cv-3388 WBS SCR
|
Filed 03/31/2026

**Attorneys and Law Firms**

James Michael Treglio, Mark D. Potter, Naomi Marie Butler, Potter Handy LLP, San Francisco, CA, for Plaintiff.

Adam A. Cooke, Pro Hac Vice, Hogan Lovells U.S. LLP, Washington, DC, Vassi Iliadis, Hogan Lovells U.S. LLP, Los Angeles, CA, for Defendant United Healthcare Services, Inc.

MEMORANDUM AND ORDER RE: DEFENDANT'S MOTION TO DISMISS

WILLIAM B. SHUBB UNITED STATES DISTRICT JUDGE

***1** Plaintiff brought this putative class action in Yuba County Superior Court against defendant United Healthcare Services ("UHC"), alleging violations of state and federal law in connection with UHC's purported use of third-party tracking software on its website. (Docket No. 1 at 2.) UHC timely removed the action and now moves to dismiss all claims. (Docket No. 13-1.) Plaintiff opposes the motion. (Docket No. 16.)

As an initial matter, the court notes that UHC's arguments are almost stubbornly focused on the statutory elements of plaintiff's claims, to the exclusion of any significant discussion of whether constitutional standing exists in this case. Nevertheless, this court "has an independent obligation" under the Constitution "to assure that standing exists, regardless of whether it is challenged by any of the parties," Summers v. Earth Island Institute, 555 U.S. 488, 499 (2009), and must accordingly "examine standing sua sponte where [it] has erroneously been assumed[.]" Adarand Constructors, Inc. v. Mineta, 534 U.S. 103, 110 (2001). The court will therefore adhere to its affirmative duty to determine jurisdiction "before proceeding to the merits" of plaintiff's claims. Dep't of Educ. v. Brown, 600 U.S. 551, 560 (2023).

I. UHC's Website and Plaintiff's Allegations

UHC owns and operates the website https://www.uhc.com (the "website"). (Compl. ¶ 1.) The website utilizes third-party tracking software provided by four companies: Google Analytics, Microsoft Clarity, Meta Pixel, and Adobe Analytics ("trackers" or "tracking software"). (Id. at 6-9.) These trackers "typically function by installing cookies," which are "small text string[s] with data created by a website's server and transmitted to a web browser." (Id. at 5.) This installation is automatically performed on a user's browser when they visit the website; the cookies and associated data then allow the trackers to collect certain information about that user's browsing activity, which is subsequently used to "serve targeted advertisements and conduct website analytics." (Id. at 16.)

Plaintiff alleges she visited the website sometime in July 2025 "to browse and review the health insurance products and related services offered by [UHC]," but "did not purchase any services or products from [UHC] while on the website." (Compl. ¶¶ 83-84.) She then alleges that "when [she] visited the Website, the Website's code ... caused the Trackers to be installed on [her] browsers." (Id. ¶ 84.) As a result of that installation, plaintiff alleges that she "was inundated with numerous ads for United Healthcare." (Id. ¶ 85.)

Plaintiff makes no further allegations as to her experience with the website, nor does she allege which specific data were collected from her by the trackers when she visited the website. The remainder of the complaint provides a background of the trackers' implementation in general terms and notes which specific types of data they are designed to collect, such as "each page a user visits, what buttons they click, how far they scroll on a page, the length of their session ... URLs visited, domains visited" and their IP addresses. (Id. at 6-9.)

***2** Plaintiff brings claims in connection with the website's use of the trackers pursuant to four statutes: the California Invasion of Privacy Act ("CIPA"), the federal Electronic Communications Privacy Act ("ECPA"), the California Computer Data Access and Fraud Act ("CDAFA"), and the

California Constitution. (Id. at 20-27.) Though plaintiff relies on distinct statutory frameworks, the gravamen of each claim is the same: that the trackers' collection of her browsing data "constitutes an invasion of privacy." (Id. at 16-20, 23-24, 26-28.)[1]

II. Third Party Tracking and Privacy Claims

This case appears to be one of many in a recent wave of litigation in which plaintiffs use privacy-related statutes to challenge the practice of using the tracking software just described to collect visitor data for advertising purposes. See, e.g., Doe v. Eating Recovery Ctr. LLC, 805 F. Supp. 3d 1109, 1114 (N.D. Cal. 2025) ("In recent years, [CIPA] has frequently been invoked – with mixed success – to challenge the use of third-party software that records website activity without visitors' knowledge.") (internal citations omitted); DellaSala v. Samba TV, Inc., No. 3:25-cv-3470 JSC, 2025 WL 3034069, at *1 (N.D. Cal. Oct. 30, 2025) ("This [data collection] case is one of dozens filed in district courts throughout California alleging claims under CIPA and other California privacy laws.").

Courts are grappling with how to handle these cases, with some declining to apply the statutory language to the internet context, see Heiting v. Taro Pharmaceuticals USA, Inc., 709 F. Supp. 3d 1007, 1014 (C.D. Cal. 2023), and others applying certain provisions while disagreeing as to their scope, compare Doe, 805 F. Supp. 3d, at 1114, with King v. Hard Rock Café Int'l (USA), Inc., No. 2:24-cv-1119 DC CKD, 2025 WL 1635419 (E.D. Cal. June 9, 2025). Other courts still have dismissed complaints on constitutional grounds, holding that "collection of user and device identifiers could not give rise to a privacy injury" for purposes of Article III's injury-in-fact requirement. Xu v. Reuters News & Media Inc., No. 24-cv-2466 PAE, 2025 WL 488501, at *3-4 (S.D.N.Y. Feb. 13, 2025) (collecting cases).

This latter approach finds ample support in the Ninth Circuit's recent holding in Popa v. Microsoft Corporation, 153 F. 4th 784 (9th Cir. 2025), which clarified "the applicable [Article III] standard in internet tracking cases." Harris v. iHeartMedia, Inc., No. 25-cv-6038 EKL, 2026 WL 247875, at *1 (N.D. Cal. Jan. 29, 2026) (describing Popa). In its papers, UHC relies heavily on Popa to support its argument that "there is no concrete privacy injury based on allegations that e-commerce technologies collect a visitor's device IP address, other basic device information, and users' mouse movements, screen swipes, text input, and scrolling behavior." (Docket No. 13-1 at 17 (citing Popa, 153 F. 4th, at 786).) In opposition, plaintiff contends that she need not articulate an injury, because "[d]efendant's attempt to impose an extra-statutory 'concrete injury' requirement is ... foreclosed by the statute and persuasive authority." (Docket No. 16 at 7-8.)

***3** Contrary to plaintiff's assertion, the requirement of a concrete injury is not an "extra-statutory" imposition by the defendant; it is a constitutional requirement. Article III of the Constitution limits federal jurisdiction to "cases" and "controversies," and the Supreme Court has made clear that "an injury in fact must be concrete and particularized," even where a plaintiff sues under a statute providing a cause of action and statutory damages. Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (2016); U.S. Const. art. 3, § 2, cl. 1; see also Dawidzik v. Tesla, Inc., No. 25-cv-1982 KK SPX, 2025 WL 3786963, at *3 (C.D. Cal. Dec. 29, 2025) ("[T]o the extent Plaintiff argues 'statutory standing under CIPA' is enough ... statutory standing has nothing to do with whether there is [a] case or controversy under Article III." (internal citations omitted)).

For the reasons set forth below, the court finds that it lacks jurisdiction to consider the merits of plaintiff's claims because plaintiff fails to allege a concrete injury sufficient to satisfy Article III standing; because of that failure, "[t]his case begins and ends with standing." Dep't of Educ., 600 U.S. at 560-61.

III. Article III Standing and Privacy Injuries

To establish standing, plaintiff must show "(i) that [she] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." TransUnion LLC v. Ramirez, 594 U.S. 412, 423 (2021). Intangible harms -- such as a harm to one's privacy -- may constitute injuries in fact, but they must "bear a close relationship to traditionally recognized harms." Wooten v. BioLife Plasma Services L.P., 807 F. Supp. 3d 1139, 1144 (E.D. Cal. 2025) (Sherriff, J.) (citing Spokeo, 578 U.S. at 341).

Plaintiff states that UHC's data collection amounts to an "invasion of [her] privacy" under CIPA, ECPA, and the California Constitution, as well as a violation of the "protection of the privacy of individuals" under CDAFA. (Docket No. 1-2 at 20-27.) But Popa rejected precisely this sort of generalized pleading of a privacy injury, reasoning that "there existed no free-roaming privacy right at common law

but rather four discrete torts that protected specific kinds of privacy-related harms.' " 153 F.4th, at 792.

The plaintiff in Popa alleged "the common-law privacy torts of intrusion upon seclusion and public disclosure of private facts," which both required "highly offensive interferences or disclosures" at common law. Id. But because the information collected in Popa was comprised of routine website interaction data, such as "mouse movements, clicks, keystrokes, URLs of pages visited, and/or other electronic communications," the court reasoned that "the monitoring of Popa's interactions with [defendant]'s website seems most similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales." Id. at 792. The plaintiff "identifie[d] no embarrassing, invasive, or otherwise private information collected," and thus failed to adequately allege "harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." Id.

In line with Popa, district courts have determined whether plaintiffs have sufficiently alleged a concrete harm "in data breach cases" by "examin[ing] the nature of the specific information at issue." Wooten, 807 F. Supp. 3d, at 1143-44 (citing I.C. v. Zynga, Inc., 600 F. Supp. 3d 1034, 1050 (N.D. Cal. 2022). Where the collection of information is more reminiscent of "a store clerk's observing shoppers," no concrete privacy injury arises; this is often the case when the tracking software monitors IP addresses and other rudimentary browsing activity. See, e.g., Xu, 2025 WL 488501, at *4 (collecting cases); Wooten, 807 F. Supp. 3d at 1144 (holding that "collection and dissemination of plaintiffs' IP and email addresses" was insufficient to constitute a privacy injury); Mikulsky v. Bloomingdale's, LLC, 713 F. Supp. 3d 833, 846 (S.D. Cal. 2024) ("Courts have been unwilling to find a cognizable privacy interest in browsing data from users on Defendant's own website.") (collecting cases).

***4** But where the information collected may be characterized as "embarrassing, invasive, or otherwise private," courts have found concrete injuries; this is often the case when the trackers go far beyond observing activity on a single website and instead compile what the Ninth Circuit has described as "a cradle-to-the-grave profile" of sensitive, personally revealing information gathered across the internet and over a significant period of time. In re Facebook, Inc. Internet Tracking Litigation, 956 F. 3d 589, 599 (9th Cir. 2020). In Semien v. PubMatic, Inc., for example, the court found a concrete privacy injury where the plaintiffs alleged that the defendant collected "sensitive information like health status and treatment, travel plans, political affiliation, sexual orientation, and more." No. 25-cv-3164, 2026 WL 216333, at *5 (N.D. Cal. Jan. 27, 2026); see also Riganian v. LiveRamp Holdings, Inc., 791 F. Supp. 3d 1075, 1087 (N.D. Cal. 2025) (finding concrete harm where plaintiff alleged "the tracking of individuals' activity across thousands of websites, combined with extensive offline records gathered over decades, to generate uniquely identifying profiles").

Plaintiff's allegations bear no resemblance to the detailed, sensitive data at issue in In re Facebook, Semien, and Riganian. The information plaintiff alleges was collected by the trackers here -- button clicks, page visits, scrolls, session lengths, URLs, and IP addresses, apparently collected after one visit to the UHC website in July 2025 -- resembles exactly the kind of "non-sensitive browsing activity on a single website" that courts have repeatedly found insufficient to establish a concrete injury. Semien, 2026 WL 216333, at *5 (internal citation omitted). Plaintiff emphasizes the trackers' collection of IP addresses in particular as "especially effective in identifying and tracking specific individuals." (Docket No. 1-2 at 13.) However, courts addressing this issue have overwhelmingly held that an IP address -- voluntarily transmitted by a user's browser as a necessary condition of accessing a website -- does not implicate a cognizable privacy interest. Bradshaw v. Lowe's Companies, Inc., No. 25-cv-0742 DMS MMP, 2025 WL 3171740, at *5 (S.D. Cal. Nov. 12, 2025) (collecting cases).

In sum, there is nothing in the complaint approaching the kind of "cradle-to-the-grave profile" sufficient to establish an injury-in-fact. Plaintiff does not allege that the trackers captured search queries, form inputs, health-related browsing on specific condition or treatment pages, or any other information that could be characterized as "embarrassing, invasive, or otherwise private." Popa, 153 F. 4th at 791.

Moreover, the factual allegations as to plaintiff herself are notably scant, with only two sentences devoted to what appears to be a single visit to UHC's website, in which she did not purchase any products, submit any forms, or provide any personal information. This is not the sort of intrusive, wide-ranging data collection that gives rise to a concrete privacy injury; it is the routine collection of interaction metadata from a visit to a public website, indistinguishable from "a store clerk's observing shoppers in order to identify aisles that are

particularly popular or to spot problems that disrupt potential sales." Popa, 153 F.4th at 792.

Because the court finds that plaintiff has failed to allege a concrete injury sufficient to establish Article III standing, it must dismiss the complaint without reaching the merits of plaintiff's claims. See Righthaven LLC v. Hoehn, 716 F. 3d 1166, 1172 (9th Cir. 2013).

IT IS THEREFORE ORDERED that defendant's motion to dismiss (Docket No. 13) be, and the same hereby is, GRANTED.

Plaintiff has twenty-one (21) days from the date of this Order to file an amended complaint if she can do so consistent with this Order.

Dated: March 30, 2026

**All Citations**

Slip Copy, 2026 WL 878694

## Footnotes

1 Plaintiff makes a single reference in the complaint to an alleged "loss of money" as a result of UHC's conduct, suggesting an economic harm. This conclusory allegation is utterly devoid of factual support in the complaint and is thus insufficient to establish standing. See Manzanarez v. Madera Collection Services, 722 F. Supp. 3d 1074, 1080 (E.D. Cal. 2024) ("[C]onclusory allegations of standing are insufficient.") (collecting cases); Holcomb v. California Bd. Of Psychology, No. 2:15-cv-2154 KJM CKD, 2016 WL 3126127, at *3 (E.D. Cal. Jun. 3, 2016) (no standing where complaint baldly alleged "significant economic damages").

Moreover, courts have rejected the theory that one's browsing data has "independent economic value to an individual user" when it is otherwise collected and transmitted through tracking software. In re Facebook, Inc., Consumer Privacy User Profile Litig., 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019); see also Doe v. Tenet Healthcare Corp., 789 F. Supp. 3d 814, 845 (E.D. Cal. June 9, 2025) (holding that plaintiffs "cannot base their CDAFA damages on a theory that they lost a benefit to sell [their] data" when alleging invasion of privacy in data collection context).

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.